**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
GERARDO VALDEZ  LUJAN,

        **Plaintiff,**

    -against-

CABANA MANAGEMENT, INC., et al.,

        **Defendant.**
-------------------------------------------------------------------x

        **MEMORANDUM**
        **AND ORDER**

        10-CV-755 (ILG)

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

   Plaintiff Gerardo Valdez Lujan ("plaintiff") brings this purported collective action against defendants Cabana Management, Inc. ("Cabana") and Glenn Frechter (collectively "defendants"), who he claims are his former employers.  Plaintiff seeks unpaid wages, overtime, attorney's fees and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as various provisions of the New York state labor laws.  Plaintiff alleges that Cabana failed to pay workers the minimum wage for all hours worked, failed to pay overtime for hours worked in excess of forty per week, and improperly appropriated gratuities owed to the waitstaff.  See Plaintiff's Memorandum of Law in Support of the Motion for Conditional Certification and Notice to the Class (Oct. 8, 2010) ("Pl. Mem.") at 1, ECF Docket Entry ("D.E.") #35.  Plaintiff now seeks court-supervised notice to putative class members, viz., the employees of Cabana's restaurants in New York and Florida.  Id. at 1.  For the reasons detailed in this opinion, this Court grants the application in part, authorizing notice only to employees or former employees of the Cabana restaurants located in New York for the

period specified herein.[1]

## BACKGROUND

Plaintiff Lujan seeks certification of an opt-in class encompassing five restaurants he alleges were operated by defendants: Cabana Midtown, in Midtown Manhattan; Cabana Seaport, in Manhattan's South Street Seaport; a location in Forest Hills, Queens; Cabana West Palm, in West Palm Beach, Florida; and Cabana El Rey, in Delray Beach, Florida.[2] Pl. Mem. at 2-3. Plaintiff Lujan worked at Cabana's Midtown and Forest Hills restaurants from 2002 to March 2009, as a dishwasher, runner, and busboy. Affidavit of Geraldo Valdez Lujan ¶¶ 2-3 (Oct. 8, 2010), Ex. E to D.E. #35.[3] He claims that Cabana paid him approximately $6.50 per hour for his untipped work as a dishwasher, id. ¶ 4, close to the $6.55 per hour federal minimum wage in effect at the time he left Cabana. 29 U.S.C. § 206(a)(1)(B). He likewise claims that Cabana paid him $4.60 per hour for his work as a runner and busboy, Lujan ¶ 4,

---

[1] Although not raised as an issue by the parties, the Court notes that a Magistrate Judge has the authority to order the relief sought in this motion and need not issue a Report and Recommendation. See 28 U.S.C. § 636(b)(1)(A) (permitting "a magistrate to hear and determine any pretrial matter pending before the court," with exceptions including "a motion . . . to permit maintenance of a class action"); Patton v. Thomson Corp., 364 F.Supp.2d 263, 265-66 (E.D.N.Y. 2005) (holding that a magistrate judge may order conditional certification and class notice under FLSA, and distinguishing a motion for class certification under Rule 23 of the Federal Rules of Civil Procedure).

[2] Defendants mention two other Cabana restaurants in Florida, both defunct: "Cabana Las Palmas," in West Palm Beach, and "Cantina Cabo," a Mexican restaurant. Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Certification and Notice to the Class (Nov. 5, 2010) ("Def. Mem.") at 21, D.E. #41.

[3] Lujan's affidavit, and those of other Cabana employees and former employees, are exhibits docketed by plaintiff at ECF Docket Entry #35. Citations to these affidavits will use only the last name of the affiant, followed by the referenced paragraph(s).

equal to the effective minimum wage applicable to tipped food service workers under New York Labor Law § 652(4).[4]

Plaintiff alleges that Cabana's pay practices were illegal in several respects. He claims that he almost always worked in excess of 40 hours per week, receiving neither his normal pay rate nor the "time-and-a-half" rate due under the FLSA. Lujan ¶ 7; 29 U.S.C. § 207(a)(1). He claims that his managers undercounted employees' hours, by altering computerized time records and by forcing servers to wait until customers arrived to "clock in." Lujan ¶¶ 9, 14. Finally, he states that managers forced servers to use their tips to cover the cost of mistakes and other losses, Lujan ¶ 8, a practice that would undercut an employer's legal justification for paying tipped employees less than the regular minimum wage. See 29 U.S.C. § 203(m) (allowing wages under the minimum wage only if "all tips received by such employee have been retained by the employee").

Plaintiff Lujan further contends that members of the putative class experienced similar violations and are thus similarly situated to him. Pl. Mem. at 1. In support of his motion, he has submitted the affidavits of ten other former Cabana employees presenting similar

_____

[4] Both New York Labor Law and the federal Fair Labor Standards Act allow employers to pay tipped restaurant employees a cash wage lower than the regular minimum wage if they receive gratuities sufficient to compensate for the difference. N.Y. Labor L. § 652(4); 29 U.S.C. § 203(m). Under federal law, employers may claim a "tip credit" and thus pay tipped employees a cash wage as low as $2.13 per hour, so long as the employee receives notice of the relevant law, and so long as "all tips received by such employee have been retained by the employee . . . ." Id. (At all times relevant to this lawsuit, New York Law has established a higher minimum wage rate for tipped employees. Def. Mem. at 13 & n.14.) Plaintiff contends that defendants sometimes appropriated servers' tips, that they were thus ineligible to claim a tip credit, and therefore must thus be required to retroactively restore those servers to the full minimum wage. Pl. Mem. at 6.

allegations in similar (often identical) language.[5]  The would-be plaintiffs worked as hostesses, waitstaff, busboys, runners and bartenders.  See, e.g., Belandria ¶ 4; Calero ¶ 3; Lujan ¶ 3; Sanchez ¶ 3.  Most worked at more than one Cabana location.  See, e.g., Ruiz ¶ 2; Vargas ¶ 2.  The affidavits represent a total of ten employees from Cabana Midtown, five from Cabana Seaport, and six from the Forest Hills location.  Pl. Mem. at 2.  They include only one affiant ever employed at one of the Florida restaurants: Vanessa Belandria, who worked for a time at a location in West Palm Beach.[6]  Belandria ¶ 2.  Most of the workers claim that they have knowledge of Cabana's pay practices beyond their own paychecks--for example, that they discussed pay practices with and shared timesheets with co-workers, and that they saw managers altering time records.  See, e.g., Calero ¶¶ 12-14.

