**jackson|lewis**
Attorneys at Law

Representing Management Exclusively in Workplace Law and Related Litigation

Jackson Lewis LLP
58 South Service Road
Suite 410
Melville, New York 11747
Tel 631 247-0404
Fax 631 247-0417
www.jacksonlewis.com

ALBANY, NY · ALBUQUERQUE, NM · ATLANTA, GA · BALTIMORE, MD · BIRMINGHAM, AL · BOSTON, MA · CHICAGO, IL · CINCINNATI, OH · CLEVELAND, OH · DALLAS, TX · DENVER, CO · DETROIT, MI · GREENVILLE, SC · HARTFORD, CT · HOUSTON, TX · INDIANAPOLIS, IN · JACKSONVILLE, FL · LAS VEGAS, NV · LONG ISLAND, NY · LOS ANGELES, CA · MEMPHIS, TN · MIAMI, FL · MILWAUKEE, WI · MINNEAPOLIS, MN · MORRISTOWN, NJ · NEW ORLEANS, LA · NEW YORK, NY · NORFOLK, VA · OMAHA, NE · ORANGE COUNTY, CA · ORLANDO, FL · PHILADELPHIA, PA · PHOENIX, AZ · PITTSBURGH, PA · PORTLAND, OR · PORTSMOUTH, NH · PROVIDENCE, RI · RALEIGH-DURHAM, NC · RICHMOND, VA · SACRAMENTO, CA · SAN DIEGO, CA · SAN FRANCISCO, CA · SEATTLE, WA · STAMFORD, CT · WASHINGTON, DC REGION · WHITE PLAINS, NY

MY DIRECT DIAL IS: 631-247-4652
MY EMAIL ADDRESS IS: BRECHERJ@JACKSONLEWIS.COM

February 11, 2011

**VIA ECF**

Magistrate Judge Roanne L. Mann
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    Lujan v. Cabana Management, Inc.
                Case No. 10-cv-0755

Dear Magistrate Judge Mann:

    As counsel for the Defendants, we are writing to request the Court resolve three disputes the parties have regarding the notice to be issued to putative members of the collective action in this case. The parties agreed to submit simultaneous letters. This letter sets forth Defendants' position as to each dispute.

    The Court granted, in part, Plaintiffs' motion for conditional certification, and ordered notice be sent to members of the putative class. *See* February 1, 2011 Order (Dkt 55). The parties did not brief the details of how the list of notice recipients should be provided, and, therefore, the Court issued no instructions on the issue.

    The parties agree that a neutral third-party administrator should be used to conduct the mailing. A third-party administrator will ensure that all individuals on the class list will timely receive the notice and the administrator is better equipped to handle returns and identify forwarding addresses. Even though this will ensure the timely and effective distribution of the notice as required by the Court's Order, Plaintiffs insist on having Defendants produce the class list, not only to the third-party administrator, but directly to Plaintiffs' counsel as well. Defendants' believe the list should be disclosed only to the neutral third-party administrator.

I.    *No Legitimate Purpose is to be Served by Disclosing the List of Notice Recipients to Plaintiffs*

    Plaintiffs have identified no legitimate reason why a list of over 400 employees (Plaintiffs actually contemplate sending over 750 notices, *see below at 5*) containing their names and addresses should be provided to Plaintiffs' counsel. In addition to privacy concerns (many employees likely would be displeased to learn that their names and addresses have been given to Plaintiffs' attorney) there are also concerns about solicitation from Plaintiff Lujan. Current employees have complained that Plaintiff Lujan (and others) have called them encouraging then to sue and promising that they would "get a lot of money" if they do so, and have solicited in person at a restaurant during business hours and at or near the close of business. A former employee also complained that he was contacted via Facebook soliciting him to join the case. The use of a third party administrator will ensure the list is not used for any other purpose other than the purpose ordered by the Court—notifying putative members of their right to join the case.

    Numerous courts have approved this process as fair and a preferred method of distributing notice. *See, e.g., Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128 (N.D. Cal., Oct. 26, 2009) ("Plaintiffs

ask the Court to order Defendant to provide their counsel with contact information for all putative class members so that counsel can provide them with a court approved notice. The Court finds that it would be more appropriate to have a third-party claims administrator distribute the collective action notice. Although Plaintiffs correctly note that the Court is authorized to order the production of potential class members' contact information to Plaintiffs' counsel, they have not explained why it would be preferable for their counsel to oversee distribution of the notice. Contact information for Plaintiffs' counsel would be contained in the notice and the potential class members may contact counsel if they wish."); see also, Gandhi v. Dell, Inc., 2009 U.S. Dist. LEXIS 96793,*5 (W.D. Tex., Oct. 20, 2009); Robinson v. Empire Equity Group, Inc., 2009 U.S. Dist. LEXIS 107607, *19 (D. Md., Nov. 18, 2009) ("the plan should include safeguards for the privacy of potential class members, such as a requirement that notices be mailed by a mutual third party administrator.); Gilbert v. Citibank, 2009 U.S. Dist. LEXIS 18981 (N.D. Cal., Feb. 18, 2009); In re Pilgrim's Pride Fairy Labor Standards Act Litigation, 2008 U.S. Dist. LEXIS 40360, *3 (W.D. Ark. May 14, 2008); In re American Family Mutual Insurance Co., Overtime Pay Litigation, 2009 U.S. Dist. LEXIS 11169, *11 (D. Colo., Feb. 3, 2009) ("I find that use of a third-party administrator is appropriate to protect the integrity of the process and to protect the confidential information of potential opt-in plaintiffs."); Wren v. RGIS Inventory Specialists, 2007 U.S. Dist. LEXIS 95439, *30 (N.D. Cal., Dec. 19, 2007).

