Douglas Weiner, Esq.
Donald S. Krueger, Esq.
David J. Clark, Esq.
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177-1211
Tel: 212.351.4500
dweiner@ebglaw.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GERARDO VALDEZ LUJAN, individually and on behalf
of all other persons similarly situated who were employed
by CABANA MANAGEMENT, INC. and/or GLENN
FRECHTER; and/or any other entities affiliated with or
controlled by CABANA MANAGEMENT, INC. and/or
GLENN FRECHTER,

                                        Plaintiffs,

                          - against -

CABANA MANAGEMENT, INC. and/or GLENN
FRECHTER, and/or any other entities affiliated with or
controlled by CABANA MANAGEMENT, INC. and/or
GLENN FRECHTER,

                                        Defendants.

10 Civ. 0755-ILG-RLM

ECF CASE

**DEFENDANTS'
MEMORANDUM OF LAW IN
SUPPORT OF THEIR
MOTION TO DECERTIFY
PLAINTIFFS' FLSA
COLLECTIVE ACTION**

# TABLE OF CONTENTS

**PAGE**

Defendants' Motion to Decertify the Conditionally Certified
Collective Action Should Be Granted Because Plaintiffs Have
Failed to Present Substantial Evidence They Are Similarly Situated ...................................... 1

I.    Introduction............................................................................................................... 1

II.   Applicable Legal Standard......................................................................................... 4

III.  Plaintiff Lujan's Allegations of Violation ................................................................ 7

IV.   Defendants' Timekeeping System and Pay Policies are Lawful ............................... 8

      A. Plaintiffs Failed to Present Substantial Evidence of a Common Policy
         Requiring Servers to Wait To Punch In Until Their First Table Arrived .................. 10

      B. Plaintiffs Failed to Present Substantial Evidence That Cabana's
         Policy Was to Adjust Time Reports to Deny Overtime Pay....................................... 12

      C. Plaintiffs Failed to Present Substantial Evidence That Cabana's
         Policy Required Employees to Pay For Walk-Outs and Server Mistakes .................. 12

V.    Disparate Factual and Employment Settings of the Opt-Ins Mandate Decertification..... 13

      A. Putative Plaintiffs Are Not Similarly Situated Because They Worked in
         Different Occupations at Different Locations Under Different Managers
         During Different Time Periods With Disparate Damages Calculations..................... 13

      B. Opt-Ins Were Not Similarly Situated Regarding
         Alleged Payment of Mistakes Or Walk-Outs ............................................................ 16

      C. Opt-Ins Were Not Similarly Situated Regarding
         Punched Starting and Ending Times......................................................................... 17

      D. Opt-Ins Were Not Similarly Situated Regarding Overtime Claims............................ 19

      E. Putative Plaintiffs Are Not Similarly Situated
         Regarding Multiple Paychecks in One Week ............................................................ 21

VI.   Defenses Individual to Each Opt-In Plaintiff Precludes Collective Action...................... 21

      A. Lujan Particularly Is Not Similarly Situated Because of His Settlement
         With The DOL For The Period From June 2006 to June 2008 .................................. 21

i

B.  Other Individualized Defenses Require Decertification ............................................ 23

VII.   Fairness and Procedural Considerations Mandate Decertification ................................... 23

VIII.   Conclusion ......................................................................................................................... 25

FIRM:16252447v3

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*Ayers v. SGS Control Servs.*,
    No.03 Civ. 9078 (RMB), 2007 WL 646326 (S.D.N.Y. Feb 26, 2007) .....................................4

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ...............................................................................................6

*Diaz v. Elecs. Boutique of Am., Inc.*,
    No. 04-CV-0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ..............................24

*Goldberg v. Kelly*,
    397 U.S. 254 (1970)................................................................................................................23

*Laroque v. Domino's Pizza, LLC.*,
    557 F. Supp. 2d 346 (E.D.N.Y. 2008) ..................................................................................4, 5

*Lee v. ABC Carpet & Home*,
    236 F.R.D. 193 (S.D.N.Y. 2006) ..........................................................................................5, 6

*Lynn's Food Stores v. United States*,
    679 F.2d 1350 (11th Cir.1982) ...............................................................................................21

*Mendoza v. Casa De Cambio Delgado, Inc.*,
    07-CV-2579 (HB), 2008 U.S. Dist. LEXIS 27519 (S.D.N.Y. Apr. 7, 2008) ..........................6

*Mooney v. Aramco Servs., Co.*,
    54 F.3d 1207 (5th Cir. 1995) ..................................................................................................21

*Myers v Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)......................................................................................................5

*Norris-Wilson, et al. v. Delta-T-Group, Inc.*,
    No. 09CV0916-LAB(RBB), 2010 WL 2196066 (S.D. Cal. June 1, 2010) ...............................5

*Rogers v. CVS Pharmacy, Inc.*,
    No. 8105-CV770T-27MSS, 2006 WL 752831 (M.D. Fla. Mar. 23, 2006)............................11

*Smith v. T-Mobile USA, Inc.*,
    No. CV-05-5274, 2007 WL 2385131 (C.D. Cal. Aug. 15, 2007) ...........................................23

*Sneed v. Sneed's Shipbuilding, Inc.*,
    545 F.2d 537 (5th Cir. 1977) ..................................................................................................21

iii

*Tussing v. Quality Resources, Inc.*,
    8:09-cv-1833-T-26AEP, 2009 WL 4350253 (M.D. Fla. Nov. 25, 2009) ............................. 6-7

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ........................................................................................24

*W. Elec. Co. v. Stern*,
    544 F.2d 1196 (3d Cir. 1976)........................................................................................23

*Wal-Mart Stores Inc. v Dukes*,
    ___S. Ct. ____, No. 10-277, 2011 WL 2437013 (U.S. June 20, 2011)..........................3, 4, 12

*Zivali v. AT & T Mobility, LLC*,
    --- F. Supp. 2d ---, 2011 WL 1815391 (S.D.N.Y. May 12, 2011).........................2, 4, 5, 11, 12

**RULES AND STATUTES**

29 U.S.C. § 216(b) .........................................................................................................1, 4

29 U.S.C. § 216(c) .........................................................................................................21, 22

**SECONDARY AUTHORITIES**

7B Charles Allen Wright, *et al.*, *Federal Practice & Procedure* § 1807 (3d ed. 2005).................5

**Defendants' Motion to Decertify the Conditionally Certified
Collective Action Should Be Granted Because Plaintiffs Have
Failed to Present Substantial Evidence They Are Similarly Situated**

**I.      Introduction**

Defendant Cabana Management Inc. has varying ownership interests in 3 restaurants doing business in New York. Each restaurant is separately owned and managed, although they each have implemented Cabana's computerized timekeeping system to record and pay for hours worked. For purposes of this decertification motion the restaurants are referred to as Cabana Forest Hills, Cabana Midtown and Cabana Seaport (collectively, "Cabana"). Plaintiff Gerardo Valdez Lujan ("Lujan") was a former busboy and runner at Cabana Forest Hills. He brings this lawsuit alleging that he and other "similarly situated" employees working as "dishwashers, cooks, food preparers, servers, bartenders, bussers, runners and other related jobs" were denied minimum wages and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York State labor law.

