**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**GERARDO VALDEZ LUJAN, et al.,**

                          **Plaintiffs,**

                          **-against-**

**CABANA MANAGEMENT, INC., et al.,**

                          **Defendants.**
-----------------------------------------------------------------x

**MEMORANDUM**
**AND ORDER**

**10-CV-755 (ILG)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Plaintiff Gerardo Valdez Lujan and several "opt-in" plaintiffs ("plaintiffs") bring this lawsuit, a conditionally-certified collective action under the Fair Labor Standards Act ("FLSA") and a putative Rule 23 class action, against defendants Cabana Management, Inc. ("Cabana") and Glenn Frechter (collectively "defendants"), to recover minimum wage and overtime payments allegedly due to Lujan and other current and former employees of the Cabana restaurants. Defendants' counsel seeks permission to post notices at the businesses in question, and to email notices to current employees, to request that current employees contact him so that he might "ascertain facts relevant to their wages and hours" for the purpose of opposing plaintiffs' pending motion to certify a Rule 23 class and supporting defendant's cross-motion to decertify the FLSA collective action. Letter to the Court from Douglas Weiner (July 11, 2011) ("Def. 7/11/2011 Letter"), E.C.F. Docket Entry ("D.E.") #133. Plaintiffs oppose the application, noting that the discovery period has ended and arguing that contact with members of the putative class raises concerns about the possibility of coercion. Letter to the Court from Lloyd Ambinder (July 11, 2011) ("Pl. 7/11/2011 Letter") at 2, D.E. #137.

For the reasons that follow, the Court authorizes defendants' counsel to communicate with current employees, but only under the conditions specified herein.

## BACKGROUND

On September 17, 2010, plaintiffs' counsel wrote a letter to the Court claiming that defendants' previous attorney, Jeffrey Brecher, had interviewed a number of then current employees and had asked them to sign sworn statements stating that defendants had not violated any wage and hour laws during their employment. Letter to the Court from Lloyd Ambinder (Sept. 17, 2010) ("Pl. 9/17/2010 Letter") at 2, D.E. #27. The meetings occurred during business hours at the workplaces in question; plaintiffs' counsel contended that the workers were not given the option to refuse. Id. at 2. Defendants responded that such interviews had been preceded by a disclaimer and provision of a consent form advising employees about the lawsuit and informing them that they could decline to be interviewed. Letter to the Court from Jeffrey Brecher (Sept. 21, 2010) at 2-4, D.E. #28. At the Court's direction, defendants produced to the Court the consent forms as well as letters and releases, sent to and signed by defendants' employees, purporting to waive FLSA claims for modest sums.[1] See Order (Sept. 23, 2010), D.E. #29. The releases were not authorized by the Department of Labor or by any court.

"[C]oncerned that [defendants'] contacts" with putative class members "might be

---

[1] The letters stated: "After the U.S. Department of Labor, Wage and Hour Division, completed its audit of [the restaurant], we determined additional wages were due to you. Accordingly, we have enclosed a check payable to you for [the sum in question] along with a general release and waiver, releasing any claims you may have against" defendants. The releases purported to waive "any and all claims," including "all claims under federal, state and local laws, arising out of" the employment relationship.

coercive and that releases obtained from employees are invalid," the Court directed all counsel to confer to reach a stipulation regarding parameters for future contacts. Order (Oct. 4, 2010), D.E. #32. The parties did so, agreeing that, during the pendency of the conditional certification motion, defendants would not communicate with current employees who were members of the putative class regarding the allegations, except during the normal course of business. Stipulation Regarding Communications (Oct. 6, 2011) ¶ 2, Ex. 1 to D.E. #33. Defendants further agreed that, after a ruling on the conditional certification motion, defendants would not communicate with putative class members without providing 10 days advance notice so that "the parties [could] discuss parameters for such communications. If the parties are unable to come to an agreement regarding the parameters, Plaintiffs can seek relief from the Court and Defendant[s] will not communicate until the Court issues a ruling regarding such communication." Id. ¶ 3.

On February 1, 2011, the conditional certification motion was granted as to three of defendants' restaurants. See Memorandum and Order (Feb. 1, 2011), D.E. #55. Defendants initially sought the Court's approval to "speak to current and former employees regarding the issues raised in this lawsuit, and ask them to sign Declarations of Fact." Letter to the Court from Douglas Weiner (June 9, 2011) at 2, D.E. #106. After conferring with plaintiffs' counsel, who objected, defendants' counsel renewed his request. Def. 7/11/2011 Letter.

## DISCUSSION

In class action cases, federal courts "have limited discretion to oversee communications between counsel in class actions and actual or putative class members." Austen v. Catterton Partners V, LP, No. 3:09cv1257 (MRK), 2011 WL 1374035, at *3 (D. Conn. Apr. 6, 2011);

see also Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981) ("Because of the potential for abuse a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. But this discretion is not unlimited . . . .").

District courts in this circuit have set forth principles for determining whether and how to limit communications with putative class members:

> First, any order limiting communications between parties and potential class members must be based on a clear record and specific findings that reflect a weighing of the need for limitation and the potential interference with the rights of the parties. Second, any such order must limit speech as little as possible, consistent with the rights of the parties under the circumstances. Third, in crafting any such order, the Court must pay attention to whether a particular restraint is justified by a likelihood of serious abuses. Fourth, mere ex parte communications between defense counsel and putative class members—even ex parte settlement negotiations—are not abusive communications that warrant limitations absent indications in the record of the need for limitations.

