Douglas Weiner, Esq.
David J. Clark, Esq.
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177-1211
Tel: 212.351.4500
dweiner@ebglaw.com

Attorneys for Defendants
   Cabana Management, Inc. and Glenn Frechter

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GERARDO VALDEZ LUJAN, individually and on behalf
of all other persons similarly situated who were employed
by CABANA MANAGEMENT, INC. and/or GLENN
FRECHTER; and/or any other entities affiliated with or
controlled by CABANA MANAGEMENT, INC. and/or
GLENN FRECHTER,

                        Plaintiffs,

           - against -

CABANA MANAGEMENT, INC. and/or GLENN
FRECHTER, and/or any other entities affiliated with or
controlled by CABANA MANAGEMENT, INC. and/or
GLENN FRECHTER,

                       Defendants.

10 Civ. 0755-ILG-RLM

ECF CASE

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO STRIKE THE DECLARATIONS SUBMITTED BY
PLAINTIFF IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

**PAGE**

I.      Introduction ............................................................................................................... 1

II.     Statement of Facts ...................................................................................................... 1

III.    Many of The Declarations Should Be Stricken Due To Plaintiff's Failure to
        Comply With Discovery And A Declarant's Refusal To Appear For Deposition. ............ 3

IV.     Plaintiffs' Declarations Should Be Stricken For
        Their Failure To Meet Evidentiary Standards. ................................................................. 7

        A.  Plaintiff's Cookie-Cutter Declarations Are Inadmissible and Should Be Stricken. ...... 9

        B.  Plaintiff's Declarations Contain Broad Conclusory
            Allegations That Lack Foundation and Should Be Stricken. ...................................... 12

        C.  Statements In Plaintiff's Declarations That Are Based
            On Hearsay Are Inadmissible and Should Be Stricken. ............................................ 15

V.      Conclusion .............................................................................................................. 18

i

## **TABLE OF AUTHORITIES**

PAGE(S)

CASES

*Adair v. Wis. Bell, Inc.,*
No. 08-C-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008)............................................. 7-8

*Bolen v. Dengel,*
340 F.3d 300 (5th Cir. 2003) ............................................................................................... 8

*Desert Sun Net LLC v. Kepler,*
No. C06-1041P, 2006 WL 3091170 (W.D. Wash. Oct. 27, 2006) ....................................9, 12

*Evans v. Port Auth. of N.Y. and N.J.,*
192 F. Supp. 2d 247 (S.D.N.Y. 2002).................................................................................17

*Flores v. Osaka Health Spa, Inc.,*
No. 05 Civ. 962VMKNF, 2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) .......................... 12-13

*Haas v. Delaware & Hudson Ry. Co.,* 282 F. App'x 84 (2d Cir. 2008)...........................................7

*Hollander v. American Cyanamid Co.,*
172 F.3d 192 (2d Cir. 1999), *abrogated on other grounds by*
*Schnabel v. Abramson,* 232 F.3d 83 (2d Cir. 2000)................................................................ 8-9

*Hurley v. U.S. Healthworks Med. Group of Wash., P.S.,*
No. CV-05-0017-EFS, 2006 WL 1788994 (E.D. Wash. June 27, 2006)................................15

*In re Initial Public Offering Secs. Litig.,*
471 F.3d 24 (2d Cir. 2006)...............................................................................................7, 12

*Landsberg v. Acton Enters., Inc.,*
No. C2-05-500, 2006 WL 3742221 (S.D. Ohio Dec. 15, 2006)..........................................16

*Levinson v. Primedia Inc.,*
No. 02 Civ. 2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ........................................13

*Mares v. Caesars Entm't, Inc.,*
No. 4:06-cv-0060-JDT-WGH, 2007 WL 118877 (S.D. Ind. Jan. 10, 2007) ..........................15

*Morales v. Plantworks, Inc.,*
No. 05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006).......................................13

*Payne v. Pauley,*
337 F.3d 767 (7th Cir. 2003) ...............................................................................................8

*Planned Parenthood of Wis. v. Doyle,*
   162 F.3d 463 (7th Cir. 1998) ....................................................................................9, 12

*Richards v. Computer Sci. Corp.,*
   No. 3-03-CV-00630(DJS), 2004 WL 2211691 (D. Conn. Sept. 28, 2004) ..............................8

*Smith v. Tradesmen Int'l, Inc.,*
   289 F. Supp. 2d 1369 (S.D. Fla. 2003) ................................................................................9, 12

*Songer v. Dillon Res., Inc.,*
   569 F. Supp. 2d 703 (N.D. Tex. 2008) ....................................................................................8

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011)..............................................................................................................7

*Woodworth v. Erie Ins. Co.,*
   743 F. Supp. 2d 201 (W.D.N.Y. 2010)................................................................................6-7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ............................................................................................................1, 7, 8

Fed. R. Civ. P. 56............................................................................................................................7

Federal Rule of Evidence 602............................................................................................................8

## I.     Introduction

To support his motion for class certification pursuant to Fed. R. Civ. P. 23, Plaintiff Gerardo Valdez Lujan has submitted to this Court declarations that contain self-serving and often identical statements, conclusory allegations not based on personal knowledge, and inadmissible hearsay. They constitute inadmissible evidence that should not be considered by the Court in ruling on Plaintiff's motion. Furthermore, in some instances, Defendants had requested in discovery that the declarations be produced, but Plaintiff refused without basis to produce the declarations in discovery, waiting instead to ambush Defendants with them when they were served as part of Plaintiff's motion for class certification.  For all of the above reasons, Defendants object to all of Plaintiff's class certification declarations and respectfully request that they be stricken or otherwise disregarded by the Court.

## II.    Statement of Facts

On July 5, 2011, Plaintiff filed his motion for class certification (Docket No. 127), along with the Declarations of Plaintiff (the "Lujan Decl."), Vanessa Belandria (the "Belandria Decl."), Alba Elena Bovender (the "Bovender Decl."), Israel Pastor Reyes (the "Reyes Decl."), Nicholai Patchen (the "Patchen Decl."), Tomas Velez (the "Velez Decl."), Ana Carolina Davila (the "Davila Decl."), Maria Fernanda Garcia (the "Garcia Decl."), Jose Luis Romero (the "Romero Decl."), Edwin Quiza (the "Quiza Decl."), Ascension Moran (the "Moran Decl."), Ariel Penizzotto (the "Penizzotto Decl."), and Hugo Suarez (the "Suarez Decl.").  These declarations are attached as Exhibits E through Q (Docket Nos. 127.7-127.19), respectively, to the Declaration of Plaintiff's counsel Lloyd Ambinder, Esq. in Support of Plaintiff's Motion for Class Certification (Docket No. 127.2).

As summarized below, these declarants held different positions at different Cabana restaurants over different time periods.

- Plaintiff Lujan was a former dishwasher, busboy and runner at Cabana Forest Hills from 2002-2009. Lujan Decl. ¶¶2-3.

- Belandria was a hostess and server at various times at Cabana Midtown and Cabana Forest Hills (and at a Cabana restaurant in Florida) from 2004 through 2006. Belandria Decl. ¶¶2, 4.

- Bovender worked as a server at Cabana Seaport from May 2008 to April 2009 and at Cabana Forest Hill from May to July 2009. Bovender Decl. ¶¶2-3.

- Reyes was a busboy who worked at various times at Cabana's Midtown, Forest Hills and Seaport restaurants from June 2007 to June 2011. Reyes Decl. ¶¶2-3.

- Patchen worked as a server at Cabana Seaport during the summer of 2009 and from May 2010 to the present. Patchen Decl. ¶¶2-3.

- Velez worked as a server at Cabana Seaport during the summer of 2008. Velez Decl. ¶¶2-3.

- Davila worked primarily as a server and occasionally as a bartender at Cabana Midtown and Cabana Seaport from May 2007 to October 2009. Davila Decl. ¶¶2-3.

- Garcia worked as a server at Cabana's Midtown and Seaport locations from September 2004 through March 2006. Garcia Decl. ¶¶2-3.

- Romero worked as a dishwasher at Cabana Forest Hills from July 2007 to March 2008. Romero Decl. ¶¶ 2-3.

- Quiza worked as a server at Cabana Midtown from March 2004 to September 2005. Quiza Decl. ¶¶ 2, 4.

- Moran claims to have worked at Cabana Midtown, Cabana Forest Hills and a Cabana restaurant in Florida at various times from 1994 through April 2010, as a busboy and porter prior to 2004 and as a cook after 2004. Moran Decl. ¶¶2-3.

- Penizzotto worked as an assistant manager at Cabana's three New York restaurants from 2002 through October 2006. Penizzotto Decl. ¶¶4-5.

- Suarez was a server and briefly an assistant manager at Cabana's three New York restaurants (and its two Florida restaurants) for approximately three years until 2008. Suarez Decl. ¶¶2-3.

The Court also is respectfully referred to the Declaration of Douglas Weiner, Esq., dated August 5, 2011 and filed herewith (the "Weiner Decl."), for elaboration of certain facts, discussed below, which are relevant to this motion.

III. **Many of The Declarations Should Be Stricken Due To Plaintiff's Failure to Comply With Discovery And A Declarant's Refusal To Appear For Deposition.**

Plaintiff has impermissibly ambushed Defendants by filing a number of the declarations despite refusing to provide them to Defendants' counsel when Defendants sought the declarations in discovery, and in one instance despite a declarant's refusal to appear for a deposition demanded by Defendants' counsel. Plaintiff's discovery misconduct thus provides yet another reason to strike the declarations.

3

In its March 18, 2011 Order, the Court set July 1, 2011 as the deadline for the parties to complete all fact discovery as to all opt-in plaintiffs and discovery relating to class certification issues. (*See* Weiner Decl. Exhibit 1).

Defendants' First Request for the Production of Documents To Plaintiff Lujan and All Opt-Ins, which Plaintiff responded to on April 8, 2011 (*see* Weiner Decl. Exhibit 2), demanded production of a number of categories of documents in which Plaintiff's class certification declarations would be called for, such as:

- Request No. 3 All documents relating to Plaintiff's duties while employed by any restaurant utilizing the "Cabana Nuevo Latino" concept, including, but not limited to, any documents relating to any disciplinary action.

- Request No. 6 All documents relating to or substantiating any damages or relief you contend you are entitled to in this action.

- Request No. 9 All documents relating to the compensation you received while employed by any restaurant utilizing the "Cabana Nuevo Latino" concept.

- Request No. 11 All documents that support, refute, or relate to Plaintiff's allegation that during the time Plaintiff (or any other employee) worked for any restaurant utilizing the "Cabana Nuevo Latino" concept they were required to pay for any items ordered by a customer because the customer walked out of the restaurant without paying their bill.

- Request No. 12 All documents that support, refute, or relate to Plaintiff's allegation that during the time Plaintiff (or any other employee) worked for any restaurant utilizing the "Cabana Nuevo Latino" concept they were required to pay for any items ordered by a customer because of a mistake with the customer's order (regardless of whether reason for the mistake was server error or customer error).

- Request No. 13 All documents that support, refute, or relate to Plaintiff's allegation that during the time Plaintiff (or any other employee) worked for any restaurant utilizing the "Cabana Nuevo Latino" concept they were required to pay for any items ordered by a customer for pick-up because the customer did not pick up the order.

- Request No. 14 All documents that support, refute, or relate to Plaintiff's allegation that during the time Plaintiff (or any other employee) worked for

4

any restaurant utilizing the "Cabana Nuevo Latino" concept they were required to work "off-the-clock" (*i.e.*, perform work that was not recorded on any time card).

- Request No. 15 All documents that support, refute, or relate to Plaintiff's allegation that during the time Plaintiff (or any other employee) worked for any restaurant utilizing the "Cabana Nuevo Latino" concept they worked at more than one restaurant utilizing the "Cabana Nuevo Latino" concept during the same week and worked more than 40 hours during the week when the hours worked at the multiple restaurants were combined.

- Request No. 21 All documents that support, refute, or relate to the allegations that Defendant had a policy or practice of failing to pay Plaintiff minimum wages or overtime or made any improper deductions of Plaintiff's wages.

In addition, on May 28, 2011, Defendants served their First Revised Set of Interrogatories to Plaintiff Gerardo Valdez Lujan and All Opt-ins (*see* Weiner Decl. Exhibit 3). In Interrogatory No. 3 in that document, Defendants asked that Plaintiff and the Opt-ins "Identify all documents that support your claims." None of the responses from the Opt-ins to this First Revised Set of Interrogatories identified any of the declarations that Plaintiff has filed in support of his motion for class certification. (Weiner Decl. ¶5).

The following class certification declarations filed by Plaintiff were signed prior to the close of discovery on July 1, 2011, and should have been produced pursuant to Defendants' First Request for the Production of Documents To Plaintiff Lujan and All Opt-Ins, or identified pursuant to Defendants' First Revised Set of Interrogatories: the Lujan Decl. (dated June 30, 2011), the Belandria Decl. (dated June 28, 2011), the Bovender Decl. (dated June 20, 2011), the Patchen Decl. (undated, but signed on June 27, 2011 as discussed below), the Reyes Decl. (dated June 27, 2011), the Velez Decl. (dated June 17, 2011), the Davila Decl. (dated June 30, 2011), the Quiza Decl. (dated June 30, 2011), and the Suarez

Decl. (dated June 28, 2011). In addition, the undated Penizzotto Decl. should have been produced in discovery.

Notwithstanding Defendants' pending First Request for the Production of Documents, Defendants' counsel also requested during the depositions of Velez, Bovender, Reyes and Patchen that they produce any written statements that they had signed. Plaintiff's counsel refused to make such production. Bovender and Patchen admitted in their deposition testimony that they had signed statements prior to their depositions. Velez (on June 17, 2011), Bovender (on June 20, 2011), and Reyes (on June 27, 2011) all signed their declarations on the dates that they were examined in deposition, and Patchen admitted that he signed his declaration on June 27, 2011 (two days before his deposition), but none of these declarations was produced at the depositions or otherwise in discovery, depriving Defendants of the opportunity to examine these individuals on the statements made therein. *See* Weiner Decl. ¶¶6-13 and Exhibits 4 to 7.

In addition, Defendants sought the depositions of opt-in plaintiff Ana Carolina Davila, but she did not appear for her depositions. *See* Weiner Decl. ¶14 and Exhibit 8. Yet Plaintiff filed the Davila Decl. in support of his motion for class certification. Because Davila refused to appear for deposition herein, her declaration in support of Plaintiff's motion for class certification should be stricken.

The above-described discovery misconduct of Plaintiff warrants the striking of the Belandria, Bovender, Reyes, Patchen, Velez, Davila, Garcia, Quiza, Penizzotto, and Suarez declarations. "[W]here a party fails to disclose information in response to discovery demands, fails to explain such failure, and never asks to reopen discovery, a court does not abuse its discretion in precluding the evidence." *Woodworth v. Erie Ins. Co.*, 743 F. Supp.

6

2d 201, 215 (W.D.N.Y. 2010) (citing *Haas v. Delaware & Hudson Ry. Co.*, 282 F. App'x 84, 86-87 (2d Cir. 2008) (striking expert affidavit due to party's failure to provide information during discovery)).

**IV.    Plaintiffs' Declarations Should Be Stricken For Their Failure To Meet Evidentiary Standards.**

When considering a motion for class certification, the Court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *In re Initial Public Offering Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). *See also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23] – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." and the Court must perform a "rigorous analysis" to ensure that the prerequisites of Rule 23(a) have been satisfied).

Fed. R. Civ. P. 56(c)(4) provides that "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Although Rule 56 relates to summary judgment evidence, the requirement that an affidavit must be based on personal knowledge and set forth admissible facts is applicable to affidavits supporting other motions as well. *See, e.g., Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *5, 10 (E.D. Wis. Sept. 11, 2008) ("it certainly matters whether statements made under oath in a declaration are true ... a plaintiff may not substitute her own judgment for the Court's by averring her 'understanding' that her employer had a

7

widespread improper practice, while shielding the Court's review of her conclusion and the sufficiency of the facts on which it is based by general assurances that it was formed by her observations and conversations with others"); *Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008) (denying conditional certification of FLSA collective action where "affidavits contain nothing to establish that the plaintiffs have personal knowledge of those matters as they pertain to any other [employee] ... they are not evidence of a 'widespread discriminatory plan'") (citation omitted); *Richards v. Computer Sci. Corp.*, No. 3-03-CV-00630(DJS), 2004 WL 2211691 (D. Conn. Sept. 28, 2004) (striking portions of affidavits submitted with motion for collective action based on improper hearsay and lack of personal knowledge with respect to conclusory allegations).

Federal Rule of Evidence 602 also requires that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Although "personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions or rumors....'" *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003); *Bolen v. Dengel*, 340 F.3d 300 (5th Cir. 2003) (refusing to consider affidavit not based on personal knowledge).

Because the declarations filed by Plaintiff Lujan in support of his motion for class certification contain repetitive and conclusory assertions unsupported by facts or personal knowledge regarding matters central to his motion, those declarations should be stricken and not considered by the Court for purposes of Plaintiff's Rule 23 motion. *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999) ("[a] court may ... strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain

8

inadmissible hearsay or make generalized and conclusory statements"), *abrogated on other grounds by Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000) (citation omitted).

**A.     Plaintiff's Cookie-Cutter Declarations Are Inadmissible and Should Be Stricken.**

Many of the declarations filed by Plaintiff in support of his class certification motion contain suspiciously similar or identical passages.  Such portions of the declarations are inherently unreliable and should not be accorded any weight by the Court.

"Cookie-cutter" declarations have been found inadmissible or have been found unreliable and lacking probative value. *See generally Planned Parenthood of Wis. v. Doyle*, 162 F.3d 463, 468 (7th Cir. 1998) (discrediting affidavits because they were identical); *Desert Sun Net LLC v. Kepler*, No. C06-1041P, 2006 WL 3091170, at *6 (W.D. Wash. Oct. 27, 2006) (declaring in a trade secret case that "[t]he Court gives little weight to such 'cookie cutter' declarations or to vague and conclusory assertions that some unidentified customers are having "bad customer service experiences'"); *Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003) (finding in an FLSA case that collective action certification was not warranted because "the sole evidence ... submitted by Plaintiff consists of three (3) identical affidavits by employees with different job titles, different job responsibilities, and who work in different geographic locations than Plaintiff").

Despite the fact that Plaintiff's declarants worked in numerous different job positions in three different Cabana restaurants during different time periods, many of them make the following almost identical statements in their declarations in almost identical fashion (with only minor variations).  The declarants assert, without documentary or detailed support:

- "My payroll checks did not accurately reflect all hours that I worked in any given week." *See* Lujan Decl. ¶7; Belandria Decl. ¶7; Bovender Decl. ¶¶6, 9; Reyes Decl. ¶6; Velez Decl. ¶6; Davila Decl. ¶6; Garcia Decl. ¶6; Romero Decl. ¶6; and Quiza Decl. ¶7.

- "Although I almost always worked more than 40 hours a week, I was not paid my regular hourly wage for all the hours over 40 that I worked each week. I was also not paid time and one-half my regular wage for all the hours over 40 that I worked each week." *See* Lujan Decl. ¶8; Belandria Decl. ¶8; Bovender Decl. ¶7; Reyes Decl. ¶7; Velez Decl. ¶7; Davila Decl. ¶7; Garcia Decl. ¶7; Romero Decl. ¶7; Quiza Decl. ¶8, and Moran Decl. ¶7.

- "Almost every day I saw managers go into the computer system and reduce the number of hours that I and my co-workers worked." Belandria Decl. ¶16; Davila Decl. ¶15; Garcia Decl. ¶14; Moran Decl. ¶13.

- "Cabana generally required servers to use their tips to pay for any losses when a customer did not pay his bill or when there was a mistake with a customer's food or bill. I saw Cabana's managers enforce this policy and know that my co-workers also had to pay for these losses, just like me." *See* Lujan Decl. ¶11; Belandria Decl. ¶10; Bovender Decl. ¶11; Patchen Decl. ¶10; Velez Decl. ¶14; Davila Decl. ¶9; Garcia Decl. ¶9; and Quiza Decl. ¶10.

- "Just like me, Cabana required my co-workers to clock in when they got their first table, which was usually approximately 60 to 90 minutes after they first arrived and started working. I saw my co-workers follow this policy and clock in after they got their first table." *See* Lujan Decl. ¶12; Belandria Decl.

10

¶12; Bovender Decl. ¶8; Patchen Decl. ¶8; Velez Decl. ¶13; Davila Decl. ¶11; and Garcia Decl. ¶11.

Many of the declarations also conclude with one or both of the following two sentences: "My lawyers have advised me that, under the law, I should have been paid for all the hours that I worked, and time and one-half for all hours I worked over 40 in each work week," and "My lawyers have advised me that, under the law, when a customer did not pay his bill, or there was a mistake with a customer's order or bill, I should not have had to use my tips to pay for any losses." *See* Lujan Decl. ¶¶17-18; Belandria Decl. ¶¶18-19; Bovender Decl. ¶¶15-16; Reyes Decl. ¶13; Velez Decl. ¶¶17-18; Davila Decl. ¶¶17-18; Garcia Decl. ¶¶16-17; Romero Decl. ¶12; Quiza Decl. ¶¶13-14, and Moran Decl. ¶15.

The rote recitation of these paragraphs throughout most of the declarations is all the more unreliable given that a number of the declarants do not speak English as their primary language or at all, and had the declarations translated for them. *See* Lujan Decl. ¶20; Belandria Decl. ¶20; Bovender Decl. ¶18; Reyes Decl. ¶15; Romero Decl. ¶13; Moran Decl. ¶16.

For a prime example of the unreliability of these cookie-cutter declarations, the Court need look no further than Lujan's own declaration, dated June 30, 2011, where he asserts "I was always paid by two payroll checks, one showing only the hours I worked at the Midtown location, and one showing only the hours I worked at the Forest Hills location." Lujan Decl. ¶6. However, at his deposition on June 2, 2011, Lujan recanted an earlier statement he had made and admitted Cabana always paid him with one paycheck, with the exception of a two-week period in 2002 when he worked shifts at both Forest Hills and Midtown, receiving one paycheck from each restaurant. *See* Weiner Decl. Exhibit 9 (Lujan

11

Dep. 15:18-16:10, 52:8-23, 56:14-19, 57:13-17, 57:22-58:6).    Contrary to Lujan's
Declaration, at all times applicable to this lawsuit Lujan was paid all regular and overtime
wages with one weekly paycheck from Forest Hills.    (Lujan Dep. 141:4-10).    Lujan's
inconsistent statements demonstrate the unreliability of Plaintiff's repetitive declarations.

The repetition across the declarations filed by Plaintiff of the above-quoted excerpts,
which concern many of the claims that are central to Plaintiff's allegations of wrongdoing
by Defendants, should disqualify those declarations from consideration by the Court.  The
fact that the same language, unaccompanied by individual details or factual support, appears
in these numerous declarations indicates that the declarants' involvement in the preparation
of the declarations may have been minimal, and that Plaintiff's counsel may have pre-
drafted the declarations without taking into account the declarants' actual work experiences.
In short, the statements highlighted above have such an indistinguishable quality that no
credence reasonably can or should be given to them.  *See Planned Parenthood,* 162 F.3d at
468; *Desert Sun Net LLC,* 2006 WL 3091170, at *6; *Tradesmen Int'l, Inc.,* 289 F. Supp. 2d
at 1372.

**B.**     **Plaintiff's Declarations Contain Broad Conclusory**
         **Allegations That Lack Foundation and Should Be Stricken.**

Numerous passages from the declarations filed by Plaintiff as part of his motion for
class certification are also inadmissible because they are conclusory and lack factual
foundation.  For this reason too, the declarations should be stricken by the Court.

Courts in the Second Circuit require plaintiffs to provide more than conclusory
complaint allegations to support a motion for certification.  *In re Initial Pub. Offering Secs.
Litig.,* 471 F.3d at 41; *Flores v. Osaka Health Spa, Inc.,* No. 05 Civ. 962VMKNF, 2006 WL

695675, at *3 (S.D.N.Y. Mar. 16, 2006) ("The plaintiff's determination to rely upon broad conclusory allegations and nothing more, also militates against certifying this as a FLSA collective action."); *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (denying plaintiffs' motion for collective action certification because plaintiffs' conclusory allegations were insufficient to meet plaintiffs' burden of a "modest factual showing"); *Levinson v. Primedia Inc.*, No. 02 Civ. 2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) (denying motion to send notice to putative collective action members because the evidence plaintiffs submitted in support of the motion failed to provide a sufficient factual showing that other potential plaintiffs had similar claims as did plaintiffs and were together with plaintiffs victims of a common policy or plan by defendant).

The declarations submitted by Plaintiff Lujan in support of his motion for class certification contain numerous conclusory allegations by non-managerial employees about purported Cabana policies, for example:

- "Cabana generally required servers to use their tips to pay for any losses when a customer did not pay his bill or when there was a mistake with a customer's food or bill." *See* Lujan Decl. ¶11; Belandria Decl. ¶10; Bovender Decl. ¶11; Patchen Decl. ¶10; Velez Decl. ¶14; Davila Decl. ¶9; Garcia Decl. ¶9; and Quiza Decl. ¶10.

- "Cabana required my co-workers to clock in when they got their first table, which was usually approximately 60 to 90 minutes after they first arrived and started working." *See* Lujan Decl. ¶12; Belandria Decl. ¶12; Bovender Decl.

13

¶8; Patchen Decl. ¶8; Velez Decl. ¶13; Davila Decl. ¶11; and Garcia Decl. ¶11.

- "[M]y coworkers rarely received breaks." *See* Lujan Decl. ¶14; Belandria Decl. ¶14; Davila Decl. ¶13; Garcia Decl. ¶12, Romero Decl. ¶9; and Moran Decl. ¶11.

- "Cabana regularly 'clocked out' my co-workers." Velez Decl. ¶12.

There is little or no factual foundation demonstrated for these broad-ranging assertions, which are made by only a small group of declarants. None of these declarants (in their declarations or otherwise) have demonstrated that they have personal knowledge of what Cabana's policies, if any, were across its three New York restaurants regarding paying for mistakes, clocking in, taking breaks, and clocking out.

Even the two declarations that Plaintiff submitted from purported managerial level employees, Penizzotto and Suarez, contain many assertions that are not based upon personal knowledge, for example:

- "Pursuant to Cabana policy, full-time employees in New York generally worked approximately 15-20 hours more each week than what was reflected in their paystubs." Penizzotto Decl. ¶29; Suarez Decl. ¶12.

- "Essentially, Cabana would deduct the employees hourly weekly wages. This practice was enforced whether or not there was evidence that the tax withholding was equal to or greater than the earned hourly wages." "No explanation was provided to the workers. Cabana would merely estimate how much tips were made by multiplying the total profits of the day by a certain percentage in the range 10-12%." Penizzotto Decl. ¶¶45-46.

14

- "Employees would received separate checks for each location.   If the
  employee worked over 40 hours, he or she would normally not be
  compensated at time and one-half." Penizzotto Decl. ¶55.

- "Cabana would also avoid paying overtime compensation for all hours
  worked over 40 when employees worked at different locations in a single
  payroll week." Suarez Decl. ¶20.

With insufficient factual bases in the various declarations, Plaintiff nonetheless
impermissibly offers these above-quoted assertions as sweeping conclusions that Cabana
followed such policies.  *See Hurley v. U.S. Healthworks Med. Group of Wash., P.S.*, No.
CV-05-0017-EFS, 2006 WL 1788994 (E.D. Wash. June 27, 2006) (striking plaintiff's
declaration because it contained statements not based on the declarant's personal knowledge
but instead which were legal conclusions).  These conclusory allegations should be stricken
by the Court as inadmissible.

### C.      Statements In Plaintiff's Declarations That Are Based On Hearsay Are Inadmissible and Should Be Stricken.

A number of assertions in the declarations filed by Plaintiff contain or refer to
statements made by other individuals that are offered for the truth of the matter asserted and
therefore constitute inadmissible hearsay.  Further, in some instances, the declarations also
contain assertions about things the declarants allegedly saw, but which really could only
have come to their attention if they were told those things.  All such hearsay assertions are
inadmissible and should be stricken by the Court.  *See, e.g., Mares v. Caesars Entm't, Inc.*,
No. 4:06-cv-0060-JDT-WGH, 2007 WL 118877, at *3 (S.D. Ind. Jan. 10, 2007) (holding
that the plaintiff's "understanding based on alleged conversations with unidentified persons

15

is insufficient to establish personal knowledge as to the policies and practices in effect at Caesars-owned facilities other than the one at which he has worked"); *Landsberg v. Acton Enters., Inc.*, No. C2-05-500, 2006 WL 3742221, at *1, 5 (S.D. Ohio Dec. 15, 2006) (upholding magistrate judge's decision to exclude inadmissible hearsay evidence offered by plaintiff who stated in his declaration that he recalled that when attending an out-of-town conference, he had various dinner conversations with other managers about the defendant's pay policies).

The statements in Plaintiff's declarations that contain inadmissible hearsay include the following:

- "Almost every day I saw managers go into the computer system and reduce the number of hours that I and my co-workers worked." Belandria Decl. ¶16; Davila Decl. ¶15; Garcia Decl. ¶14; Moran Decl. ¶13. The declarants may have observed managers working on Cabana's computers, but the assertion that the managers were <u>reducing</u> the number of hours the declarants' co-workers worked must be based on presumption, unfounded conclusion, or statements made to the declarants by co-workers, *i.e.*, hearsay.

- "I have personally witnessed managers at all of the Cabana restaurants adjusting and reducing the amount of hours worked by employees on the computer." Penizzotto Decl. ¶36.

- "Employees knew this was company policy, and therefore knew not to punch in until the first table of customers arrived. Employees classified as servers, busboys and bartenders were all subjected to this policy." Penizzotto Decl. ¶38.

16

- "One General Manager, Benjamin Bautista, was well known for requiring front of the house workers to pay for mistakes on occasion.  This also happened to me in Florida, by my manager Mario Amaya.  It was known that workers who made too many mistakes had to pay from their own pockets at all of the Cabana restaurants."   Suarez Decl. ¶19.   To the extent that Penizzotto or Suarez had knowledge of what employees knew or what was "well known," that knowledge must have come from statements to them by those employees.

- "[I]t was well-known that it was Cabana's policy to start counting our work hours after the first table arrived." Bovender Decl. ¶8.

- "Like me, my co-workers['] payroll checks did not accurately reflect all the hours that [they] worked."  Bovender Decl. ¶9; Reyes Decl. ¶8, Velez Decl. ¶12.  Unless the declarants actually noted all of the hours worked by their co-workers and compared them to the co-workers' payroll checks, this statement necessarily is based on conversations of the declarants with their co-workers.

These hearsay statements constitute inadmissible evidence that should not have been submitted to the Court and that should not be considered in ruling on Plaintiff's motion for class certification. *See Evans v. Port Auth. of N.Y. and N.J.*, 192 F. Supp. 2d 247, 264-65 (S.D.N.Y. 2002) (explaining that statements made by unidentified managers were inadmissible hearsay and did not qualify as an admission by a party opponent because the statements were unattributed).  The declarations containing hearsay statements should be stricken.

17

**V.     Conclusion**

For the foregoing reasons, Plaintiff's motion to strike the certifications filed by Plaintiff

Gerardo Valdez Lujan in support of his motion for class certification should be granted in its

entirety.

Dated:  August 5, 2011

EPSTEIN BECKER & GREEN, P.C.

Douglas Weiner
David J. Clark
250 Park Avenue
New York, New York 10177-1211
Tel: 212.351.4500
dweiner@ebglaw.com

Attorneys for Defendants
Cabana Management, Inc. and Glenn Frechter

18