Douglas Weiner, Esq.
David J. Clark, Esq.
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177-1211
Tel: 212.351.4500
dweiner@ebglaw.com

Attorneys for Defendants
    Cabana Management, Inc. and Glenn Frechter

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERARDO VALDEZ LUJAN, individually and on behalf of all other persons similarly situated who were employed by CABANA MANAGEMENT, INC. and/or GLENN FRECHTER; and/or any other entities affiliated with or controlled by CABANA MANAGEMENT, INC. and/or GLENN FRECHTER,<br><br>                              Plaintiffs,<br><br>                    - against -<br><br>CABANA MANAGEMENT, INC. and/or GLENN FRECHTER, and/or any other entities affiliated with or controlled by CABANA MANAGEMENT, INC. and/or GLENN FRECHTER,<br><br>                              Defendants. | 10 Civ. 0755-ILG-RLM<br><br>ECF CASE |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO STRIKE DECLARATIONS SUBMITTED BY
PLAINTIFF IN OPPOSITION TO DEFENDANTS' MOTION FOR
DECERTIFICATION OF PLAINTIFF'S FLSA COLLECTIVE ACTION**

# TABLE OF CONTENTS

**PAGE**

I.     Introduction................................................................................................ 1

II.    Statement of Facts ................................................................................... 1

III.   Plaintiffs' Declarations Should Be Stricken For
       Their Failure To Meet Evidentiary Standards. .................................... 4

       A.  Plaintiff's Cookie-Cutter Declarations
           Are Inadmissible and Should Be Stricken. ................................. 6

       B.  Plaintiff's Declarations Contain Broad Conclusory
           Allegations That Lack Foundation and Should Be Stricken....................................... 15

       C.  Statements In Plaintiff's Declarations That Are Based
           On Hearsay Are Inadmissible and Should Be Stricken. ........................................... 17

IV.    Conclusion ............................................................................................... 20

i

**TABLE OF AUTHORITIES**

<u>**PAGE(S)**</u>

<u>CASES</u>

*Adair v. Wis. Bell, Inc.*,
   No. 08-C-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008)..............................4-5

*Bolen v. Dengel*,
   340 F.3d 300 (5th Cir. 2003) .................................................................5

*Clark v. Dollar Gen. Corp.*,
   No. 3:00-0729, 2001 WL 878887 (M.D. Tenn. May 23, 2001) .................................4

*Desert Sun Net LLC v. Kepler*,
   No. C06-1041P, 2006 WL 3091170 (W.D. Wash. Oct. 27, 2006)..........................6, 15

*Evans v. Port Auth. of N.Y. and N.J.*,
   192 F. Supp. 2d 247 (S.D.N.Y. 2002).............................................. 19-20

*Flores v. Osaka Health Spa, Inc.*,
   No. 05 Civ. 962VMKNF, 2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) ................................15

*Harrison v. McDonald's Corp.*,
   411 F. Supp. 2d 862 (S.D. Ohio 2005) .................................................................4

*Hollander v. American Cyanamid Co.*,
   172 F.3d 192 (2d Cir. 1999), *abrogated on other grounds by*
   *Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000)...........................................5-6

*Hurley v. U.S. Healthworks Med. Group of Wash., P.S.*,
   No. CV-05-0017-EFS, 2006 WL 1788994 (E.D. Wash. June 27, 2006)................................17

*In re Initial Public Offering Secs. Litig.*,
   471 F.3d 24 (2d Cir. 2006)....................................................................15

*Landsberg v. Acton Enters., Inc.*,
   No. C2-05-500, 2006 WL 3742221 (S.D. Ohio Dec. 15, 2006)..............................17

*Levinson v. Primedia Inc.*,
   No. 02 Civ. 2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ...............................15

*Mares v. Caesars Entm't, Inc.*,
   No. 4:06-cv-0060-JDT-WGH, 2007 WL 118877 (S.D. Ind. Jan. 10, 2007) ...........................17

*Morales v. Plantworks, Inc.*,
    No. 05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) .......................................15

*Payne v. Pauley*,
    337 F.3d 767 (7th Cir. 2003) ...................................................................................................5

*Planned Parenthood of Wis. v. Doyle*,
    162 F.3d 463 (7th Cir. 1998) ...........................................................................................6, 15

*Richards v. Computer Sci. Corp.*,
    No. 3-03-CV-00630(DJS), 2004 WL 2211691 (D. Conn. Sept. 28, 2004) ..............................5

*Simmons v. T-Mobile USA, Inc.*,
    No. H-06-1820, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007)....................................................4

*Smith v. Tradesmen Int'l, Inc.*,
    289 F. Supp. 2d 1369 (S.D. Fla. 2003) ...............................................................................6, 15

*Songer v. Dillon Res., Inc.*,
    569 F. Supp. 2d 703 (N.D. Tex. 2008) ....................................................................................5

**RULES**

Fed. R. Civ. P. 56......................................................................................................................4

Federal Rule of Evidence 602...................................................................................................5

FIRM:16406801v2

## I.     Introduction

In his August 5, 2011 opposition to Defendants' July 5, 2011 motion for decertification of Plaintiff's FLSA collective action, Plaintiff Gerardo Valdez Lujan has proffered to this Court 20 previously submitted declarations of current and former Cabana employees. Eleven (11) of the 20 declarations were submitted with Plaintiff's July 5, 2011 motion for class certification (Docket No. 127), and 9 of the 20 were submitted with Plaintiff's October 8, 2010 motion for conditional certification pursuant to FLSA §216(b) (Docket No. 35). On August 5, 2011 Defendants moved to strike 11 of those declarations (Docket No. 149), after Plaintiff submitted them in support of his July 5, 2011 motion for class certification.

Defendants now move to dismiss the remaining 9 declarations (of Maria Fernanda Garcia, Edwin Quiza, Ana Milena Ruiz, Yessika Alexandra Calero, Maria Carmenza Guevara, Humberto Morales, Jean Paul Quijano, Cesar Vargas, and Carmen Sanchez) on the grounds that they contain self-serving and often identical statements which are conclusory allegations not based on personal knowledge, and inadmissible hearsay. Defendants object because Plaintiff's proffered statements are rank hearsay, unfounded rumor, and speculative assumption which constitute inadmissible evidence that should be excluded from the evidence of record, and not be considered by the Court in ruling on Defendants' decertification motion. For these reasons, Defendants respectfully request that their objection to Plaintiff's Declarations be sustained.

## II.    Statement of Facts

The following statement of facts relevant to this motion is drawn from the Declaration of Douglas Weiner, Esq., dated August 16, 2011 and filed herewith (the "Weiner Decl.").

On July 5, 2011, Defendants filed their motion for decertification of Plaintiff's FLSA collective action (Docket No. 128).

On August 5, 2011, Plaintiff filed his opposition to Defendants' motion for decertification (Docket No. 144). Included with Plaintiff's opposition were 14 declarations designated by Plaintiff as exhibits to the Declaration of Lloyd Ambinder, Esq. ("Ambinder Decl.). (*See* the Weiner Decl. ¶4).

Plaintiffs' August 5, 2011 Memorandum of Law in opposition to Defendants' decertification motion also refers to 6 previously submitted declarations dating from August and September 2010. (*See* the Weiner Decl. ¶8).

On August 5, 2011, Defendants previously moved to strike the 11 declarations submitted by Plaintiff in support of his motion for class certification. (Docket Nos. 149-51). (*See* the Weiner Decl. ¶¶5-6).

The remaining 9 declarations, of Maria Fernanda Garcia, Edwin Quiza, Ana Milena Ruiz, Yessika Alexandra Calero, Maria Carmenza Guevara, Humberto Morales, Jean Paul Quijano, Cesar Vargas, and Carmen Sanchez -- all of which were previously filed in support of Plaintiff's October 8, 2010 motion for conditional certification pursuant to FLSA §216(b) (Docket No. 35) -- are the subject of this motion to strike.

As summarized below, these declarants were not similarly situated as they held different positions at different Cabana restaurants[1] over different time periods.

- Garcia worked as a server solely at Cabana Midtown from September 2004 through March 2006. Garcia Decl. ¶¶2-3.

- Quiza worked as a server solely at Cabana Midtown from March 2004 to September 2005. Quiza Decl. ¶¶2, 4.

---

[1] Most of the declarants who worked at more than one Cabana restaurant did not do so in the same workweek.

- Ruiz worked as a hostess and a server at Cabana Midtown and Cabana Seaport from November 2001 through June 2008. Ruiz Decl. ¶¶2-3. (Ruiz's work as a hostess occurred prior to February 2004, beyond New York State's six-year statute of limitations. Her period of claim is as a server, from February 2004 – June 2008). *See* Declaration of Elisa Frechter, dated August 16, 2011 (the "E.Frechter Strike Decl."), at ¶3. Ruiz did not work at more than one Cabana restaurant in the same work week and testified she was paid properly at Cabana Seaport.

- Calero worked as a bartender at Cabana Midtown and Cabana Seaport from April 2003 through July 2006. Calero Decl. ¶¶2-3.

- Guevara worked as a bartender at Cabana Midtown and Cabana 70 (Forest Hills) from May 2000 through May 2005. Guevara Decl. ¶¶2-3.

- Morales claims to have worked as a busboy for a short time at each of the three Cabana restaurants from approximately August 2009 through approximately March 2010. Morales Decl. ¶¶2, 4. Cabana's records indicate he was a Cabana employee less than 3 months from August through October 2009. *See* the E.Frechter Strike Decl. ¶4.

- Quijano worked as a food runner and busboy at Cabana 70, Midtown and Seaport from November 2003 through October 2005. Quijano Decl. ¶¶2-3.

- Vargas worked as a waiter at Cabana Midtown and Seaport from approximately April 2007 through December 2008. Vargas Decl. ¶¶2-3. Vargas did not work at more than one Cabana Restaurant in the same work week and testified he was properly paid at Cabana Seaport.

3

- Sanchez claims to have worked as a hostess and a waitress at Cabana Forest Hills from approximately April 2005 through October 2007.  Sanchez Decl. ¶¶2-3.  Cabana's records show that she only worked at Cabana until June 2006. *See* the E.Frechter Strike Decl. ¶5.

III.   **Plaintiffs' Declarations Should Be Stricken For Their Failure To Meet Evidentiary Standards.**

"Courts … have repeatedly held that only admissible evidence may be considered in connection with a §216(b) motion." *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005) (citations omitted). *See also Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *1 (S.D. Tex. Jan. 24, 2007) (noting that "[t]he Court relies on the affidavits [Plaintiff] presents, including his own, only insofar as they refer to matters pertaining to the affiant personally or to matters the affiant establishes he personally observed"); *Clark v. Dollar Gen. Corp.*, No. 3:00-0729, 2001 WL 878887, at *2 (M.D. Tenn. May 23, 2001) (granting in part defendant's motion to strike portions of plaintiffs' declarations as "inadmissible hearsay which is prejudicial to Defendant").

Fed. R. Civ. P. 56(c)(4) provides that "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Although Rule 56 relates to summary judgment evidence, the requirement that an affidavit must be based on personal knowledge and set forth admissible facts is applicable to affidavits supporting other motions as well. *See, e.g., Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *5, 10 (E.D. Wis. Sept. 11, 2008) ("it certainly matters whether

4

statements made under oath in a declaration are true ... a plaintiff may not substitute her own judgment for the Court's by averring her 'understanding' that her employer had a widespread improper practice, while shielding the Court's review of her conclusion and the sufficiency of the facts on which it is based by general assurances that it was formed by her observations and conversations with others"); *Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008) (denying conditional certification of FLSA collective action where "affidavits contain nothing to establish that the plaintiffs have personal knowledge of those matters as they pertain to any other [employee] ... they are not evidence of a 'widespread discriminatory plan'") (citation omitted); *Richards v. Computer Sci. Corp.*, No. 3-03-CV-00630(DJS), 2004 WL 2211691 (D. Conn. Sept. 28, 2004) (striking portions of affidavits submitted with motion for collective action based on improper hearsay and lack of personal knowledge with respect to conclusory allegations).

Federal Rule of Evidence 602 also requires that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."   Although "personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience.   They must not be flights of fancy, speculations, hunches, intuitions or rumors....'" *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003); *Bolen v. Dengel*, 340 F.3d 300 (5th Cir. 2003) (refusing to consider affidavit not based on personal knowledge).

Because the declarations filed by Plaintiff Lujan in opposition to Defendants' motion for decertification contain repetitive and conclusory assertions unsupported by facts or personal knowledge regarding matters central to the motion, those declarations should be stricken and not considered by the Court. *Hollander v. American Cyanamid Co.*, 172 F.3d

192, 198 (2d Cir. 1999) ("[a] court may ... strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements"), *abrogated on other grounds by Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000) (citation omitted).

### A.    Plaintiff's Cookie-Cutter Declarations Are Inadmissible and Should Be Stricken.

The declarations filed by Plaintiff in opposition to Defendants' motion for decertification contain suspiciously similar or identical passages. Such portions of the declarations are inherently unreliable and should not be accorded any weight by the Court.

"Cookie-cutter" declarations have been found inadmissible or have been found unreliable and lacking probative value. *See generally Planned Parenthood of Wis. v. Doyle*, 162 F.3d 463, 468 (7th Cir. 1998) (discrediting affidavits because they were identical); *Desert Sun Net LLC v. Kepler*, No. C06-1041P, 2006 WL 3091170, at *6 (W.D. Wash. Oct. 27, 2006) ("[t]he Court gives little weight to such 'cookie cutter' declarations or to vague and conclusory assertions that some unidentified customers are having "bad customer service experiences'"); *Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003) (finding in an FLSA case that collective action certification was not warranted because "the sole evidence ... submitted by Plaintiff consists of three (3) identical affidavits by employees with different job titles, different job responsibilities, and who work in different geographic locations than Plaintiff").

Despite the fact that Plaintiff's declarants worked in numerous different job positions in three different Cabana restaurants during different time periods, many of them make the

6

following almost identical statements in their declarations in almost identical fashion (with only minor variations). The declarants assert, without documentary or detailed support:

- "My payroll checks did not accurately reflect all hours that I worked in any given week." *See* Garcia Decl. ¶6; Quiza Decl. ¶7; Ruiz Decl. ¶6; Calero Decl. ¶6; Morales Decl. ¶7; Quijano Decl. ¶7; Vargas Decl. ¶6; and Sanchez Decl. ¶6. This statement appears verbatim in other declarations submitted by Plaintiff in opposition to Defendants' decertification motion. *See* Lujan Decl. ¶7; Bovender Decl. ¶¶6, 9; Reyes Decl. ¶6; Velez Decl. ¶6; Davila Decl. ¶6; Romero Decl. ¶6; and Belandria Decl. ¶7;

- "I almost always worked more than 40 hours a week. I was not paid my regular hourly wage for all the hours over 40 that I worked each week. I was also not paid time and one-half my regular wage for all the hours over 40 that I worked each week." *See* Ruiz Decl. ¶7; Quiza Decl. ¶8; Calero Decl. ¶7; Guevara Decl. ¶7; Morales Decl. ¶8; Quijano Decl. ¶8; Vargas Decl. ¶7; and Sanchez Decl. ¶7. *See also* Garcia Decl. ¶6 ("I was not paid my regular hourly wage for these missing hours. I was also not paid time and one-half my regular wage for all the hours over 40 that I worked each week.") *See also* Lujan Decl. ¶8; Bovender Decl. ¶7; Reyes Decl. ¶7; Velez Decl. ¶7; Davila Decl. ¶7; Romero Decl. ¶7; Moran Decl. ¶7; and Belandria Decl. ¶8.

- "Almost every day I saw managers go into the computer system and reduce the number of hours that I and my co-workers worked." *See* Ruiz Decl. ¶15; Garcia Decl. ¶13; Calero Decl. ¶14; Morales Decl. ¶15; Vargas Decl. ¶15; and

7

Sanchez Decl. ¶16.  *See also* Davila Decl. ¶15; Moran Decl. ¶13; Belandria Decl. ¶16.

- "If a customer did not pay his bill, or there was a mistake in a customer's bill, Cabana required that I pay for any losses.  I paid for these losses with my tips." *See* Garcia Decl. ¶7; Ruiz Decl. ¶8; Calero Decl. ¶8; Vargas Decl. ¶8; and Sanchez Decl. ¶8.  A similar paragraph was repeated in many of the other declarations submitted by Plaintiff: "Cabana generally required servers to use their tips to pay for any losses when a customer did not pay his bill or when there was a mistake with a customer's food or bill.  I saw Cabana's managers enforce this policy and know that my co-workers also had to pay for these losses, just like me." *See* Morales Decl. ¶9; Lujan Decl. ¶11; Bovender Decl. ¶11; Patchen Decl. ¶10; Velez Decl. ¶14; Davila Decl. ¶9; and Belandria Decl. ¶10.  In contrast to the sweepingly over generalized statements Plaintiff offered, the depositions of these declarants revealed they were based on nothing more than anecdotes by Lujan of one such isolated incident in seven years of his employment (Lujan Dep. 167:7-169:20 (Docket No. 130.1)); by Bovender of 4 or 5 such occasions in 15 months of employment (Bovender Dep. 26:7-14 (Docket No. 130.2)); by Patchen of paying for mistakes 3 times in the summer of 2009 but none since then (Patchen Dep. 52:14-57:17, 65:9-66:4 (Docket No. 130.4)); and by Velez of having to pay 2 to 4 times in his 2 months of employment (Velez Dep. 113:11-115:11 (Docket No. 130.9)).  Davila and Belandria did not give deposition testimony.

8

- "Although Cabana required me to be ready to work at the beginning of my shift, I was not allowed to clock in until I got my first table. It was normal to wait 60 to 90 minutes before I got my first table." *See* Ruiz Decl. ¶9; Morales Decl. ¶10; Vargas Decl. ¶9. This language follows closely the language that appears in other declarations submitted in opposition by Plaintiff: "Just like me, Cabana required my co-workers to clock in when they got their first table, which was usually approximately 60 to 90 minutes after they first arrived and started working. I saw my co-workers follow this policy and clock in after they got their first table." *See* Lujan Decl. ¶12; Bovender Decl. ¶8; Patchen Decl. ¶8; Velez Decl. ¶13; Davila Decl. ¶11; and Belandria Decl. ¶12. *See also* Morales Decl. ¶15; Vargas Decl. ¶15; Sanchez Decl. ¶16. However, their deposition testimony and contemporaneous time records refute this cookie-cutter allegation and reveal that they were paid from 10 a.m. *See, e.g.,* punch reports of Tomas Velez (Docket No. 130.42) and Velez testimony that his manager punched him in and that he was surprised to see his punch reports reflect payment from the time he arrived at work around 10 a.m. (Velez Dep. 31:2-11, 34:24-35:17 (Docket No. 130.9)).

- "I know that Cabana did not pay all of my co-workers their legal wages because sometimes we would discuss and compare our wages to see if we were paid correctly." Garcia Decl. ¶13; Quiza Decl. ¶11; Ruiz Decl. ¶15; Calero Decl. ¶14; Guevara Decl. ¶12; Morales Decl. ¶15; Quijano Decl. ¶13; Vargas Decl. ¶15; and Sanchez Decl. ¶16. This statement is based on classic

hearsay as the terms "discuss and compare" are based entirely upon out of court conversations offered for the truth of proving a conclusory allegation.

- "Many of my co-workers are non-English speaking immigrants who did not know that they should have been paid these wages while working for Cabana. Many of these workers may be afraid to pursue their claims on their own." Garcia Decl. ¶14; Quiza Decl. ¶12; Ruiz Decl. ¶16; Calero Decl. ¶15; Guevara Decl. ¶13; Morales Decl. ¶16; Quijano Decl. ¶14; Vargas Decl. ¶16; and Sanchez Decl. ¶17.  There is no foundation whatsoever for the sweeping allegation that "Many of these workers may be afraid … "  To the contrary, there has been no hint of reprisal or whiff of retaliation as to Cabana's current employees opt-in plaintiffs Patchen and Morales.  Israel Reyes Pastor was employed by Cabana without incident nearly a year after he had filed an opt-in form.  He recently gave a week's notice and left for another job.

- "These companies exploited me and my co-workers, and it is my hope that we will be permitted to recover wages that we are owed."  Garcia Decl. ¶15; Quiza Decl. ¶13; Ruiz Decl. ¶17; Calero Decl. ¶16; Guevara Decl. ¶14; Morales Decl. ¶17; Quijano Decl. ¶15; Vargas Decl. ¶17; and Sanchez Decl. ¶18.  The conclusory allegation that Cabana "exploited me and my co-workers" is without factual foundation.

All 9 of the declarations subject to Defendants' objection also include one or both of the following two sentences: "My lawyers have advised me that, under the law, I should have been paid for all the hours that I worked, and time and one-half for all hours I worked over 40 in each work week," and "My lawyers have advised me that, under the law, when a

10

customer did not pay his bill, or there was a mistake with a customer's order or bill, I should not have had to use my tips to pay for any losses." *See* Garcia Decl. ¶¶9-10; Quiza Decl. ¶10; Ruiz Decl. ¶¶11-12; Calero Decl. ¶¶10-11; Guevara Decl. ¶9; Morales Decl. ¶13; Quijano Decl. ¶10; Vargas Decl. ¶¶11-13; and Sanchez Decl. ¶¶12-14. *See also* Lujan Decl. ¶¶17-18; Bovender Decl. ¶¶15-16; Reyes Decl. ¶13; Velez Decl. ¶¶17-18; Davila Decl. ¶¶17-18; Romero Decl. ¶12; Moran Decl. ¶15; and Belandria Decl. ¶¶18-19.

The rote recitation of these paragraphs throughout Plaintiff's declarations is all the more unreliable given that a number of the declarants do not speak English as their primary language or at all, and had the declarations translated for them. *See* Quiza Decl. ¶14; Calero Decl. ¶17; Guevara Decl. ¶15; Morales Decl. ¶18; Quijano Decl. ¶16; and Sanchez Decl. ¶19. *See also* Lujan Decl. ¶20; Belandria Decl. ¶20; Bovender Decl. ¶18; Reyes Decl. ¶15; Romero Decl. ¶13; and Moran Decl. ¶16.

There are numerous examples of the unreliability of these cookie-cutter declarations. For example, Ruiz states in her declaration that she "was always paid by two payroll checks, one showing only the hours I worked at the Midtown location, and one showing only the hours I worked at the South Street Seaport location." (Ruiz Decl. ¶6). Yet in her deposition, Ruiz testified that she only worked at Cabana Seaport for three months during September through December 2007, while her usual location Cabana Midtown was closed for renovations. (Ruiz Dep. 9:7-25, 10:5-11, 40:20-41:8) (Docket No. 130.6). The Vargas Decl., at ¶6, also contains the same falsehood about being "always paid by two payroll checks." He also worked at Cabana Midtown, and only worked at Cabana Seaport during the few months that Cabana Midtown was being renovated in 2007. (Vargas Dep. 7:23-25, 8:22-9:22, 17:21-23) (Docket No. 130.8).

Lujan also asserts, in his June 30, 2011 declaration, "I was always paid by two payroll checks, one showing only the hours I worked at the Midtown location, and one showing only the hours I worked at the Forest Hills location." Lujan Decl. ¶6 (Docket No. 144.1). However, at his deposition on June 2, 2011, Lujan recanted his prior affidavit of August 11, 2010 (Docket No. 130.11, at ¶6) and admitted Cabana always paid him with one paycheck, with the exception of a two-week period in 2002 when he worked shifts at both Forest Hills and Midtown, receiving one paycheck from each restaurant. *See* Lujan Dep. 15:18-16:10, 52:8-23, 56:14-19, 57:13-17, 57:22-58:6 (Docket No. 130.1). Lujan admitted with no ambiguity that at all times applicable to this lawsuit he was paid all regular and overtime wages with one weekly paycheck from Forest Hills. (Lujan Dep. 141:4-10) (Docket No. 130.1). He now reverts to his 2010 testimony that he was "always" paid in 2 pay checks. See Lujan Decl. ¶6 (Docket No. 144.1).

Lujan also asserted in his August 11, 2010 affidavit that he saw his co-workers' payroll checks. (*See* Docket No. 130.11, at ¶14). He recanted that assertion in his deposition testimony admitting he never did see his co-workers' checks. (Lujan Dep. 64:13-15) (Docket No. 130.1).

Another example of the unreliability of the declarations is found in the declaration of Edwin Quiza, who asserts that when he worked for Cabana, he "went by the name Mickey Zans." Quiza Decl. ¶3. In fact, Cabana had an employee named "Micke Sanz" in 2004 and 2005, but never employed anyone named Mickey Zans or Edwin Quiza. *See* the E.Frechter Strike Decl. ¶2.

Also, Ruiz makes the misleading assertion in her declaration that "If a customer did not pay his bill, or there was a mistake with a customer's food or bill, Cabana required that I

12

pay for any losses with my tips." (Ruiz Decl. ¶8). Ruiz's deposition testimony, however, was that she could recall only one incident in seven years of employment at Cabana where a manager required her to pay for a mistake, at a cost of approximately $16. (Ruiz Dep. 150:4-151:3) (Docket No. 130.6).

Further, Patchen asserted, "I was not allowed to clock in until I got my first table. It was normal to wait 60 to 90 minutes before I got my first table. I was not paid for any of the time before I punched in." (Patchen Decl. ¶7). Patchen admitted in his deposition, however, that no manager told him to do this, but rather it was his coworkers who gave him the idea. (Patchen Dep. 36:21-37:21, 50:19-51:7, 52:2-8 (Q: "Did a manager ever tell you that it was Cabana's policy that you not punch in until you got your first table.? A: Not that I recall. Q: Did you ever discuss this policy with a manager? A: No.")) (Docket No. 130.4). Patchen also punched in and was paid from around 10 a.m. on most of the days he worked. (*See* Docket No. 130.39).

Similarly, Reyes' declaration includes the boilerplate language, "I almost always worked more than 40 hours in a week. I was not paid my regular hourly wage for all the hours over 40 that I worked each week. I was also not paid time and one-half my regular wage for all hours over 40 that I worked each week." (Reyes Decl. ¶7). In his deposition, however, Reyes testified that his alleged problem of working over 40 hours per week without proper pay was limited to one manager named Diego, and no others. Diego worked as Reyes' manager at Cabana for only one or two days total. (Reyes Dep. 45:4-9, 53:2-4, 87:20-91:4) (Docket No. 130.5).

Finally, many of Plaintiff's declarants have submitted at least 2 declarations in this matter, and the latter declarations often include more cookie-cutter claims than the earlier

declarations contained. That these claims materialized in the latter declarations, in almost verbatim language, renders them inherently suspicious. For example, the latter Belandria Decl., dated June 28, 2011 (Docket No. 144.9) is submitted in opposition to Defendants' decertification motion, and it includes 2 new claims (having to pay for mistakes and having to wait 60 to 90 minutes until the first customers arrived before punching in) (Docket No. 144.9 at ¶¶9 and 11) that did not appear in her August 6, 2010 affidavit (Docket No. 35.3).

The earlier Garcia Decl., dated August 9, 2010 (Docket No. 144.10) is submitted in opposition to the decertification motion, and it lacks a claim (having to wait 60 to 90 minutes until the first customers arrived before punching in) that appears in her latter declaration, dated July 1, 2011 (Docket No. 127.15 at ¶10). Similarly, the earlier Quiza Decl., dated August 5, 2010 (Docket No. 144.11) is submitted in opposition to the decertification motion, and it lacks a claim (having to pay for mistakes) that appears in his latter declaration, dated June 30, 2011 (Docket No. 127.17 at ¶9).

The above plethora of inconsistent statements demonstrates the unreliability of Plaintiff's conclusory and repetitive declarations.

The repetition across the declarations filed by Plaintiff of the above-quoted excerpts, which are the basis of the claims that are central to Plaintiff's allegations of Cabana's wrongdoing, should disqualify those declarations from consideration by the Court. The fact that the same language, unaccompanied by individual details or factual support, appears in these numerous declarations indicates that the declarants' involvement in the preparation of the declarations may have been minimal, and that Plaintiff's counsel may have pre-drafted the declarations without taking into account the declarants' actual work experiences. In short, the statements highlighted above have such an indistinguishable quality that no

credence reasonably can or should be given to them. *See Planned Parenthood*, 162 F.3d at 468; *Desert Sun Net LLC*, 2006 WL 3091170, at *6; *Tradesmen Int'l, Inc.*, 289 F. Supp. 2d at 1372.

**B.      Plaintiff's Declarations Contain Broad Conclusory Allegations That Lack Foundation and Should Be Stricken.**

Numerous passages from the declarations filed by Plaintiff as part of his motion for class certification are also inadmissible because they are conclusory and lack factual foundation.  For this reason too, Defendants' motion to strike the declarations should be granted.

Courts in the Second Circuit require plaintiffs to provide more than conclusory complaint allegations to support a motion for certification. *In re Initial Pub. Offering Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006); *Flores v. Osaka Health Spa, Inc.*, No. 05 Civ. 962VMKNF, 2006 WL 695675, at *3 (S.D.N.Y. Mar. 16, 2006) ("The plaintiff's determination to rely upon broad conclusory allegations and nothing more, also militates against certifying this as a FLSA collective action."); *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (denying plaintiffs' motion for collective action certification because plaintiffs' conclusory allegations were insufficient to meet plaintiffs' burden of a "modest factual showing"); *Levinson v. Primedia Inc.*, No. 02 Civ. 2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) (denying motion to send notice to putative collective action members because the evidence plaintiffs submitted in support of the motion failed to provide a sufficient factual showing that other potential plaintiffs had similar claims as did plaintiffs and were together with plaintiffs victims of a common policy or plan by defendant).

15

The declarations submitted by Plaintiff Lujan in opposition to Defendants' motion for decertification contain many assertions that are not based upon personal knowledge, for example:

- "I know that Cabana did not pay all of my co-workers their legal wages..." Garcia Decl. ¶13; Quiza Decl. ¶11; Ruiz Decl. ¶15; Calero Decl. ¶14; Guevara Decl. ¶12; Morales Decl. ¶15; Quijano Decl. ¶13; Vargas Decl. ¶15; and Sanchez Decl. ¶16.

- "Many of my co-workers are non-English speaking immigrants who did not know that they should have been paid these wages while working for Cabana. Many of these workers may be afraid to pursue their claims on their own." Garcia Decl. ¶14; Quiza Decl. ¶12; Ruiz Decl. ¶16; Calero Decl. ¶15; Guevara Decl. ¶13; Morales Decl. ¶16; Quijano Decl. ¶14; Vargas Decl. ¶16; and Sanchez Decl. ¶17.

- "These companies exploited me and my co-workers..." Garcia Decl. ¶15; Quiza Decl. ¶13; Ruiz Decl. ¶17; Calero Decl. ¶16; Guevara Decl. ¶14; Morales Decl. ¶17; Quijano Decl. ¶15; Vargas Decl. ¶17; and Sanchez Decl. ¶18.

There is little or no factual foundation demonstrated for these broad-ranging and speculative assertions, which are made by only a small group of declarants. None of these declarants (in their declarations or otherwise) have demonstrated that they have personal knowledge of what Cabana's record keeping and pay policies or practices were in the restaurants in which they worked during the time of their employment, let alone at any other Cabana restaurant or for periods during which they did not work.

With insufficient factual bases in the various declarations, Plaintiff nonetheless offers these above-quoted impermissible assertions as sweeping conclusions that Cabana followed *policies* to deny compensation or otherwise "exploit" its employees. *See Hurley v. U.S. Healthworks Med. Group of Wash., P.S.*, No. CV-05-0017-EFS, 2006 WL 1788994 (E.D. Wash. June 27, 2006) (striking plaintiff's declaration because it contained statements not based on the declarant's personal knowledge but instead which were legal conclusions). For these reasons, Plaintiff's conclusory allegations should be stricken as inadmissible.

### C.   Statements In Plaintiff's Declarations That Are Based On Hearsay Are Inadmissible and Should Be Stricken.

A number of assertions in the Garcia, Quiza, Ruiz, Calero, Guevara, Morales, Quijano, Vargas, and Sanchez Declarations filed by Plaintiff contain or refer to statements made by other individuals that are offered for the truth of the matter asserted and therefore constitute inadmissible hearsay. Further, in some instances, the declarations also contain assertions about things the declarants allegedly saw, but which really could only have come to their attention if they were told those things. All such hearsay assertions are inadmissible and should be stricken by the Court. *See, e.g., Mares v. Caesars Entm't, Inc.*, No. 4:06-cv-0060-JDT-WGH, 2007 WL 118877, at *3 (S.D. Ind. Jan. 10, 2007) (holding that the plaintiff's "understanding based on alleged conversations with unidentified persons is insufficient to establish personal knowledge as to the policies and practices in effect at Caesars-owned facilities other than the one at which he has worked"); *Landsberg v. Acton Enters., Inc.*, No. C2-05-500, 2006 WL 3742221, at *1, 5 (S.D. Ohio Dec. 15, 2006) (upholding magistrate judge's decision to exclude inadmissible hearsay evidence offered by plaintiff who stated in his declaration that he recalled that when attending an out-of-town

conference, he had various dinner conversations with other managers about the defendant's pay policies).

The statements in Plaintiff's declarations that contain inadmissible hearsay include the following:

- "My co-workers also did not get paid the minimum wage for all the hours that they worked, nor time and one-half for all the hours that they worked over 40 in each week. My co-workers also had to use their own tips to pay for losses when there was a mistake with a customer's order or bill, or when the customer did not pay his bill. My co-workers also could not clock-in until they got their first table, even though their shift started and they were ready to work. My co-workers would also often have to wait 60 to ninety minutes before they got their first table." *See* Ruiz Decl. ¶14. *See also* Garcia Decl. ¶11; Calero Decl. ¶12; Morales Decl. ¶14; Vargas Decl. ¶14; and Sanchez Decl. ¶15. Unless the declarants actually noted all of the hours worked by their co-workers and compared them to the co-workers' payroll checks, these statements necessarily are based on conversations of the declarants with their co-workers. *See also* Bovender Decl. ¶9; Reyes Decl. ¶8, Velez Decl. ¶12 ("Like me, my co-workers['] payroll checks did not accurately reflect all the hours that [they] worked.").

- "I was friends with many employees who continued to work at Cabana after I left. My friends told me not too long ago that they were still not being paid their legal wages." *See* Garcia Decl. ¶12; Calero Decl. ¶13; Guevara Decl. ¶11; Morales Decl. ¶11; and Quijano Decl. ¶12.

- "I know that Cabana did not pay all of my co-workers their legal wages because sometimes we would discuss and compare our wages to see if we were paid correctly." *See* Garcia Decl. ¶13; Quiza Decl. ¶11; Ruiz Decl. ¶15; Calero Decl. ¶14; Guevara Decl. ¶12; Morales Decl. ¶15; Quijano Decl. ¶13; Vargas Decl. ¶15; and Sanchez Decl. ¶16.

- "Almost every day I saw managers go into the computer system and reduce the number of hours that I and my co-workers worked." *See* Ruiz Decl. ¶15; Garcia Decl. ¶13; Calero Decl. ¶14; Morales Decl. ¶15; Vargas Decl. ¶15; and Sanchez Decl. ¶16. *See also* Davila Decl. ¶15; Moran Decl. ¶13; Belandria Decl. ¶16. The declarants may have observed managers working on Cabana's computers, but the assertion that the managers were <u>reducing</u> the number of hours the declarants' co-workers worked must be based on presumption, unfounded conclusion, or statements made to the declarants by co-workers, *i.e.*, hearsay.

- "Many of my co-workers are non-English speaking immigrants who did not know that they should have been paid these wages while working for Cabana. Many of these workers may be afraid to pursue their claims on their own." Garcia Decl. ¶14; Quiza Decl. ¶12; Ruiz Decl. ¶16; Calero Decl. ¶15; Guevara Decl. ¶13; Morales Decl. ¶16; Quijano Decl. ¶14; Vargas Decl. ¶16; and Sanchez Decl. ¶17.

These classic hearsay statements constitute inadmissible evidence that should not be considered in ruling on Plaintiff's motion for class certification. *See Evans v. Port Auth. of N.Y. and N.J.*, 192 F. Supp. 2d 247, 264-65 (S.D.N.Y. 2002) (explaining that statements

made by unidentified managers were inadmissible hearsay and did not qualify as an admission by a party opponent because the statements were unattributed). The declarations containing hearsay statements should be stricken.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's motion to strike the certifications filed by Plaintiff Gerardo Valdez Lujan in opposition to Defendants' motion for decertification of Plaintiff's FLSA class action should be granted in its entirety.

Dated: August 16, 2011                          EPSTEIN BECKER & GREEN, P.C.


                                                Douglas Weiner
                                                David J. Clark
                                                250 Park Avenue
                                                New York, New York 10177-1211
                                                Tel: 212.351.4500
                                                dweiner@ebglaw.com

                                                Attorneys for Defendants
                                                Cabana Management, Inc. and Glenn Frechter