Defendants challenge several aspects of plaintiff's evidentiary showing.  They contend that the Court should disregard those affidavits from would-be plaintiffs not employed during the three-year statute of limitations period established by the FLSA.  Def. Mem. at 9; 29 U.S.C. § 255; cf. N.Y. Labor L. § 198(3) (setting forth a six-year statute of limitations for actions under New York's wage and hour laws).  They object to the affiants' use of hearsay and conclusory statements.  Def. Mem. at 12; see, e.g., Morales ¶ 11 ("I am friends with an

---

[5]  See Affidavits of Vanessa Belandria ("Belandria"), Yessika Alexandra Calero ("Calero"), Maria Fernanda Garcia ("Garcia"), Maria Carmenza Guevara ("Guevara"), Humberto Morales ("Morales"), Jean Paul Quijano ("Quijano"), Edwin Quiza ("Quiza"), Ana Milena Ruiz ("Ruiz"), Cesar Vargas ("Vargas"), and Carmen Sanchez ("Sanchez") (Oct. 8, 2010), Ex. A-D and F-K to D.E. #35.

[6]  Ms. Belandria states that she worked "at the West Palm Beach, Florida location." Belandria ¶ 2.  Defendants claim that she worked not at Cabana West Palm, one of the two Florida locations included in plaintiff's proposed class, but at Cabana Las Palmas, which is now defunct.  Def. Mem. at 21.

employee who works at [locations in New York and Florida]. He told me that he and his co-workers were also not being paid their legal wages and that the same unlawful things that were occurring at Cabana's New York locations were also occurring at Cabana's Florida locations.").

Defendants also challenge, on several grounds, plaintiff's assertion that he is similarly situated to members of the putative class. For example, they observe that many of the alleged violations were specific to servers, while Lujan worked only as a busser and runner. Def. Mem. at 15. Defendants point to, and proffer evidence as to, the inherently sporadic nature of some of the alleged violations, such as requiring servers to cover the losses associated with customers who left without paying. Def. Mem. at 16; see Declaration of Benjamin Bautista ¶ 4(b) (Nov. 5, 2010), Ex. 3 to D.E. #42 (claiming that walk-outs occurred "very rarely" and that waitstaff were not required to bear such losses). Defendants also note that plaintiff submitted no first-hand evidence of any wage and hour violations at Cabana's Florida locations during the FLSA limitations period. Def. Mem. at 21.

Defendants additionally argue that the Cabana restaurants are owned not by defendants Glenn Frechter or Cabana Management, Inc., but by distinct LLCs not before the Court. Def. Mem. at 6. They cite the absence of evidence that defendant Frechter hired, fired, set schedules for, directed or even met the would-be plaintiffs. Id. Defendants therefore urge the Court to refuse to certify the class, on the ground that the proper entities are not before the Court. In response, plaintiff points to proof that the Cabana restaurants shared employees, policies, computer systems, and payroll and business records, as well as the same principal, Glenn Frechter. Plaintiff's Reply Memorandum of Law in Support of the Motion for

Conditional Certification and Notice to the Class ("Reply Mem.") at 14-15 (Nov. 22, 2010),

D.E. #45.

Finally, defendants dispute the merits of plaintiff's claims, contending that Cabana's

policies and practices complied with the Fair Labor Standards Act, and that no workers were

denied overtime, forced to work "off the clock," forced to cover restaurant losses, or denied

their tips. Def. Mem. at 11. To support this contention, defendants have submitted seventeen

declarations from current employees, as well as declarations from several general managers,

asserting that the claimed violations did not occur and were barred by Cabana's policies. See

generally Declarations (Nov. 5, 2010), Ex. 3-5 and 10-26 to D.E. #42.

## DISCUSSION

## I. STANDARDS FOR CONDITIONAL CERTIFICATION OF AN OPT-IN CLASS

FLSA claims may be pursued collectively pursuant to section 216(b) of the Act, which

provides that an action to recover unpaid wages:

> may be maintained against any employer . . . by any one or more
> employees for and in behalf of himself or themselves and other
> employees similarly situated. No employee shall be a party
> plaintiff to any such action unless he gives his consent in writing
> to become such a party and such consent is filed in the court in
> which such action is brought.

29 U.S.C. § 216(b). Courts have discretion under this section to direct a defendant employer

to disclose the names and addresses of similarly situated potential plaintiffs and to authorize the

sending of notice to those individuals, so that they may "opt in" to the collective action. See

Hoffmann v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y. 1997) (citing Hoffmann-La

Roche, Inc. v. Sperling, 493 U.S. 165 (1989)). Once a plaintiff opts in to a collective action by

filing notice with the court, the statute of limitations on that plaintiff's FLSA claim is tolled. See Levy v. Verizon Info. Servs., Inc., No. 06-CV-1583 (NGG), 2007 WL 1747104, at *3 (E.D.N.Y. June 11, 2007) (citing Sbarro, 982 F.Supp. at 260).

In determining whether a matter should proceed as a collective action, courts follow a two-step process, looking first to the pleadings and affidavits to determine whether the putative class members are "similarly situated." Laroque v. Domino's Pizza, LLC, 557 F.Supp.2d 346, 352 (E.D.N.Y. 2008) (citing Jacobs v. New York Foundling Hosp., 483 F.Supp.2d 251, 265 (E.D.N.Y. 2007)); accord Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006). "If the plaintiffs can satisfy a minimal burden of showing that they are similarly situated to the potential class members, the court certifies the class and provides for notice to be sent to the potential class members who are then given the chance to opt in to the action." Laroque, 557 F.Supp.2d at 352 (citing Jacobs, 483 F.Supp.2d at 265). After discovery, defendants may move for decertification; at that stage, the court conducts a more exacting factual inquiry into whether the opt-in plaintiffs are similarly situated. See Laroque, 557 F.Supp.2d at 352. "If the court is satisfied at this [latter] stage that the class members are similarly situated, the collective action proceeds to trial; otherwise, the court decertifies the class, and the class members must pursue their claims individually." Id. (citing Jacobs, 483 F.Supp.2d at 265).

Neither the FLSA nor its implementing regulations defines the term "similarly situated." At the notice stage, however, courts in this circuit apply a lenient standard, requiring only a "a modest factual showing sufficient to demonstrate that [the named plaintiffs] and potential plaintiffs together were victims of a common policy or plan that violated the

law." <u>Laroque</u>, 55 F.Supp.2d at 352 (citing <u>Sbarro</u>, 982 F.Supp. at 261).  The court must find

"some identifiable factual nexus which binds the named plaintiffs and potential class members

together as victims" of particular illegal practices.  <u>Sbarro</u>, 982 F.Supp. at 261 (citing

<u>Heagney v. European Am. Bank</u>, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)); <u>see also</u> <u>Laroque</u>,

557 F.Supp.2d at 352 ("Generally, at the notice stage, courts require nothing more than

substantial allegations that the putative class members were together the victims of a single

decision, policy or plan.") (citing <u>Rodolico v. Unisys Corp.</u>, 199 F.R.D. 468, 480 (E.D.N.Y.

2001)).  Nevertheless, plaintiffs must make a factual showing; "[m]ere allegations in the

complaint are not sufficient."  <u>Laroque</u>, 557 F.Supp.2d at 353 (citing <u>Prizmic v. Armour, Inc.</u>,

No. 05-CV-2503(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006)).

     Collective actions under the FLSA differ in several respects from class actions under

Rule 23 of the Federal Rules of Civil Procedure:

> Under the FLSA, potential plaintiffs are required to "opt-in" "to
> be bound by the judgment (and to benefit from it)." Each
> potential plaintiff must file his or her written consent in the court
> in which the suit is brought. In relation to the class certification
> requirements, "a named plaintiff in a collective action need not
> demonstrate other facts--numerosity, commonality, typicality, and
> adequacy of representation--which are required to bring a class
> action."

<u>Cano v. Four M Food Corp.</u>, No. 08-CV-3005 (JFB)(AKT), 2009 WL 5710143, at *4

(E.D.N.Y. Feb. 3, 2009) (citations omitted).

## II.    MOTION FOR CONDITIONAL CERTIFICATION

     Keeping in mind the preliminary posture of this litigation, the Court first considers

whether plaintiff has sufficiently demonstrated that he is similarly situated to employees at the

Cabana locations in New York and Florida.

## A.    New York Locations

Plaintiff's submission satisfies his minimal burden of showing that plaintiff is similarly situated to employees at Cabana's Midtown, Forest Hills and South Street Seaport locations. The employees' declarations articulate a number of FLSA violations common to all three of the New York locations; several such violations are shared among employees in various job classifications, both tipped and untipped.  Tipped and untipped employees alike, from each New York location, aver that they saw managers change electronic time records to reduce the hours that employees actually worked.[7]  Similarly, tipped and untipped employees alike, from each New York location, state that their paychecks did not accurately reflect their hours worked.[8]  With respect to these three restaurants, plaintiffs has submitted declarations from ten (former) workers, each of whom worked at or near the minimum wage, attesting that each regularly worked hours for which he or she was not paid.  Seven such workers, again

_____

[7]  Plaintiff submitted declarations attesting to this violation from tipped employees at each New York location: Midtown (Calero ¶ 14; Garcia ¶ 13; Lujan ¶ 14; Morales ¶ 15; Ruiz ¶ 15; Vargas ¶ 15), Forest Hills (Lujan ¶ 14; Morales ¶ 15; Sanchez ¶ 16), and South Street Seaport (Calero ¶ 14; Morales ¶ 15; Ruiz ¶ 15; Vargas ¶ 15).  Likewise, plaintiff submitted declarations attesting to this violation from untipped employees at each New York location: Midtown (Lujan ¶ 14; Ruiz ¶ 15), Forest Hills (Lujan ¶ 14; Sanchez ¶ 16), and South Street Seaport (Ruiz ¶ 15).

[8]  Plaintiff submitted declarations attesting to this violation from tipped employees at each New York location: Midtown (Belandria ¶ 7; Calero ¶ 6; Garcia ¶ 6; Lujan ¶ 6; Morales ¶ 7; Quijano ¶ 7; Quiza ¶ 7; Ruiz ¶ 6; Vargas ¶ 6), Forest Hills (Belandria ¶ 7; Lujan ¶ 6; Morales ¶ 7; Quijano ¶ 7; Sanchez ¶ 6), and South Street Seaport (Calero ¶ 6; Morales ¶ 7; Quijano ¶ 7; Ruiz ¶ 6; Vargas ¶ 6).  Plaintiff submitted similar declarations attesting to this violation from untipped employees at each New York location: Midtown (Belandria ¶ 7; Lujan ¶ 6; Morales ¶ 7; Ruiz ¶ 6; Vargas ¶ 6), Forest Hills (Belandria ¶ 7; Lujan ¶ 6; Morales ¶ 7; Sanchez ¶ 6), and South Street Seaport (Morales ¶ 7; Ruiz ¶ 6; Vargas ¶ 6).

representing each New York restaurant, claim that they regularly saw managers altering time records to reduce the number of hours worked. Many such declarations assert that the workers in question discussed the matter with co-workers and found their co-workers were similarly underpaid.[9] Eleven employees, representing each New York restaurant, likewise report working uncompensated or under-compensated overtime.[10] Taken together, these amount to

---

[9] See, e.g., Lujan ¶ 14; Morales ¶ 15. While defendant objects to these claims as hearsay, see Def. Mem. at 13-14, courts frequently consider hearsay in deciding whether to issue class notice. See, e.g., Guzman v. VLM, Inc., No. 07-CV-1126 (JG)(RER), 2007 WL 2994278, at *4 (E.D.N.Y. Oct. 11, 2007) (accepting, in light of "the lenient standards of the notice phase of FLSA litigation," hearsay evidence of conversations with co-workers). In any event, plaintiff has supplied sufficient nonhearsay evidence of violations at the New York locations to obviate the need to rely on the hearsay evidence. See supra notes 7, 8. This evidence is more than sufficient to support an inference that other workers at the same locations likely experienced the same violations, especially when corroborated with first-hand statements that the affiants saw managers violating the FLSA rights of other workers. See, e.g., Calero ¶ 14 (claiming that the affiant witnessed managers altering employees' time records).

[10] See, e.g., Belandria ¶ 8 (affidavit of an employee who worked in both tipped and untipped positions: "I sometimes worked more than 40 hours a week. I was not paid my regular hourly wage for all the hours over 40 that I worked each week. I was also not paid time and one-half my regular wage for all the hours over 40 that I worked each week."). Declarations claiming uncompensated or under-compensated overtime were submitted by tipped employees at the Midtown (Belandria ¶ 8; Calero ¶ 7; Garcia ¶ 6; Guevara ¶ 7; Lujan ¶ 7; Morales ¶ 8; Quijano ¶ 8; Quiza ¶ 8; Ruiz ¶ 7; Vargas ¶ 7), Forest Hills (Belandria ¶ 8; Guevara ¶ 7; Lujan ¶ 7; Morales ¶ 8; Quijano ¶ 8; Sanchez ¶ 7), and South Street Seaport (Calero ¶ 7; Morales ¶ 8; Quijano ¶ 8; Ruiz ¶ 7; Vargas ¶ 7) locations. Declarations claiming uncompensated or under-compensated overtime were submitted by untipped employees at the Midtown (Belandria ¶ 8; Lujan ¶ 7; Ruiz ¶ 7), Forest Hills (Belandria ¶ 8; Lujan ¶ 7; Sanchez ¶ 7), and South Street Seaport (Ruiz ¶ 7) locations.

Several workers claimed that they worked hours exceeding forty per week in light of shifts at different restaurants that paid them in separate checks. See, e.g., Vargas ¶¶ 6-7. Defendants contend that this violation could not have been sufficiently widespread to justify certification because very few employees worked hours in excess of forty hours as the result of having shifts at different restaurants. Def. Mem. at 18-19. While defendants are correct that such a rare violation might not support certification, the fact remains that eleven workers,

(continued...)

"substantial allegations" sufficient to demonstrate that members of the proposed opt-in class, including tipped and untipped workers at each of the New York locations, were victims of "a single decision, policy or plan," Laroque, 557 F.Supp.2d at 352, to deprive employees of payment for some hours worked.

Plaintiff also alleges violations inherently specific to waiters, or to waiters and bartenders. Some of these allegations support the case for certification. For example, seven of the affidavits also allege that Cabana regularly compelled servers to cover mistaken orders or other losses with their tips. See Calero ¶ 8; Lujan ¶ 8; Garcia ¶ 7; Morales ¶ 9; Ruiz ¶ 8; Sanchez ¶ 8; Vargas ¶ 8. These allegations, if proven, would undercut defendants' legal justification for claiming a "tip credit" and paying tipped employees less than the regular minimum wage. See 29 U.S.C. § 203(m) (allowing employers to pay tipped employees less than the minimum wage only if "all tips received by such employee have been retained by the employee" or pooled among tipped employees).

Other allegations present a murkier picture as to the similarly-situated inquiry. For example, three waiters or waitresses claim that Cabana did not allow waiters or waitresses to clock in until their first customers were seated. See Ruiz ¶ 9; Sanchez ¶ 10; Vargas ¶ 9; see also Lujan ¶ 9; Morales ¶ 10 (affidavits of non-waiters making the same claim). The three other waiters or waitresses to submit declarations make no such claim. See Belandria ¶ 4; Garcia ¶ 3; Quiza ¶ 3. Were this Court to rest its decision on this alleged violation, class notice would

_____

[10](…continued)
representing each of the New York restaurants, have sworn that they worked overtime hours for which they were not paid an appropriate premium. Those allegations are sufficient to support conditional certification.

-11-

not be justified. The Court need not do so, in light of the allegations of uniform and widespread failure to pay minimum-wage employees for all hours worked.[11]

Contrary to defendants' suggestion, this Court need not disregard the affidavits of employees who are time-barred under the three-year statute of limitations applicable to willful FLSA violations. See Def. Mem. at 9. Defendants cite out-of-district case law for the proposition that the Court must strike affidavits of workers whose employment fell outside the statutory period. See, e.g., Bamgbose v. Delta-T Group, Inc., No. 09-667, 2009 U.S. Dist. LEXIS 126880, at *2 (E.D.Pa. Nov. 4, 2009) (striking the declaration of an employee who "did not work for the defendant during the relevant time period . . . [as] his declaration does not reflect personal knowledge of the conduct of the defendant during the relevant time period."). The in-district case cited by defendants, Laroque, 557 F.Supp.2d 346, suggests a different result. In Laroque, the court granted the plaintiff additional time to submit affidavits supporting a motion for conditional certification, including affidavits from time-barred former employees. Id. at 350-51. Such affidavits may carry less weight than those of recent employees. See id. at 355-56 (finding that a time-barred employee's affidavit, corroborated only by hearsay statements, did not provide sufficient evidence to include additional locations in the proposed class). Nevertheless, they are probative of employers' wage and hour practices and they may corroborate the claims of more recent violations.

In any event, here the proffered affidavits of former employees employed within the three-year limitations period would provide sufficient support to certify a class encompassing

---

[11] See *supra* notes 7, 8.

employees at the New York restaurants even if this Court were to disregard the affidavits of time-barred former employees: plaintiff has submitted four affidavits of non-time-barred employees who worked at the Midtown location (see Lujan ¶ 2; Morales ¶ 2; Ruiz ¶ 2; Vargas ¶ 2), two from the Forest Hills location (see Lujan ¶ 2; Morales ¶ 2), and three who worked at the South Street Seaport location (see Morales ¶ 2; Ruiz ¶ 2; Vargas ¶ 2). These affidavits are alone sufficient to show violations common among the New York locations.

Defendants object to statements in plaintiff's submissions that amount to anonymous hearsay or conclusory legal allegations. For example, one affidavit claims: "I know that Cabana did not pay all of my co-workers their legal wages because sometimes we would discuss and compare our wages to see if we were paid correctly." Belandria ¶ 12. Standing alone, this statement is not particularly helpful: it does not specify which co-workers the affiant spoke to, when she spoke to them, with what level of specificity she compared her wages, and what she means by "legal wages." Nevertheless, with respect to the New York locations, the statement does not stand alone. The Court has before it affidavits from ten of the affiant's co-workers supporting her contention. Were this Court to strike the hearsay statements -- an approach not taken in this district given the "modest factual showing" required at the notice stage, Laroque, 557 F.Supp.2d at 352 -- the nonhearsay evidence offered by plaintiff would itself support a finding that employees at all New York restaurants were sufficiently similarly situated to warrant notice.

Finally, the case for certification is not undercut by defendants' contention that the

Cabana restaurants are separate entities.[12]  Def. Mem. at 6.  The FLSA provides a broad

definition of the term "employer," tied not to corporate formalities but rather to the "economic

reality" of the employment relationship, in order to ensure that the statute will have "the

widest possible impact in the national economy."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d

132, 139 (2d Cir. 1999).  Both plaintiff and defendants have introduced evidence establishing

that the Cabana restaurants shared payroll policies, employees, and time records.  See

Affidavit of Elisa Frechter ¶¶ 7, 10, 24, 26 ("E. Frechter") (Nov. 5, 2010), Ex. 1 to D.E.

#42.  Elisa Frechter's affidavit discusses the restaurants' payroll systems and policies without

distinguishing one restaurant from the other.  See, e.g., E. Frechter ¶¶ 7, 16.  Plaintiff alleges

that the New York restaurants regularly exchanged employees, and that managers treated

defendant Glenn Frechter as a common "boss."    Affidavit of Geraldo Valdez Lujan ("Lujan

2") ¶¶ 6, 8 (Nov. 22, 2010), Ex. D to D.E. #45.  While this Court does not prejudge

defendants' status as an employer under the Act, it finds that, in light of the aforesaid

evidentiary showing, this is, at a minimum, a "contested area of fact requiring discovery" and

not a basis for denying conditional certification.  See Realite v. Ark Rests. Corp., 7 F.Supp.2d

303, 307 (S.D.N.Y. 1998) (Sotomayor, J.) (ordering certification of employees at 15

restaurants operated despite defendants' contention that they were "separate establishments not

centrally controlled by Ark").

---

[12]  Defendants unsuccessfully pressed this argument in their motion to dismiss, see Def. Mem.
at 1, which was denied by the District Court except that the claims against Glenn Frechter
were dismissed without prejudice in order to permit plaintiff to cure defects in service of
process.  Order (Dec. 22, 2010), D.E. #46.  Defendant Frechter subsequently waived service.
See Waiver of Service (Jan. 18, 2011), D.E. #53.

Defendants vigorously contest the allegations on the merits; in addition to payroll records, they proffer numerous affidavits, mostly from Cabana employees, claiming that Cabana paid workers in accordance with the law. See, e.g., E. Frechter ¶ 14; Declaration of Katherina Limo ¶¶ 10-12 (Nov. 5, 2010), Ex. 8 to D.E. #42. In finding "substantial *allegations* that the putative class members were together the victims of a single decision, policy or plan" that violated the law, Rodolico, 199 F.R.D. at 480 (emphasis added), this Court does not prejudge the merits of those allegations. Nor does this Court consider the evidence submitted at this pre-discovery phase to conclusively resolve the "similarly situated" inquiry; the Court retains "discretion to . . . dismantle the collective action" upon a decertification motion supported by evidence showing that the class members are not, in fact, situated similarly to one another. Id. at 484. But given the standard applicable to conditional certification motions, as well as the preliminary stage of this litigation, plaintiff's submissions adequately allege that he and workers at Cabana's other New York locations were together victims of common policies and plans that violated the law.

**B.** **Florida Locations**

Plaintiff's showing with respect to the Florida locations compels a different result. This Court has before it no firsthand evidence of violations at the Florida restaurants during the limitations period. Plaintiff proffers one affidavit from one employee who worked at one of the three Florida restaurants for an unspecified period of time prior to the FLSA limitations period. Belandria ¶ 2. The only corroborating evidence before the Court consists of conclusory hearsay statements in two affidavits, that of plaintiff Lujan and would-be plaintiff Humberto Morales. Lujan ¶ 10; Morales ¶ 11. For the reasons discussed below, such scant

evidence is insufficient to justify preliminary certification of a class including workers at three different locations in a different state.

Vanessa Belandria was employed in West Palm Beach at some point between August 2004 and August 2006. Belandria ¶ 2. Cabana's unrebutted contention is that she worked there only from December 2005 through February 2006. E. Frechter ¶ 26. Defedants further claim, without contradiction, that Ms. Belandria worked at the now-defunct Cabana Las Palmas, and not at Cabana West Palm. Def. Mem. at 21. In addition, named plaintiff Lujan reports speaking to two workers, identified only by their first names, employed during the limitations period at the West Palm Beach and Del Ray locations in Florida. Lujan 2 ¶ 9. Of these conversations, Lujan says only that the workers "told me that they and their co-workers were also not being paid their legal wages and that the same things that were occurring at Cabana's New York locations were also occurring at Cabana's Florida locations." Lujan ¶ 10. Similarly, would-be plaintiff Humberto Morales says he spoke to an unnamed friend employed at Cabana locations in both New York and Florida: "He told me that he and his co-workers were also not being paid their legal wages and that the same unlawful things that were occurring at Cabana's New York locations were also occurring at Cabana's Florida locations." Morales ¶ 11.

As discussed above, defendants cite a number of purported defects in plaintiff's submission: its reliance on hearsay, its use of conclusory statements such as "legal wages," the fact that the employment of some of the Cabana workers in question fell outside the applicable limitations period, and the fact that not every worker alleges the same set of violations. With respect to the New York locations, these defects are not fatal, because, even if the Court were

to disregard the stale information, conclusory allegations, and hearsay, plaintiff's submissions contain sufficient, fairly uniform, nonhearsay evidence of several violations purportedly common among the New York restaurants. With respect to the Florida locations, however, plaintiff's entire argument rests on evidence suffering from one or more of the aforesaid defects. The Court has before it no firsthand sworn statements as to any violation at any Florida location during the limitations period. With respect to the three years at issue, the affiants can say only that several insufficiently identified Florida workers told them "the same things . . . were occurring" in Florida. Lujan ¶ 10.

Plaintiff's showing as to the Florida locations is thus even weaker than the submission ruled insufficient in Laroque. In that case, plaintiffs sought certification of a class encompassing five Brooklyn pizzerias. 557 F.Supp.2d at 355. Four workers from one location in Coney Island submitted affidavits detailing similar FLSA violations; the court sustained a class of similarly situated workers at that location, notwithstanding slight individual differences in the violations alleged. Id. at 352-53. With respect to the other locations, however, the Laroque plaintiff supplied only (1) three hearsay statements claiming that managers modified time records at the other locations, and (2) one time-barred former employee's "generalized allegations of wrongdoing" at several of the chain's pizzerias. Id. at 355. Citing the "thin factual support" proffered as to those locations, the court refused to order certification. Id. at 356. In Laroque, the plaintiffs at least supplied *specific* hearsay: three reports, two by managers and one by a former employee, of modified time records. Id. at 355. Lujan and Morales, in contrast, have given this Court even less: they claim they heard of "the same things" happening at the Florida locations, but they do not specify which

violations occurred at the various locations and how often they occurred. This Court cannot conclude that the New York and Florida workers are situated similarly to one another, with regard to alleged wage and hour violations, without knowing which violations the latter experienced.

The scant nonhearsay evidence submitted by plaintiff suggests that Florida workers may not, in fact, be similarly situated to employees in the New York locations. Ms. Belandria's affidavit presents a different picture than that painted by the New York workers. For example, while she contends she was underpaid for hours worked in excess of forty, she says that she worked overtime "sometimes." Id. ¶ 8. The affidavits from New York workers suggest that overtime was a matter of routine, with six reporting they "almost always" worked overtime. Garcia ¶ 7; Guevara ¶ 7; Lujan ¶ 7; Morales ¶ 8; Quijano ¶ 8; Vargas ¶ 7; see also Calero ¶ 7 ("often" worked overtime); Quiza ¶ 8 ("regularly" worked overtime). Ms. Belandria's affidavit omits allegations central to plaintiff's claims with respect to the New York locations; for example, she does not report tip-sharing violations, see Garcia ¶ 7, being forced to clock in late, see Sanchez ¶ 10, or seeing managers tamper with records of hours worked. See Garcia ¶ 13. Each of these allegations was reported at each New York location; plaintiff's submissions contain no evidence of any of them occurring at any of the Florida restaurants.

Plaintiff has not made even the modest factual showing required to demonstrate that Cabana's Florida employees were victims of the same misconduct alleged at the New York locations. Accordingly, the Court declines to order certification of an opt-in class encompassing the Florida restaurants.

## III.    SCOPE OF THE OPT-IN CLASS

Defendants have raised several objections to the scope of the proposed class.  The

Court will address defendants' objections *seriatim*.

### A.    Notice Period

Plaintiff proposes sending notices to employees who worked for Cabana since 2004, in

accordance with the six-year statute of limitations for wage and hour claims under New York

State law.  See Notice of Pendency ("Proposed Notice") at 1 (Oct. 8, 2010), Ex. M to D.E.

35; N.Y. Labor L. § 198(3).[13]  Given that the Fair Labor Standards Act imposes a three-year

statute of limitations on willful violations, see 29 U.S.C. § 216(b), defendants contend that

putative class members not employed within the three-year limitations period should not be

issued a notice.  Def. Mem. at 25.  Although plaintiff also asserts New York Labor Law

claims, see Amended Complaint ¶ 11, D.E. # 9, these claims may not be asserted as part of

the section 216(b) collective action, but rather, under the Court's supplemental jurisdiction,

would be the subject of a contemplated motion to certify a class action pursuant to Rule 23 of

the Federal Rules of Civil Procedure.  See Guzman  v. VLM, Inc., No. 07-CV-1126

(JG)(RER), 2007 WL 2994278, at *5-6 (E.D.N.Y. Oct. 11, 2007).

Such a motion is not yet before the Court, nor could a United States Magistrate Judge

rule on such a motion.  See 28 U.S.C. § 636(b)(1)(A)-(B) (magistrate judge may report and

recommend on Rule 23 motion for class certification but may not decide such a motion).

---

[13]  The Proposed Notice also contemplates notice to those employed at Cabana's Florida
locations over a six-year period, see Proposed Notice at 2, though plaintiff provides no basis
for applying New York's six-year statute of limitations to employees in Florida.  See Fla. Stat.
§ 95.11(4)(c) (Florida Minimum Wage Act establishes a two-year statute of limitations).

Furthermore, at this stage of the litigation, there is no basis and no need for this Court to order discovery (such as the names of potential Rule 23 class members) that is relevant only to potential plaintiffs ineligible to opt in to the FLSA collective action. See Suarez v. S & A Painting & Renovation Corp., No. 08-CV-2984 (CPS)(JO), 2008 WL 5054201, at *3 n.4 (E.D.N.Y. Nov. 21, 2008). Cases within this district are split as to whether such potential plaintiffs should receive notice at this stage. Compare, e.g., Cano, 2009 WL 5710143, at *11 (approving notice to workers with state-only claims in light of the court's supplemental jurisdiction over such claims), with Suarez, 2008 WL 5054201, at *3 n.4 (limiting notice to workers not time-barred under the FLSA).

The purpose of the instant motion is to notify and inform those eligible to opt in to the collective action, and time-barred former employees may not do so. This Court sees no purpose in sending such employees a notice informing them that (1) there is a pending opt-in lawsuit, (2) they may not opt in, and (3) they may later receive another notice should their status change due to class certification.[14] Accordingly, the opt-in class shall be limited to those employed during the FLSA limitations period, calculated in light of any periods of tolling on consent. Def. Mem. at 29 n.22. The parties are directed to confer and modify the Notice accordingly.[15]

---

[14] Those with state law claims will not be prejudiced by deferring notice until Rule 23 class certification, as commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class until class certification is denied. See Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353 (1983) (citing American Pipe & Cont. Co. v. Utah, 414 U.S. 538, 554 (1974)).

[15] Defendants have raised no objection to the language in the Proposed Notice referencing
(continued...)

**B.     Occupational Titles Included in the Proposed Class**

Defendants object to the scope of the proposed opt-in class, which includes "servers, hosts(esses), bartenders, bar-backs, busboys, runners, dishwashers, and other restaurant related tasks" at the locations in question.  Proposed Notice at 1.  Defendants contend that, since plaintiff Lujan worked primarily as a busser and runner, notice "must be limited to bussers and runners."  Def. Mem. at 29.  This suggestion misconstrues the substance of the "similarly situated" inquiry, which focuses on whether members of the putative class "were victims of a common policy or plan that violated the law."  Laroque, 557 F.Supp.2d at 352 (citing Sbarro, 982 F.Supp. at 261).  As discussed previously, plaintiff alleges violations shared among each of those job classifications.  In light of those shared violations, the job classifications suggest a distinction without a difference.  See Cano, 2009 WL 5710143, at *7 (collecting cases); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007).  Accordingly, the class definition will not be so limited, except to the extent that the class will comprise only those workers employed at the New York locations during the FLSA limitations period.

**IV.     CONTENT AND FORM OF THE NOTICE**

Defendant has further raised several objections to plaintiff's Proposed Notice, addressed below.

---

[15](…continued)
claims under New York law.  See Proposed Notice at 1, 3.  Because that language may be relevant to potential plaintiffs with timely federal claims in deciding whether or not to opt in to the collective action, that language should remain in the Notice.  See Guzman, 2007 WL 2994278, at *7.

**A.     Language Concerning Defendants' Contact With Class Members**

Defendants' counsel objects to a sentence in the Proposed Notice concerning a so-ordered stipulation restricting defense counsel's contact with putative members of the class. See Proposed Notice at 2 ("Cabana's attorneys shall no longer contact you about this lawsuit."); Stipulation Regarding Communications (Oct. 7, 2010), D.E. #34.  Defendants argue that the sentence in question is misleading, in that the Stipulation permits defendants to contact current employees after consulting with plaintiff's counsel, and to contact former employees.  See Stipulation Regarding Communications ¶¶ 2-3.  Absent evidence that defense counsel have violated the Stipulation Regarding Communications, the sentence is also unnecessary and should be removed.

**B.     Information on Representation and Attorney's Fees**

Defendants also object to language in the Proposed Notice concerning putative class members' right to retain counsel other than the firm selected by plaintiff Lujan.  The proposed language reads:

> You will not be required to pay any fee for services provided to you or any other plaintiff by plaintiff's counsel Virginia & Ambinder, LLP.  If you are represented by Plaintiff's attorneys, their costs and fees will be paid out of any recovery against Cabana.  You have a right to consult with an attorney about this matter.  If you wish to be represented by other counsel, you may retain another attorney, but you will be responsible for paying that attorney.

Proposed Notice at 3.  Defendants contend that the phrase "you will be responsible for paying that attorney" is inaccurate in that any attorney of a class member could, upon prevailing in a FLSA claim against Cabana, seek recovery of attorney's fees.  See 29 U.S.C. § 216(b).  To

clarify the point, the parties are directed to modify the above language as follows:

> You will not be required to pay any fee for services provided to you or any other plaintiff by Plaintiff's attorneys, Virginia & Ambinder, LLP. You have a right to consult with another attorney, or to hire another attorney to represent you. If you do so, any fee arrangement would have to be worked out between you and that attorney. If you recover money from Cabana, Cabana may be required to pay your attorney's fees, whether you hire Virginia & Ambinder or another attorney.

### C.     Putative Releases of FLSA Claims

Defendants contend that the putative class should exclude employees who signed releases of their FLSA claims in exchange for settlements supervised by the Department of Labor. See Def. Mem. at 24-25. In support of this contention, defendants submitted under seal evidence that the Department of Labor authorized the settlement amounts in question. See Letter from Jeffrey Brecher (Jan. 14, 2011), D.E. #50. The FLSA allows for waiver of a FLSA claim if and only if the waiver was authorized by the Secretary of Labor. See 29 U.S.C. § 216(c). Nevertheless, the Court considers it premature to give preclusive effect to the waivers in question at this preliminary stage of the litigation, as the Court cannot yet determine whether and how the waivers affect the rights of each plaintiff and potential plaintiff. See Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234, 240 (N.D.N.Y. 2002). Many of the putative class members in question may have claims not covered by the June 2006-June 2008 audit period. Defendants will have the opportunity to litigate this question through a decertification motion following discovery.

Nevertheless, the Notice should present a more balanced view of the effect of the putative releases. Accordingly, the parties are directed to modify as follows the paragraph

beginning with "In 2009 . . .," Proposed Notice at 2:

> In 2009 or 2010, you may have been given a check described as a "settlement payment" from Cabana and asked to sign a release. If you signed such a release, it may affect your ability to receive unpaid wages and overtime for the period of time covered by the release if the release was approved by the government. You may still be eligible for unpaid wages and overtime under certain circumstances, as well as for periods not covered by the release. If you have any questions, you may contact counsel, including counsel for Plaintiff and the putative class, Lloyd Ambinder, at Virginia & Ambinder, LLP, 111 Broadway, Suite 1403, New York, New York, 10006, (212) 943 9080. Any communications with Virginia & Ambinder are privileged and confidential and will not be disclosed to anyone without your permission.

### D. Information on Discovery Obligations and Costs

Defendants request that the Court modify the Proposed Notice to "include a full description of the potential consequences of [the class members] participation," including costs and discovery obligations. Def. Mem. at 31-32. Decisions in this district have disapproved including in such notices information about costs, "[g]iven the remote possibility that such costs for absent class members would be other than de minimis," as well as the risk of "an in terrorem effect that is disproportionate to the actual likelihood" of significant costs. Guzman, 2007 WL 2994278, at *8; see also Garcia v. Pancho Villa's of Huntington Village, Inc., 678 F.Supp.2d 89, 96-97 (E.D.N.Y. 2010) (rejecting inclusion of language concerning costs). This Court does, however, think it appropriate to include a neutral and non-technical reference to discovery obligations, to insure that opt-in plaintiffs understand that their participation would entail greater obligations than participation in some Rule 23 class actions. Accordingly, the parties are directed to modify the Proposed Notice to include the following: "If you join this lawsuit, you may be asked to give testimony and information about your work for Cabana, to help the Court decide whether you are owed any money."

**E.      Language Concerning Tipped Employees**

Defendants object to several aspects of the Proposed Notice's description of the alleged violations for which putative class members may be entitled to payment.[16]  First, they contend that the Notice language proposed by plaintiff ("You may be owed payment if you worked for Cabana and were not paid at least the minimum wage for all hours worked.") fails to distinguish tipped employees, who, as a matter of law, may be paid less than the regular minimum wage if the employer is eligible to take a tip credit.  Plaintiff argues that defendants improperly appropriated servers' tips to cover losses, and that defendants are therefore barred from claiming a tip credit and paying less than the normal minimum wage.  See Reply Mem. at 4; 29 U.S.C. § 203(m).  If in fact plaintiffs are able to demonstrate that Cabana was ineligible to take a tip credit with respect to some employees for any period of time, those employees "may be owed payment if [they] worked for Cabana and were not paid at least the minimum wage . . . ."  Proposed Notice at 2.  As such, the cited conditional language is not misleading.  Nevertheless, while a short Notice cannot be expected to explain every nuance of wage-and-hour law, the paragraph should be qualified as directed in the next two paragraphs, through an explicit statement that tipped employees may, under some circumstances, be paid less than the regular minimum wage.

---

[16]  "You may be owed payment if you worked for Cabana and were not paid at least the minimum wage for all hours worked.  You may be owed payment even if you are an employee that received tips.  You may be owed payment if Cabana took any portion of your tips or gratuities.  Lastly, you may be owed payment if you worked for Cabana for more than 40 hours per week and you were not paid overtime at time and one-half (1.5x) your normal hourly rate of pay for all hours actually worked over forty (40) hours each week."  Proposed Notice at 2.

Defendants likewise object to, but suggest no alternative to, plaintiff's proposed language concerning overtime rates.  Def. Mem. at 31; see Proposed Notice at 2 ("Lastly, you may be owed payment if you worked for Cabana for more than 40 hours per week and you were not paid overtime at time and one-half (1.5x) your normal hourly rate of pay for all hours actually worked over forty (40) hours each week.").  Because the FLSA and its implementing regulations allow a limited tip credit with regard to overtime hours, the wages due to a tipped employee for each overtime hour will be higher than their normal rate, but not necessarily equal to one and one-half times that rate.  See, e.g., Holder v. MJDE Venture, LLC, No. 1:08-CV-2218 (TWT), 2009 WL 4641757, at *2 (N.D. Ga. Dec. 1, 2009) (explaining the interaction between the FLSA's overtime provisions and the tip credit).  Again, the Notice need not address this distinction in detail, but it should address the tipped/untipped distinction.  Accordingly, the relevant language[17] should be modified as follows:

> You may be owed payment if you worked for Cabana and were not paid at least the minimum wage for all hours worked.  You may be owed payment if you worked for Cabana for more than 40 hours per week and you were not paid overtime at time-and-one-half your normal hourly rate of pay for all hours actually worked over forty (40) hours each week.

> While tipped employees may sometimes be paid less than the regular minimum wage, you may be owed payment even if you are an employee that received tips.  For example, you may be owed payment if Cabana took any portion of your tips or gratuities, if you were not paid for all hours you worked, or if you worked more than forty (40) hours per week and were not paid overtime at more than your normal hourly rate of pay.

The corresponding language under the heading "Federal Law Claims" should be

---

[17] See supra note 16.

-26-

modified to read:

> If you worked for Cabana between 2007 and 2010, you may be
> entitled to certain protection under the Fair Labor Standards Act
> if you received less than the minimum wage for all hours worked.
> You may also be entitled to certain protection under the Fair
> Labor Standards Act for all work in excess of 40 hours each week
> if you received less than one and one-half times (1.5x) your
> regular hourly wage rate. While tipped employees may
> sometimes be paid less than the regular minimum wage, you may
> in certain circumstances be entitled to back wages or overtime
> wages even if you were an employee who received tips.

**F.     Language Concerning the Effect of Failing to Opt In**

Defendants likewise object to language in the Proposed Notice advising putative class

members that they must file "Consent to Join Lawsuit" forms should they wish to participate in

the lawsuit. Defendants contend that the language -- e.g., "[i]f you do not sign and mail the

'Consent to Join Lawsuit' form to the address listed below, you will not be permitted to seek

recovery of unpaid wages under the Fair Labor Standards Act in this case"-- is inaccurate, in

that it "could lead a reasonable person to conclude that unless they join this case, their rights

under the FLSA are forfeited." Def. Mem. at 31. In context, the cited language is accurate

and not misleading, in that it twice conveys that submitting such a form affects participation in

this litigation:

> If you wish to participate in . . . [the FLSA] portion *of the
> lawsuit*, you must have the enclosed written 'Consent to Join
> Lawsuit' Form filed with the Clerk of the Court. If you do not
> sign and mail the "Consent to Join Lawsuit" form to the address
> listed below, you will not be permitted to seek recovery of unpaid
> wages under the Fair Labor Standards Act *in this case*.

Proposed Notice at 3 (emphasis added). Similarly, a subsequent reference to the "Consent to

Join" form likewise accurately conveys that a failure to file such a form affects participation in

this case.  See Proposed Notice at 3 ("If you fail to mail a signed Consent to Joinder form . . .

you will not be eligible to participate in the FLSA portion *of this lawsuit*.") (emphasis added)).

Because the language in question is accurate and necessary, it need not be modified.

### G. Submission of Consent Forms

The Proposed Notice directs would-be plaintiffs to send their Consent to Joinder forms

to plaintiff's counsel.  Recent cases in this district have suggested that such a procedure

implicitly discourages opt-in plaintiffs from selecting other counsel.  See Bowens v. Atl.

Maint. Corp., 546 F.Supp.2d 55, 84-85 (E.D.N.Y. 2008); Iriarte v. Redwood Deli &

Catering, Inc., No. 07-CV-5062 (FB)(SMG), 2008 WL 2622929, at *4 (E.D.N.Y. June 30,

2008); Guzman, 2007 WL 2994278, at *9.  Accordingly, the Notice should be modified to

direct opt-in plaintiffs, within forty-five days of the date of the Notice, to file their Consent to

Joinder forms with the Court, which will then cause the Consents to be docketed into the ECF

system and thus served on all counsel of record:

> United States Magistrate Judge Roanne L. Mann
> United States District Court
> 225 Cadman Plaza East
> Brooklyn, NY  11201

Plaintiff's counsel may further modify the format of the Notice to ensure that the

revised version includes a sufficiently prominent mention of the firm's contact information.

### H. Posting the Notice

Defendants shall post copies of the Notice, including any translated versions,[18] in each

---

[18]  The mailed Notice should likewise be circulated in both English and Spanish.  See Cano,
2009 WL 5710143, at *10.

of the New York restaurants, in a location conspicuous to all employees at those restaurants.

See Garcia, 678 F.Supp.2d at 96 (collecting cases).  The Notice shall remain up at least for the duration of the opt-in period.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for conditional certification as an FLSA collective action, pursuant to section 216(b) of the FLSA, and for court-authorized notice, is granted in limited part, in accordance with the guidelines detailed in this opinion.

Any objections to the rulings contained in this Memorandum and Order must be filed with the Honorable I. Leo Glasser on or before **February 15, 2011**.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.

The Clerk is directed to enter this Report and Recommendation into the ECF system.


**SO ORDERED.**

**Dated:    Brooklyn, New York**
**February 1, 2011**


                                **ROANNE L. MANN**
                                **UNITED STATES MAGISTRATE JUDGE**