Accordingly, Defendants respectfully request that the Court order the list of putative class members be produced only to the neutral third-party administrator for mailing, administration of returned notices and record-keeping. Plaintiffs' counsel's name, address and telephone number are prominently displayed on the notice, and any putative class member who has a question or concern regarding the case can contact Plaintiffs' counsel as referenced in the notice. Plaintiffs' contention that they need the list for Plaintiffs to verify the names of employees is complete is specious. Defendants will provide Plaintiffs' counsel with the total number of individuals on the list and number holding each position along with an affidavit, if necessary, that the list is complete. Further, if Plaintiffs have any qualms about whether it is complete, we have no objection to having the third party administrator verify the inclusion of any names Plaintiffs identify. Plaintiffs' counsel's offer not to show the list to Plaintiffs (but allow them to review the names) does not satisfy the concerns regarding solicitation, as Plaintiffs could easily use those names to resume a solicitation campaign, whether through facebook or other outlets.

II.     *The Court's Order Made No Determination Regarding Notice to "Cooks"*

In its Order, the Court held that in addition to bussers and runners (positions held by Lujan during the FLSA limitations period), because Defendants submitted acceptable affidavits from servers, hostesses, and bartenders outlining "shared" violations, these job positions should also be given notice:

> Defendants object to the scope of the proposed opt-in class, which includes "servers, hosts(esses), bartenders, bar-backs, busboys, runners, dishwashers, and other restaurant related tasks" at the locations in question.
>
> . . . . As discussed previously, plaintiff alleges violations shared among each of ***those job classifications***. In light of those shared violations, the job classifications suggest a distinction without a difference. See Cano, 2009 WL 5710143, at *7 (collecting cases); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007). Accordingly, the class definition will not be so limited, except to the extent that the class will comprise only those workers employed at the New York locations during the FLSA limitations period.

Order, p. 21 (emphasis added). The Court, we believe, when referring to "those job classifications," is referring the jobs the Court identifies in the first sentence of the paragraph (based on Plaintiffs' counsel's own enumeration of positions to be included, which does not identify cooks). Plaintiffs seize on the last sentence of this paragraph, however, to argue that *all* employees (excluding management and administrative staff) are included, claiming that the catchall phrase "and other restaurant related tasks," *i.e.*,

everyone else, is what the Court intended. Specifically, that although Plaintiffs never mentioned cooks at any time during the course of the motion for conditional certification and the Court did not discuss them, the Court intended *prep cooks and line cooks* be covered by "and other restaurant related tasks."

Plaintiffs submitted no evidence that cooks were subjected to any violation, nor are cooks identified in their list of enumerated titles. Plaintiff submitted not a single affidavit from any current or former cook and *none* of the affidavits submitted by any former employees in any job position ever mentions cooks. Accordingly, while the Court undertook extensive analysis of the affiants' claims as applied to the positions Plaintiffs specifically identified; namely, servers, hosts(esses), bartenders, busboys and runners, there is no discussion regarding cooks. This is no small matter. The inclusion of cooks adds over *150 putative employees* to the collective action, impermissibly escalating the burdens of litigation on a small employer in the absence of any proof. *See Prizmic v. Armour, Inc.*, 2006 U.S. Dist. Lexis 42627, *7 (E.D.N.Y., June 12, 2006) (noting that absent showing of proof that employees are similarly situated, "an employer may be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense") (internal quotations omitted).

II. *The Court Appears to Have Included Dishwashers Based on an Erroneous Determination of Fact*

The Court may have included dishwashers based on being misled to believe that Plaintiff Lujan, the only dishwasher affiant or claimant, actually worked as a dishwasher during the FLSA statutory period. *See* Order at 2 ("Lujan worked . . . from 2002 to March 2009 as a dishwasher, runner, and busboy"). Indeed, the Court noted Lujan was paid approximately $6.50 per hour for work as dishwasher, which was "close to the $6.55 per hour federal minimum wage in effect at the time he left Cabana", indicating that the Court accepted that Lujan was indeed employed as a dishwasher at that time (2009), and suggesting an arguable minimum wage violation if proven. Order, p. 20. But Lujan's affidavit lumps together all his work positions without identifying when he worked in each position. Lujan did not work as a dishwasher during the FLSA or NYLL statutory period,[1] and never specifically claims otherwise. His statement that he earned $6.50 per hour as a dishwasher (in 2002 and 2003) only establishes *the absence of any minimum wage violation*, as the minimum wage in 2002-2003 was $5.15 per hour.

Because we believe the Court was misled that Lujan was employed during the FLSA statutory period, and there is no other basis for inclusion of dishwashers, we ask the Court to clarify that dishwashers are excluded. Again, the inclusion of dishwashers greatly expands the case, adding over 180 additional employees.

Accordingly, we respectfully request that the Court clarify that cooks and dishwashers are not included within the conditionally certified class,[2] and order disclosure of the class list only to the neutral third-party administrator. Thank you for your consideration of these matters.

Respectfully yours,

JACKSON LEWIS LLP

Jeffrey W. Brecher

JWB/mf

cc:     Lloyd Ambinder, Esq. *(via ECF)*

---

[1] *See* Affidavit of Elisa Frechter, dated November 5, 2010, ¶ 24 (DKT 42).
[2] The reference in the notice to employees performing "other restaurant related tasks" should be eliminated and the specific positions identified.