On February 1, 2011, the Court granted a portion of plaintiff's motion to conditionally certify a wide ranging class of employees as a collective action pursuant to Section 216 of the FLSA, 29 U.S.C. § 216(b). The Court's decision was based on a "lenient standard" and Lujan's "modest factual showing" that he was similarly situated to other employees with respect to the payment of overtime and wages. (*See Lujan v. Cabana Mgmt., et al.,* 10-CV-755-ILG-RLM, Memorandum and Order dated February 1, 2011 (Docket Entry No. 55, page 7), attached as Exhibit 10 to the Declaration of Douglas Weiner, Esq., in Support of Defendants' Decertification Motion, dated July 5, 2011 (the "Weiner Decl.")).

Discovery concluded July 1, 2011 and now decertification is warranted. Following the Court's notice provisions to over 660 putative class members, 22 additional plaintiffs opted-in to this action. Defendants produced time and payroll records for all 23 putative plaintiffs, but only Lujan and 8 opt-in plaintiffs appeared for their noticed depositions. The record created in discovery establishes that the opt-in plaintiffs are not similarly situated to Lujan, and simply cannot be adjudicated on a representative basis as a collective action.

At the decertification stage, plaintiffs must now prove by substantial evidence that they were similarly situated as victims of a common corporate policy, capable of representative adjudication. However, as described below, in this case representative evidence would be inherently unjust given the fact-specific nature of each plaintiffs' back wage claims, heavily dependent as they are upon numerous material variations in their occupations, daily shift schedules, duties and hours of work, restaurant location, discretion of the managers on duty, periods of employment, individual analysis of weekly punch reports and payroll records. *See, e.g., Zivali v. AT & T Mobility, LLC*, --- F. Supp. 2d ---, 2011 WL 1815391 (S.D.N.Y. May 12, 2011).

Further, decertification is required for Cabana to assert individualized affirmative defenses against the various plaintiffs. The prime example is Lujan, who in 2009 settled all but 10 months of his claims against Cabana under the supervision of the United States Department of Labor ("DOL"), thus precluding his subsequent claims in this lawsuit. (*See* Weiner Decl. Exhibit 49)[1]. Individualized defenses are also required for the 3 opt-ins who

---

[1] The Court is respectfully referred to the Weiner Decl., for the evidence submitted in support of Defendants' Decertification Motion. Among other exhibits, the Weiner Decl. attaches the transcripts of the nine depositions of opt-in plaintiffs that have been taken herein. Those depositions are cited as "_____ Dep.", where the blank is filled in with the last name of the deponent. For example, the transcript of the deposition of Gerardo Lujan is

accepted Rule 68 Offers of Judgments and the 11 opt-ins who refused to cooperate in discovery, thus failing to meet their burdens of proof that they are similarly situated. Individualized analysis of time and payroll records is necessary to refute exaggerated anecdotes stemming from possible aberrations to Cabana's routine policy to pay employees for all hours worked. (Reyes Dep. 13:14-20, 28:21-29:2; Patchen Dep. 80:14-81:14, 84:6-85:21). In this case, the dissimilarities of the putative plaintiffs far outweigh any presumed similarities. The opt-in dishwasher, chef and servers work in substantially dissimilar job occupations from each other and the opt-in busboys and runners. The most dissimilar putative plaintiff is Moran, the salaried kitchen manager. Plaintiffs' anecdotal allegations of deviations from Cabana's stated lawful policies are antithetical to collective adjudication, threatening the due process rights of both Cabana and any plaintiffs whose back wage calculations are performed by formula on a representative basis.

The recent United States Supreme Court decision in *Wal-Mart Stores, Inc. v Dukes*, ___ S. Ct. ___, 2011 WL 2437013 (U.S. June 20, 2011) supports Cabana's motion for decertification and mandates the conclusion that the opt-in plaintiffs are not similarly situated. According to the Supreme Court in *Dukes*, representative testimony and "Trial by Formula" are disfavored without a clear common contention capable of a single adjudication. "That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*, 2011 WL 2437013, at *7.

---

referred to as the "Lujan Dep." A similar form is followed for other declarations attached to the Weiner Decl., *e.g.*, the Declaration of Benjamin Bautista is referred to as the "Bautista Decl."

FIRM:16252447v3

In this case there is no "one stroke" that answers the questions central to each plaintiff's claim. Rather each claim must be answered individually. In this case, as in *Dukes and Zivali*, the company policies are lawful, rather than facially unlawful. Like Wal-Mart and AT&T, Cabana's computerized time-keeping system is capable of recording all hours worked and is designed to ensure that employees are fully compensated for their work. Moreover, the alleged practice among some servers to wait until their first table to punch in so they wouldn't have "too many hours" and be sent home "during a Saturday night shift or a Sunday brunch shift," when large tips could be made (Patchen Dep. 37:19-38:5), even if true, would not establish a company-wide common policy and does not allow collective resolution of claims for back wages. Whether or not such an alleged unwritten policy exists, an employee must prove that he or she was paid in violation of the FLSA to have a valid claim, and whether or not the alleged unlawful policy exists, an employee who was paid in compliance with the FLSA has no right to recover. Thus, even the allegation of an unwritten "practice" cannot support a collective action. The putative plaintiffs have, at most, individual wage and hour claims that are incapable of fair back wage calculations through representative testimony.

## II.     Applicable Legal Standard

The FLSA authorizes employees to bring an action on behalf of themselves and other "similarly situated" employees. 29 U.S.C. § 216(b). Plaintiffs bear the burden of proving they are similarly situated to members of the proposed collective action. *Ayers v. SGS Control Servs.,* No. 03 Civ. 9078 (RMB), 2007 WL 646326, at *4 (S.D.N.Y. Feb. 26, 2007). Courts in this circuit follow a two-step process, looking first to the pleadings and affidavits to determine whether the putative class members are similarly situated. *Laroque v.*

*Domino's Pizza, LLC.*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008).  Courts follow a lenient

standard or "minimal burden" to conditionally certify a FLSA class. *See Lee v. ABC Carpet*

*& Home,* 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

Now at the second stage, courts must apply a much more "stringent standard" of

proof in determining whether plaintiffs are similarly situated for the purposes of the FLSA.

*Myers v Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010) ("At the second stage, the district

court will, on a fuller record, determine whether the so-called 'collective action' may go

forward by determining whether the plaintiffs who have opted in are in fact 'similarly

situated' to the named plaintiffs.'"); *Zivali,* 2011 WL 1815391.  "Because of the heavier

burden of proof for deciding whether the group is 'similarly situated,' courts have

recognized that few actions will be certified at this stage." *Norris-Wilson v. Delta-T-Group,*

*Inc.,* No. 09CV0916-LAB(RBB), 2010 WL 2196066, at *2 (S.D. Cal. June 1, 2010) (citing

7B Charles Allen Wright, *et al., Federal Practice & Procedure* § 1807 (3d ed. 2005)).

Here, conditional certification was granted under the lenient standard at the notice

stage.  Now that discovery is complete, the Court must determine whether plaintiffs are

similarly situated using the stricter, second-stage standard.   Plaintiffs can no longer rely on

hearsay, anecdotes or unsubstantiated assertions of unauthorized practices.  Rather, plaintiffs

must present ***substantial evidence*** of a uniform, unlawful policy applicable to all opt-ins to

permit these claims to be adjudicated in a collective action.  Relevant factors include (1) the

disparate factual and employment settings of the opt-ins, (2) the various defenses available

to Cabana that may be individual to each plaintiff, and (3) fairness and procedural

considerations. *Zivali,* 2011 WL 1815391; *Laroque,* 557 F. Supp. 2d at 352 (citation omitted).

If the court concludes that the plaintiffs are similarly situated, the collective action proceeds

to trial with representative testimony permitted; but if they are not, "the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims." *Lee,* 236 F.R.D. at 197 (citation omitted).

Rather than substantial evidence, Lujan has presented scant admissible evidence that he is similarly situated to the other putative plaintiffs in this case, or that they were all victims of a common corporate policy or widespread unlawful practice. Cabana produced meticulous payroll records evidencing regular and overtime payment for all time punched. Plaintiffs produced no evidence that Cabana's policies or timekeeping system are illegal.

The variety of wage claims asserted, and Cabana's defenses to those claims, highlight the utter lack of a common nexus among putative plaintiffs who worked in different occupations, at different locations, under different managers during different time periods. Each claim has an individualized defense based on a different set of facts and law.

Moreover, the boilerplate attorneys' affidavits (many of which were based on anecdotal evidence and rank hearsay) submitted in support of conditional certification fall well short of sustaining plaintiffs' burden of proving that they are similarly situated. *See, e.g., Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 159-160 (S.D.N.Y. 2008) (discounting probative value and credibility of affidavits submitted respecting class certification where the affidavits were "clearly composed by lawyers" and "in all material respects identical [to] one another"); *Mendoza v. Casa De Cambio Delgado, Inc.,* No. 07-CV-2579 (HB), 2008 U.S. Dist. LEXIS 27519, at *6 (S.D.N.Y. Apr. 7, 2008) (finding plaintiffs' affidavits in support of class certification motion to be unpersuasive where they "appear to be boilerplate and virtually identical"). *See also Tussing v. Quality Resources,*

6

*Inc.*, No. 8:09-cv-1833-T-26AEP, 2009 WL 4350253, at *3 (M.D. Fla. Nov. 25, 2009) (finding affidavits submitted by plaintiffs seeking class certification to be "woefully insufficient" where "[p]laintiffs' affidavits are largely the same affidavit  signed by six different employees, with few minor differences . . . .").

Plaintiffs' affidavits submitted in support of conditional certification are woefully insufficient.  Lujan's deposition testimony contradicts material assertions of his affidavit. Lujan's affidavit states that he was denied overtime because he "was always paid by two payroll checks." (*See* Weiner Decl. Exhibit 11).  However, at deposition he admits Cabana always paid him with one paycheck, with the exception of a two-week period in 2002 when he worked shifts at both Forest Hills and Midtown, receiving one paycheck from each restaurant. (Lujan Dep. 15:18-16:10, 52:8-23, 56:14-19, 57:13-17, 57:22-58:6, Exhibit 1). At all times applicable to this lawsuit Lujan was paid all regular and overtime wages with one weekly paycheck from Forest Hills. (Lujan Dep. 141:4-10).

Another significant "boilerplate" affidavit allegation intended to bolster the illusion of "similarly situated" plaintiffs was Lujan's statement that he observed coworkers' paychecks and saw those paychecks had violations similar to his own.  However, at his deposition Lujan admitted that he never saw any other employees' paychecks. (Lujan Dep. 64:13-15).  Cabana proved Lujan's unsupported allegations are factually erroneous.

**III.    Plaintiff Lujan's Allegations of Violation**

Lujan was employed by Cabana Forest Hills from August 2002 through April 2009. (Lujan Dep. 13:25-14:13).  From 2003 through 2009, he worked as a busser (busboy) and runner. (Lujan Dep. 62:9-11).  During a brief two week period in 2002 Lujan worked as a dishwasher both at Cabana Forest Hills and Cabana Midtown. (Lujan Dep. 71:12-72:2,

7

179:12-17).  Lujan implied, but did not produce evidence, that the sum of his weekly hours worked from both restaurants exceeded 40.  Lujan alleges Cabana had a corporate wide policy of "always" paying employees with two paychecks at straight time to evade paying overtime; requiring servers to work off the clock before their first customers arrived; making improper reductions to time records; punching employees out while they were still working; and forcing employees to pay for their mistakes with tip money.  (*See* Weiner Decl. Exhibit 11).

However, he presented no evidence of a corporate wide policy.  To the contrary, Lujan recalls only one 2002 anecdote of receiving 2 paychecks, and one 2003 anecdote of paying $20 for a mistake on a take-out order.  He is unable to recall with specificity any other incidents to support his claims.  He is unable to articulate a monetary claim, or a method to calculate one.

An adjudication of Lujan's claims does not answer the claims of the other putative plaintiffs.  The disparate nature of the facts and circumstances of the various opt-in plaintiffs combined with Cabana's individualized defenses and due process rights strongly weigh in favor of decertification.  As detailed below, defendants' motion should be granted.

## IV.   Defendants' Timekeeping System and Pay Policies are Lawful

Cabana's computerized timekeeping system is designed to capture and pay for all hours worked.  (Madrigal Decl. ¶6; Castellanos Decl. ¶7; Limo Decl. ¶7; Diaz Decl. ¶7; Vivanco Decl. ¶6; Santos Decl. ¶6; Villalbos Decl. ¶6; Ramirez Decl. ¶6; Alberca Decl. ¶6; Hernandez Decl. ¶7; Pinero Decl. ¶6).[2]  Employees are instructed to record hours worked using Cabana's computer system by punching in when their shift begins and punching out

---

[2] The various Declarations cited herein are attached to the Weiner Decl. as Exhibits 12-34.

for breaks and when their shift ends.  (Frechter Decl. ¶¶7-8; Madrigal Decl. ¶11; Jacobi ¶¶7, 12; Martinez Decl. ¶9; Pastor Decl. ¶7; Pulla Decl. ¶8; Alberca Decl. ¶11; Santos Decl. ¶11; Orosco Decl. ¶10; Ramirez Decl. ¶11; Villalbos Decl. ¶11; Vivanco Decl. ¶11 Diaz Decl. ¶12; Guzman Decl. ¶9; Hernandez Decl. ¶12).  Cabana did not have a policy that required servers to wait to punch in until their first table arrived.  (Bautista Decl. ¶4e; Frechter Decl. ¶9; Quinterro Decl. ¶3e; Rodriguez Decl. ¶3e).

Cabana's policy is to have employees punched in for all the time worked.  Managers must make adjustments to time reports when employees forget to punch in or out, or forget to punch in and out for breaks.  Managers make adjustments to reflect actual hours worked. (Ruiz Dep. 133:9-15, 111:18-113:7).  Cabana's policy is to pay for all time worked, and managers often adjust time reports to add hours when employees forget to punch in. (Bautista Decl. ¶5; Quinterro Decl. ¶4; Rodriguez Decl. ¶4; Pinero Decl. ¶11.  *See also* Cabana's Handbook, at Weiner Decl. Exhibit 35).

Cabana employs servers, bussers, runners, bartenders, and hostesses in the "front of the house" and cooks, dishwashers and others in the "back of the house."  Each occupation is paid differently.  Dishwashers, cooks and hostesses are paid hourly, no less than the applicable minimum wage.  Servers, bussers, runners, and bartenders are tipped employees paid an hourly wage and tips.  (Orosco Decl. ¶6; Reyes Decl. ¶5; Hernandez Decl. ¶9; Guzman 5; Frechter Decl. ¶5; Limo Decl. ¶9; Castellanos Decl. ¶8; Diaz Decl. ¶9; Vivanco Decl. ¶8; Villalbos Decl. ¶8; Santos Decl. ¶8; Ramirez Decl. ¶8; Pinero Decl. ¶8; Alberca Decl. ¶8; Pulla Decl. ¶7; Pastor Decl. ¶4; Martinez Decl. ¶5).

All hourly employees clock in and out using computer terminals located at each restaurant to record the time they start and finish work.  Although the computerized

9

timekeeping vendor has changed over time, the basic system of clocking in and out has been in existence at Cabana at all relevant times. (Castellanos Decl. ¶12; Limo Decl. ¶12).

Cabana's records of plaintiffs' time reports, payroll records and void reports generated and maintained in the ordinary course of business contradict Lujan's claims and those of the opt-in plaintiffs that Cabana improperly reduced the time reports. (Weiner Decl. Exhibits 35-48). Plaintiffs assumed managers adjusted time improperly, but did not actually see them do so. (Frechter Decl. ¶¶11-12; Ruiz Dep. 26:12-19; Patchen Dep. 104:14-18).

Cabana did not have a policy that requires servers to pay for food orders if a customer walks out of the restaurant without paying their bill. If this happens, the restaurant voids the amount and incurs this cost. Customer walk-outs happen very rarely, and employees do not have to pay for a meal because the customer walked out without paying. (Bautista Decl. ¶4b; Quinterro Decl. ¶3b; Rodriguez Decl. ¶3b). Cabana did not have a policy that requires employees to pay for take-out orders that are not picked up. Rather, Cabana incurs the cost. (Bautista Decl. ¶4c; Quinterro Decl. ¶3c; Rodriguez Decl. ¶3c). Cabana did not have a policy that requires servers or any other employee to pay for mistakes they made with customer orders. Employee mistakes are voided and Cabana incurs the cost. (Bautista Decl. ¶4d; Quinterro Decl. ¶3d; Rodriguez Decl. ¶3d). *See* examples of Cabana void reports, discussed at depositions of opt-in plaintiffs. (Weiner Decl. Exhibits 44-46).

**A.      Plaintiffs Failed to Present Substantial Evidence of a Common Policy Requiring Servers to Wait To Punch In Until Their First Table Arrived**

Servers admit and Cabana's punch reports evidence that they frequently punched in when they were scheduled to start to work. (Patchen Dep. 45:16-23; Bovender Dep. 51:10-

10

19, 52:22-53:23; Frechter Decl. ¶9.  *See* Weiner Decl. Exhibits 36-43; Castellanos Decl. 12; Limo Decl. ¶12; Diaz Decl. ¶12; Hernandez Decl. ¶12; Reyes Hernandez Decl. ¶9; Jacobi Decl. ¶12; Martinez Decl. ¶9; Pulla Decl. ¶8; Alberca Decl. ¶11; Madrigal Decl. ¶11; Orosco Decl. ¶10; Pinero Decl. ¶11; Ramirez Decl. ¶11; Santos Decl. ¶11; Villalbos Decl. ¶11; Vivanco Decl. ¶11).  Specifically, Cabana's punch records show that servers routinely and typically punched in prior to their restaurant opening for lunch, and that many servers punched in for the midday shift between 10:00 and 10:15 am, or even earlier.  (Weiner Decl. Exhibits 36-43).  These records prove Cabana's policy was to pay employees from their starting time.  (Frechter Decl. ¶10).

Plaintiffs have not, and cannot, argue that Cabana's time keeping system is unlawful. Rather, plaintiffs argue that individual restaurant managers improperly adjusted their time records in order to deprive employees of wages and overtime pay.  Cabana's use of a computerized time-keeping system in itself is insufficient to prove that the individual opt-ins are similarly situated.  *Zivali,* 2011 WL 1815391, at *3-4 (granting motion to decertify class where company's computerized time keeping system was alleged to have been modified by individual store managers requiring "off the clock" work) (citations omitted); *Rogers v. CVS Pharmacy, Inc.,* No. 8:05-CV770T-27MSS, 2006 WL 752831, at *5 (M.D. Fla. Mar. 23, 2006) (denying conditional certification of FLSA action alleging time shaving where putative class uses same computerized time-keeping system).

The recent decision in *Zivali* mandates the decertification of this action.  There, like here, the employer maintained a lawful computerized time keeping system.  *Zivali* argued that notwithstanding the lawful nature of this type of timekeeping system, the employer's unwritten policy of requiring off-the-clock work established a common practice so that the

11

plaintiffs were "similarly situated." The *Zivali* court granted defendants' motion for decertification, specifically rejecting plaintiffs' claims that an unwritten "corporate culture" negated the company's computerized time-keeping records. The resolution of plaintiffs' claims in *Zivali* required an individualized assessment of numerous factors. The same is true in this case.

Lujan and the opt-in plaintiffs have not carried their burden to prove they are "similarly situated." The decisions in *Dukes* and *Zivali* warrant the decertification of the conditional collective status in this case. Plaintiffs' alleged back wage damages are factually disparate, subject to individual defenses and incapable of representative evidence without violating the due process rights of all parties.

**B.  Plaintiffs Failed to Present Substantial Evidence That Cabana's Policy Was to Adjust Time Reports to Deny Overtime Pay**

Similarly, contrary to Lujan's claim that Cabana had a policy of not paying overtime, Cabana's business records, including schedules, punch histories and pay records, demonstrate exactly the opposite. (Frechter Decl. ¶11; Weiner Decl. Exhibits 36-43, 48).

Plaintiffs' payroll records demonstrate Cabana paid overtime for weekly work in excess of 40 hours. Payroll records for the last 40 weeks of Lujan's employment show that Lujan worked overtime and was paid for overtime in 31 of them. (Frechter Decl. ¶12). Payroll records of the putative plaintiffs show that employees were paid time and one-half for hours worked over 40. (Frechter Decl. ¶14).

**C.  Plaintiffs Failed to Present Substantial Evidence That Cabana's Policy Required Employees to Pay For Walk-Outs and Server Mistakes**

Cabana's policy for walk-outs or server mistakes is to write-off server mistakes, incur the loss and account for them as "voids." (Frechter Decl. ¶20. *See* Weiner Decl.

12

Exhibits 44-46). "Voids" may be the result of a customer who doesn't like the item after tasting it or the server has made a mistake. (Frechter Decl. ¶18). Server mistakes can include ordering the wrong item, ordering an item twice or forgetting to send the guest's special preparation requirement to the kitchen (*i.e.*, "I don't want chicken in my paella" but the paella comes to the table containing chicken). (Frechter Decl. ¶19. *See* Weiner Decl. Exhibits 44-46 representative "void reports", records generated in the ordinary course of business). In each case, Cabana voided the order and incurred the cost of the menu item. The employee was not required to pay. Records of thousands of such voids were produced by Cabana to Plaintiffs in discovery evidencing Cabana's policy to write-off mistakes. (Frechter Decl. ¶20 and ¶21; Castellanos Decl. ¶10; Limo Decl. ¶13).

**V.     Disparate Factual and Employment Settings of the Opt-Ins Mandate Decertification**

The varying facts and circumstances alleged by the opt-in plaintiffs present inherently individualized stories that are not capable of common resolution through representative evidence in a collective action.

**A.     Putative Plaintiffs Are Not Similarly Situated Because They Worked in Different Occupations at Different Locations Under Different Managers During Different Time Periods With Disparate Damages Calculations**

Lujan was paid hourly wages and tips at Forest Hills as a busboy and a runner. (Lujan Dep. 13:25-14:13, 62:9-11). He punched in to record his working time. (Lujan Dep. 175:6-176:3, 95:24-96:3-5).

Dissimilar to Lujan, opt-in plaintiff Ascension (Freddy) Moran was the salaried kitchen manager ("the chef") at Forest Hills. Moran was paid a weekly salary of $800 for all hours worked (plus three weeks annual paid vacation), did not punch in, was not paid on an hourly basis and did not receive tips. (Moran Dep. 9:13-24, 18:11-23, 19:4-6, 19:10-25,

13

20:2-21, 19:4-6). Moran's whose primary duty was to manage the "back of the house" operations supervising the cooks and kitchen staff. (Moran Dep. 25:9-26:16, 44:3-46:3, 65:25-67:22, 71:21-72:18, 105:19-106:24; Lujan Dep. 62:12-18, Bautista Dep., Weiner Decl. Exhibits 35 (Cabana Handbook) and 47 (Organizational Chart)). Moran now claims he was misclassified as an exempt employee, and seeks unspecified damages for weekly hours worked over .40. He is not similarly situated to any of the other tipped or hourly putative plaintiffs.

Similar to Lujan, opt-in plaintiff Israel Pastor Reyes was a tipped hourly busboy at Forest Hills from 2007 through June 2011. He also worked briefly at Cabana Seaport and Cabana Midtown. (Reyes Dep. 4:13-17, 5:5-7, 6:12-21, 26:21-27:17, 33:20-34:10 55:9-18). Contradicting Lujan's claims, Reyes testified he invariably worked on the clock accurately recording his hours of work, without improper reductions. He admits he punched in when he started work, and punched out after he finished. He could not state a monetary claim.

Dissimilar to Lujan, Reyes, and Moran, opt-in plaintiff Jose Luis Romero Saldana was an hourly dishwasher at Forest Hills, and did not receive tips. (Saldana Dep. 4:21-5:8). Saldana admits he punched in when he started working, but claims he was sometimes punched before he left. (Saldana Dep. 6:4-11).

Dissimilar to Lujan, Reyes, Moran or Saldana, opt-in plaintiff Nicholai Patchen is currently a tipped hourly server at Seaport. He was employed at Seaport during two separate periods; from late May through August 2009, and from late May 2010 to the present. (Patchen Dep. 6:25-7:12, 10:18, 22:15-16, 69:25-70:20). He claims in the summer of 2009 he sometimes punched himself in after he'd starting working, but limited the

14

occasions to an unspecified number of lunch and double shifts two years ago. He admits he has been paid properly ever since. (Patchen Dep. 88:9-21).

Opt-in plaintiff Ana Milena Ruiz was a tipped hourly server at Midtown from July 2002 to June 2008, Ruiz Dep. 9:7-25, and at Seaport for about 3 months during September through December 2007, while Midtown was closed for renovations. (Ruiz Dep. 10:5-11, 40:20-41:8). Ruiz admits she has no knowledge of the punching or pay policies at Forest Hills. (Ruiz Dep. 116:12-117:17). Even in the restaurant in which she worked during the period of her employment Ruiz admits has no knowledge of the pay practices, schedules or break policies of any other putative plaintiffs or other employees. (Ruiz Dep. 118:2-15, 137:3-138:5). Ruiz admits she did not punch out for daily breaks she took, and assumes managers adjusted her time sheets to correct them to reflect the hours she actually worked. She suspects more hours were cut than necessary, but has no evidence to support that claim.

Opt-in plaintiff Cesar Vargas was a tipped hourly waiter at Midtown from April 2007 to December 2008, and at Seaport during the few months Midtown was being renovated in 2007. Vargas Dep. 7:23-25, 8:22-9:22, 17:21-23. Vargas received tips of about $20 per hour, Vargas Dep. 155:24-156:7, and received one week's paid vacation. (Vargas Dep. 127:9-128:14). He claims intermittent off the clock work. A comparison of his time sheet and his first daily order reveals he was on the clock and paid nearly 2 hours before his first customer arrived. (Weiner Decl. Exhibit 41).

Opt-in plaintiff Alba Bovender worked as a tipped hourly server at Seaport from May 2008 through April 2009, then at Forest Hills from April 2009 through July 2009. (Bovender Dep. 9:2-5, 9:14-25, 78:7-79:2). She states she punched in when she arrived for work, but claims she had to punch out after her shift and do "side work" off the clock.

15

Tomas Velez was a server at the Seaport for only about two months in May – June 2008. (Velez Dep. 11:17-12:2). He claims he was not paid until he received his first table, after 11:30 am. However, his own punch reports prove he was paid when he started work at 10:00 a.m. (Weiner Decl. Exhibit 42). He admits he did not know anything about the operations or policies at Forest Hills or Midtown. (Velez Dep. 55:8-56:2, 59:3-24).

The factual differences, varying claims and individualized defenses of this disparate group make them particularly unsuitable for collective certification as similarly situated plaintiffs. Because plaintiffs are so dissimilarly situated, there is no "one strike" that could fairly calculate back wage claims on a representative basis.

**B.     Opt-Ins Were Not Similarly Situated Regarding
        Alleged Payment of Mistakes Or Walk-Outs**

Plaintiff Lujan testified that on only one occasion during the more-than-six-year period that he worked for Cabana, he had to pay approximately $20 for a mistake made in a takeout order which may have been in 2003. (Lujan Dep. 167:7-169:20). In contrast, Velez testified that during the course of his two-month employment at the Pier 17 Seaport Cabana, he had to pay for mistakes or walk-outs approximately two to four times. (Velez Dep. 113:11-115:11). Bovender stated that she had to pay for mistakes four or five times in the approximately 15 months that she was employed by Cabana. (Bovender Dep. 26:7-14). Ruiz can recall only one incident in seven years of employment at Cabana where a manager required her to pay for a mistake, at a cost of approximately $16. (Ruiz Dep. 150:4-151:3). Vargas also claimed that he had to pay for an error on one occasion during his employment at Cabana. (Vargas Dep. 129:18-131:5). Patchen testified that he had to pay for mistakes

16

on 3 occasions in the summer of 2009, but has not had to pay for any mistakes since. (Patchen Dep. 52:14-57:17, 65:9-66:4).

Reyes never paid for a mistake. (Reyes Dep. 19:20-21:11). Likewise, Saldana never paid for errors. (Saldana Dep. 5:5-8). Moran presented no evidence that he ever paid for anything.

### C.    Opt-Ins Were Not Similarly Situated Regarding Punched Starting and Ending Times

The opt-in plaintiffs made different claims when it came to punching in and punching out on Cabana's time system. For example, Saldana punched himself in when he started working, but if he forgot to punch in, the manager would punch him in. (Saldana Dep. 6:4-15). Lujan was instructed to punch himself in when he got to work and punch himself out when he finished work. He claims that when he left, often the computer was already shut off or he was already punched out by the manager. (Lujan Dep. 197:23-198:15). He claims he sometimes worked after he was punched out, although his time reports reflect occasional payment to 4:00 am, after he had left work. (Lujan Dep. 23:9-10).

Ruiz testified that she was instructed by her managers at Midtown to punch in not when she started to work but when the first table arrived in the restaurant. (Ruiz Dep. 28:21-24). She admits it was different at Seaport. (Ruiz Dep. 33:2-7). She also testified she did not punch out when she took meal breaks and that the managers for whom she worked at Cabana Midtown adjusted the hours worked on her time card to reflect the breaks she took. Ruiz Dep. 22:6-9, 38:20-39:7.

Vargas claimed that management told him not to clock in until his first customer arrived, but it was different for busboys, runners or dishwashers. (Vargas Dep. 13:10-14:14,

17

25:5-22). However, he admits he was never disciplined when he punched in before his first table arrived. (Vargas Dep. 94:7-11, 94:22-25, 98:25-99:7, 102:19-103:3). Like Ruiz, when Vargas worked at Cabana Seaport for a few months in late 2007, he admits he was not required to wait to punch in until the first table arrived, and the policy there was pay him for all hours that he worked. (Vargas Dep. 17:21-19:5). Vargas claimed at times he did a varying amount of side work after he punched out. (Vargas Dep. 15:2-7). Velez, a short term employee, testified a manager punched him in and out, and was surprised to see his punch reports reflect payment from the time he arrived at work around 10 a.m. He believed he was not punched in until he was serving his first table, around 11:30 a.m. (Velez Dep. 31:2-11, 34:24-35:17). Velez also testified that he was punched out by the manager when he closed his last order, yet he had to stay longer to clean up and prepare for the next day. (Velez Dep. 75:9-77:7). Bovender testified that sometimes she clocked in when she first arrived for work, and sometimes she didn't clock in until the first table was served. She was paid for all the time she punched. (Bovender Dep. 51:10-53:23). Patchen's claim is for a few lunch shifts in the summer of 2009, when he claims he generally started work at 10 a.m., but did not punch in until an hour or two later, when the first table was seated in his section. (Patchen Dep. 30:14-31:4, 90:15-91:9). Significantly, Patchen admits that no manager, but rather his co-workers gave him the idea. (Patchen Dep. 36:21-37:21, 50:19-51:7, 52:2-8). Patchen admits he always punched properly for dinner shifts, Patchen Dep. 13:17-14:5, 50:5-13, and currently is paid properly for all shifts. Patchen Dep. 50:14-18, 14:15-15:12. It was only on rare occasions that he performed short tasks of 15-20 minutes after punching out. (Patchen Dep. 16:5-17:2). Reyes punched in without delay when he arrived at Cabana and began working, and he punched out when he had finished working.

18

(Reyes Dep. 10:3-10, 13:7-20).  He never started working before punching in, and on only a few occasions was he asked to continue to work, to clean something for approximately 15 to 20 minutes, after he had punched out.  (Reyes Dep. 48:3-49:8).

Although not a server, Lujan presumed servers were only allowed to punch in when they began serving their first table rather than when they reported to work an hour or more earlier.  Lujan had no answer when shown records from February 2009 demonstrating that on several days server Linda Solis was punched in over an hour prior to the arrival of her first table.  (Lujan Dep. 205:8-207:21, 213:4-214:16.  *See* Weiner Decl. Exhibit 36).  Similarly, punch reports and other documents regarding opt-in servers Patchen, Ruiz, Vargas and Velez are evidence that they were punched in when they arrived at work (*e.g.*, at 10 a.m. for a lunch shift) and were paid from that time.  (*See* Weiner Decl. Exhibits 39-42).

Moran was salaried, and did not record his hours.  Moran Dep. 19:4-6.

### D.    Opt-Ins Were Not Similarly Situated Regarding Overtime Claims

At his deposition, Lujan admitted getting paid overtime on some paychecks, up to five hours of overtime, but claimed that the overtime hours on his paychecks did not reflect all of his overtime hours.  (Lujan Dep. 142:19-144:21).  Lujan had no answer to Cabana's payroll records which showed, on at least four occasions, that Lujan had been paid for over 10 hours of overtime on a particular paycheck (for the weeks of January 20, 2008, April 6, 20008, April 13, 2008 and June 22, 2008).  (Lujan Dep. 183:19-187:20.  *See* Weiner Decl. Exhibit 48).  Also, on at least three occasions when he forgot to punch out, Lujan was paid until 4 a.m., even though he had left the restaurant hours before that time, "forgetting" to punch out.  (Lujan Dep. 220:10-223:5).  Lujan was thus paid more hours than he worked. (*See* Weiner Decl. Exhibit 37).

19

Saldana admitted that he was paid at time and half his regular hourly rate when he worked more than 40 hours per week, but claimed that he was not paid for all of the overtime hours that he worked. (Saldana Dep. 12:13-17). Ruiz, by contrast, did not recall ever being paid overtime (with the possible exception of one or two times), and alleged she was told by her manager that Cabana did not pay overtime. (Ruiz Dep. 75:9-76:15). Vargas testified that his claims were based on overtime hours he worked but wasn't paid for. (Vargas Dep. 79:12-13). He claims that Cabana took hours away from him. (Vargas Dep. 88:8-19). Bovender claimed that she was not paid money owed to her for overtime because, on virtually a daily basis, she did side work after she punched out, resulting in work of 2 or 3 hours of overtime around 5 times each week, and yet her paychecks only reflected a much smaller amount of overtime for the week. (Bovender Dep. 110:11-112:9). Patchen testified he has not worked overtime since May 2010 through the present. (Patchen Dep. 12:13-18). In fact, Patchen testified he has been paid properly by Cabana since May 2010. (Patchen Dep. 25:5-8, 26:22-27:9, 80:14-81:14). Patchen could not specify any overtime damages during his 2009 employment. (Patchen Dep. 84:20-85:17). Although Reyes testified that he worked over 40 hours per week without proper pay, Reyes Dep. 45:4-9, 53:2-4, he limited this problem to one manager, named Diego, and no others. Diego worked as Reyes' manager at Cabana Forest Hills for only one or two days total. (Reyes Dep. 87:20-91:4).

Finally, Moran, classified as an exempt employee, bases his overtime claims on a theory of misclassification. Dissimilar to the others, his claim rests upon an analysis of his duties. Moran bears no similarity to any other putative plaintiff.

**E.      Putative Plaintiffs Are Not Similarly Situated Regarding Multiple Paychecks in One Week**

Lujan did not work at more than one restaurant in one work week since 2002. (Lujan Dep. 71:12-72:2, 141:4-10, 179:12-17).  With the exception of Reyes for a four month period, opt-in Plaintiffs did not work at more than one Cabana location in one work week. (Reyes Dep. 27:10-17).

**VI.     Defenses Individual to Each Opt-In Plaintiff Precludes Collective Action**

Decertification is necessary for Cabana to assert individualized defenses against particular opt-in plaintiffs asserting a "hodgepodge of claims and allegations." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-15 (5th Cir. 1995).  Cabana defends off-the-clock claims fact specific records individualized to each plaintiff's employment.  Fairness and due process require a full trial on each plaintiff's damage calculations.  Cabana would need to cross-examine each plaintiff to probe the factual support of their back wage computations. Representative testimony would deny a fundamental right of fairness to the defendant.

**A.      Lujan Particularly Is Not Similarly Situated Because of His Settlement With The DOL For The Period From June 2006 to June 2008**

Lujan is a particularly poor representative of plaintiffs' damage claims.  In 2009 he accepted back wages pursuant to a Department of Labor-supervised settlement under 29 U.S.C. § 216(c).  When the Secretary of Labor determines the amount due to an employee, and the employee agrees to accept that amount, and receives payment in full, the employee waives his right to bring a subsequent lawsuit for back wages for the same period. *Lynn's Food Stores v. U. S.*, 679 F.2d 1350, 1353 (11th Cir. 1982).  All of the elements for a valid waiver are present in this case.  *See Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537 (5th Cir. 1977).

21

Lujan admits he received and cashed a check in the amount of $206 for back wages found due by the DOL for the 2 year period prior to the DOL's June 2008 investigation of Cabana, and admits he signed the official DOL release form WH-58 waiving his right to subsequently sue for the same period covered by the DOL investigative findings.  (Lujan Dep. 17:15-17, 18:19-20, 21:21-25, 22:4-11, 42, 193:22-194:20; Weiner Decl. Exhibit 49).

After accepting the wages found due by the DOL, Lujan filed this suit in 2010. Section 216(c) authorizes the DOL to supervise the payment of back wages and states that acceptance by the employee of such a "supervised" payment in full constitutes a waiver by the employee of any rights he may have had under subsection (b) to bring an action for violations. The FLSA provides, in relevant part:

> The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

29 U.S.C. § 216(c).

The plain language of the statute empowers the Secretary to supervise the payment of back wages.  To prevent double-dipping, employees may either accept the back wages offered by the DOL, or pursue their own private right of action.  They may not do both.  In this case, contrary to the express provisions of the FLSA, Lujan is attempting to do both.  In 2009 Lujan waived his private right to sue Cabana for the period June 2006 – June 2008 when he cashed his back wage check.  The executed DOL form WH-58 irrefutably evidences Lujan's waiver.

22

**B.  Other Individualized Defenses Require Decertification**

In addition to the individualized payroll analysis and cross-examination necessary to refute claims of off-the-clock work, individualized defenses also exist for the 3 opt-in plaintiffs who accepted monetary amounts in accord with Cabana's Rule 68 Offer of Judgment and for the 11 opt-in plaintiffs who refused to cooperate in discovery, failing to meet their burden of proof.

**VII.  Fairness and Procedural Considerations Mandate Decertification**

A cornerstone of due process is the right to present at trial individualized defenses and evidence. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970).  Defendants have a "right to present a full defense on the issues" and "must be allowed to present any relevant rebuttal evidence they choose, including evidence that there [is] no [liability to] one or more members of the class." *W. Elec. Co. v. Stern*, 544 F.2d 1196, 1199 (3d Cir. 1976) (rejecting plaintiff's recommendation that employer not be allowed to defend against individual cases at trial).

Plaintiffs have yet to provide any indication as to how this case could proceed to trial as a collective action without being completely unmanageable. *Smith v. T-Mobile USA, Inc.*, No. CV-05-5274, 2007 WL 2385131, at *8 (C.D. Cal. Aug. 15, 2007) (collective action would be unmanageable given number of variables).  Lujan's failure to do so is an independent reason compelling decertification.

The nine opt-in depositions made clear that many of the opt-ins lack the candor, memory and unbiased disposition necessary to provide accurate testimony that could be representative of and fairly extrapolated to other opt-ins. For example, as discussed on page 6 above, Mr. Lujan

23

recanted in his deposition testimony two key assertions from his August 2010 affidavit that was filed in support of conditional certification.[3]

The opt-in depositions have also made clear that many base their claims of unpaid hours on pure speculation. (*See, e.g.*, Reyes Dep. 51:25-53:4; Patchen Dep. 84:6-19). Guess-work on the part of a small group of opt-ins cannot fairly be extrapolated to the entire opt-in population. The numerous idiosyncratic factual determinations required as to each opt-in -- who tell different stories about their occupations, managers, locations of employment, practices of punching in and out, being paid for overtime, and whether they ever had to pay for mistakes or walk-outs -- will require the parties to call multiple witnesses as to each claim, including the opt-ins, their managers, other co-workers, and possibly customers.

The burdens on a jury, which would be required to apprehend and evaluate substantial disparate testimony of this nature relating to numerous opt-ins, would be overwhelming. Courts have recognized that these sorts of inquiries end up as a never-ending series of mini-trials in concluding that the plaintiff's claims were "too individualized to warrant collective action treatment". *Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-CV-0840E(SR), 2005 WL 2654270, at *5 (W.D.N.Y. Oct. 17, 2005) (citation omitted); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 (9th Cir. 2009).

The same holds true here and this matter should be decertified.

---

[3] Further, Mr. Lujan was particularly evasive during his deposition, testifying that he did not recall almost any of the circumstances in which his affidavits in this action were prepared. *See* Lujan Dep. 15:6-17, 36:6-8 (did not recall when he prepared his August 2010 affidavit), 37:16-19, 46:9-47:11, 129:9-25, 155:23-156:2 (did not recall who verbally translated his August 2010 affidavit into Spanish for him), 59:7-12 (did not remember the translation he received), 59:20-23 (did not recall how many times the affidavit was translated for him into Spanish before he signed), 60:3-5 (did not recall whether more than one person translated it for him), 60:9-11, 61:3-6 (did not recall whether anyone else was with him when he signed it), 115:20-21,130:2-7, 131:24-132:10 (did not recall who translated his second affidavit for him), 115:22-23, 132:17-20 (did not recall when he signed his second affidavit), 120:17-20, 123:16-20 (did not recall whether it was an attorney who translated the affidavits verbally to him before he signed them), 120:21-121:2 (did not recall whether it was the same person who translated both affidavits for him verbally).

24

## VIII.   Conclusion

Plaintiffs cannot meet their burden to establish with substantial evidence they are similarly situated, or that Defendants had policies: (a) requiring them to pay for mistakes or walk-outs, (b) requiring them to work off the clock, or (c) denying them payments for overtime work.

The record shows that Lujan is not similarly situated to the opt-ins and that the collective action conditionally certified on February 1, 2011 should now be decertified.

Dated:   July 5, 2011

EPSTEIN BECKER & GREEN, P.C.


Douglas Weiner
Donald S. Krueger
David J. Clark
250 Park Avenue
New York, New York 10177-1211
Tel: 212.351.4500
dweiner@ebglaw.com

Attorneys for Defendants
  Cabana Management, Inc. and Glenn Frechter

25