Austen, 2011 WL 1374035, at *6 (internal citations, alterations and quotations omitted). This fourth principle requires adjustment in the context of wage and hour litigation under the Fair Labor Standards Act: FLSA places "strict limits on an employee's ability to waive claims . . . for fear that employers would coerce employees into settlement and waiver." Le v. SITA Info. Networking Computing USA, Inc., No. 07 Civ. 86 (JS) (MLO), 2008 WL 724155, at *1 (E.D.N.Y. March 13, 2008) (quoting Manning v. New York Univ., No. 98-CV-3300, 2001 WL 963982, at *11 (S.D.N.Y. Aug. 21, 2001)). FLSA settlements are valid only if they are approved by a court or the Secretary of Labor. Id.

This Court is cognizant of the risk of explicit or implicit coercion in the employment

context, see Gortat v. Capala Bros., Inc., No. 07-CV-3629 (ILG)(SMG), 2009 WL 3347091, at *11 (E.D.N.Y. Oct. 16, 2009), a risk heightened where, as here, many of the employees are not native English speakers. Pl. 9/17/2010 Letter at 2. When this issue was first presented to the Court, plaintiffs made troubling allegations suggesting that, notwithstanding the pre-interview disclaimer provided by defendants' counsel, some of the employees interviewed felt that they were misled or coerced into participating. Pl. 9/17/2010 Letter at 1-2. As that dispute was resolved by stipulation, and as plaintiffs have not sought to substantiate those allegations during the instant dispute, the Court cannot determine whether the previous interviews with putative class members were, in fact, misleading or coercive. But defendants have acknowledged that they sent putative class members releases purporting to waive wage and hour claims without the approval of the Court or the Department of Labor. Such waivers are invalid under FLSA; without the curative notice authorized by the Court, see Memorandum and Order (Feb. 1, 2011) at 23-24, D.E. #55, workers might well have been misled into believing that they could not opt in to the lawsuit. The Court views the instant motion in light of these inappropriate communications and in light of the risk of misconduct in employment settings.

Nevertheless, with the expiration of the opt-in period, circumstances have changed, as there is no longer any risk that defendants might seek to dissuade employees from joining the lawsuit. Defendants' current attorney was not involved in the case during the previous dispute. Case law demands that trial courts exercise "caution" in delineating such restraints, to ensure that they are "justified by a likelihood of serious abuses." Gulf Oil Co., 452 U.S. at 104. Accordingly, the Court will not order a blanket ban on communications with employees.

Rather, the Court will allow defendants' counsel to interview employees who contact him voluntarily and on their own initiative after receiving appropriate notices.[2] Defendants' counsel must advise defendants that they and their supervisory employees may not, apart from posting or emailing approved notices,[3] direct or encourage any employee to contact defendants' counsel. Defendants' counsel may interview employees about defendants' general practices and procedures, but may not solicit releases or written statements functionally equivalent to releases.

The Court is not satisfied with the notice proposed by defendants' counsel, which omits disclaimers significant to an employee's decision as to whether or not to participate in such an interview.[4] The Notice should make clear that defendants' counsel hopes to conduct such interviews to obtain statements to support defendants' case in the pending lawsuit; it should make clear that defendants' interests are potentially adverse to those of their current employees. The emailed versions of the Notices should provide contact information for plaintiffs' counsel.

Defendants' counsel must open any interviews with an appropriate disclaimer,

---

[2] The Court rejects plaintiffs' argument that defendants' application is untimely because the discovery period has ended. Pl. 7/11/2011 Letter at 1. Defendants are not seeking to depose their current employees or otherwise to use discovery channels to obtain information. Attorneys are not prohibited from interviewing witnesses simply because discovery has closed.

[3] While plaintiffs' counsel objects to sending the notices via email, Pl. 7/11/2011 Letter at 2, the Court sees email as a relatively unobtrusive option, one that affords the recipient time to reflect before deciding whether to respond.

[4] The proposed Notice reads: "NOTICE TO ALL EMPLOYEES: Cabana wants to hear from you about your wages and hours. We would like to speak with you, but you are under no obligation to respond. If you choose to speak with us, please contact Cabana's lawyer." Notice to All Employees (July 11, 2011), Ex. 1 to D.E. #133.

explaining the purpose of the interview and the fact that defendants' counsel represents the employer.  Defendants' counsel should, prior to each interview, ensure that the employee:

> (a) understands that she or he will suffer no adverse consequences for declining to be interviewed;
>
> (b) nevertheless wishes to proceed;
>
> (c) was not asked or encouraged to participate by any manager or supervisor, except through an approved written notice; and
>
> (d) is not represented by an attorney and does not wish to speak with plaintiffs' counsel or independent counsel prior to the interview.

See Austen, 2011 WL 1374035, at *10 (imposing similar restrictions).  Defendants' counsel should terminate the interview immediately if the employee indicates that she or he does not wish to proceed, wishes to consult with an attorney, is represented by an attorney, or was asked or encouraged to contact defendants' counsel by a manager or supervisor.  Should the employee indicate that she or he prefers to communicate in a language other than English, defendants' counsel should arrange to have an independent interpreter present.  Defendants' counsel shall maintain detailed contact information for each employee who responds to the request for an interview, to facilitate judicial resolution of any disputes arising out of these interviews.

The parties are directed to confer in good faith to reach agreement as to the language in the notices and disclaimers, and to apprise the Court of any disputes by July 29, 2011, by close of business.

## **CONCLUSION**

For the foregoing reasons, defendants' motion for authorization for defense counsel to

communicate with defendants' current employees is granted, subject to the conditions specified in this opinion.

Any objection to the rulings contained herein must be filed with Judge Glasser by August 15, 2011, or will be deemed waived.

**SO ORDERED.**

Dated: Brooklyn, New York
July 27, 2011

                            **ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE**