Douglas Weiner, Esq.
David J. Clark, Esq.
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177-1211
Tel: 212.351.4500
dweiner@ebglaw.com

Attorneys for Defendants
  Cabana Management, Inc. and Glenn Frechter

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GERARDO VALDEZ LUJAN, individually and on behalf
of all other persons similarly situated who were employed
by CABANA MANAGEMENT, INC. and/or GLENN
FRECHTER; and/or any other entities affiliated with or
controlled by CABANA MANAGEMENT, INC. and/or
GLENN FRECHTER,

                                        Plaintiffs,

                    - against -

CABANA MANAGEMENT, INC. and/or GLENN
FRECHTER, and/or any other entities affiliated with or
controlled by CABANA MANAGEMENT, INC. and/or
GLENN FRECHTER,

                                        Defendants.

10 Civ. 0755-ILG-RLM

ECF CASE


**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION TO DECERTIFY PLAINTIFF'S FLSA COLLECTIVE ACTION**


FIRM:16417543v1

# TABLE OF CONTENTS

**PAGE**

DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR
MOTION TO DECERTIFY PLAINTIFF'S FLSA COLLECTIVE ACTION .............................. 0

I.      Introduction ................................................................................................................. 1

II.     Plaintiff Fails To Meet His Burden of Demonstrating That He and the Opt-In
Plaintiffs Are Similarly Situated .......................................................................................... 1

      A.  The Evidence Submitted By Plaintiff Is Inadequate To Support Continued
          Certification as A Collective Action ......................................................................... 3

      B.  Defendants' Evidence Demonstrates That Plaintiff Lujan and The Opt-In
          Plaintiffs Are Not Similarly Situated ........................................................................ 9

III.    This Action More Closely Resembles The *Zivali* Case Than The *Pefanis* Case. ............. 11

IV.     Plaintiff's Claims of Off-The-Clock Work Or Adjustment Of Recorded Hours Are
Insufficient To Survive Defendants' Decertification Motion. ............................................ 16

V.      Defenses Individual To Each Opt-In Plaintiff Preclude Collective Action. ..................... 20

VI.     Fairness and Procedural Considerations Mandate Decertification. .................................. 22

VII.    Conclusion .................................................................................................................. 24

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*Adair v. Wisconsin Bell, Inc.*,
  No. 08-0280, 2008 WL 4224360 (E.D. Wisc. Sept. 11, 2008)................................19

*Ayers v. SGS Control Servs.*,
  No. 03 Civ. 9078(RMB), 2007 WL 646326 (S.D.N.Y. Feb. 26, 2007) .............................2

*Basco v. Wal-Mart Stores Inc.*,
  No. Civ.A. 00-3184, 2004 WL 1497709 (E.D. La. July 2, 2004)................................17, 18, 22

*Bayles v. Am. Med. Response of Colo., Inc.*,
  950 F. Supp. 1053 (D. Colo. 1996)................................22

*Beauperthy v. 24 Hour Fitness USA, Inc.*,
  772 F. Supp. 2d 1111 (N.D. Cal. 2011) ................................18

*England v. New Century Fin. Corp.*,
  370 F. Supp. 2d 504 (M.D. La. 2005)................................20

*Epps v. Oak St. Mortg. LLC*,
  No. 5:04-CV-OC-10GRJ, 2006 WL 1460273 (M.D. Fla. May 22, 2006) .............................20

*Gatewood v. Koch Foods of Miss., LLC*,
  No. 3:07CV82-KS-MTP, 2009 U.S. Dist. LEXIS 113896 (S.D. Miss. Oct. 20, 2009)...........23

*Hinojos v. Home Depot, Inc.*,
  No. 2:06-CV-00108, 2006 WL 3712944 (D. Nev. Dec. 1, 2006) ................................22

*Hipp v. Liberty Nat'l Life Ins. Co.*,
  252 F.3d 1208 (11th Cir. 2001) ................................23

*Hoffman-LaRoche Inc. v. Sperling*,
  493 U.S. 165 (1989)................................22

*Johnson v. TGF Precision Haircutters, Inc.*,
  No. Civ.A. H-03-3641, 2005 WL 1994286 (S.D. Tex. Aug. 17, 2005) .............................18, 19

*Laroque v. Domino's Pizza, LLC*,
  557 F. Supp. 2d 346 (E.D.N.Y. 2008)................................1

*Lee v. ABC Carpet & Home*,
  236 F.R.D. 193 (S.D.N.Y. 2006)................................2

FIRM:16417543v1

*MacGregor v. Farmers Ins. Exch.*,
    No. 2:10-CV-03088, 2011 WL 2981466 (D.S.C. July 22, 2011) ............................ 14

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ...................................................................................... 2

*Novak v. Home Depot U.S.A., Inc.*,
    259 F.R.D. 106 (D.N.J. 2009) ............................................................................ 23-24

*O'Brien v. Ed Donnelly Enters., Inc.*,
    No. 2:04-CV-00085, 2006 WL 3483956 (S.D. Ohio Nov. 30, 2006),
    *aff'd*, 575 F.3d 567 (6th Cir. 2009) .............................................................. 4,16, 17

*Pefanis v. Westway Diner, Inc.*,
    No. 08 Civ. 002 (DLC), 2010 WL 3564426 (S.D.N.Y. Sept. 7, 2010) ............. 11-13

*Salinas v. O-Reilly Auto., Inc.*,
    No. 04-1861, 2005 WL 3783598 (N.D. Tex. Nov. 17, 2005) ........................... 19-20

*Simmons v. T-Mobile USA, Inc.*,
    No. 06-1820, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007) ................................... 19

*Smith v. Heartland Auto. Servs., Inc.*,
    404 F. Supp.2d 1144 (D. Minn. 2005) .................................................................. 20

*Thiessen v. Gen. Elec. Capital Corp.*,
    267 F.3d 1095 (10th Cir. 2001) .............................................................................. 23

*Thiessen v. Gen. Elec. Capital Corp.*,
    996 F. Supp. 1071 (D. Kan. 1998) .......................................................................... 22

*Wal-Mart v. Dukes*,
    131 S. Ct. 2541 (2011) ...................................................................................... 14-16

*Zivali v. AT&T Mobility, LLC*,
    --- F. Supp. 2d ---, 2011 WL 1815391 (S.D.N.Y. May 12, 2011) ................ 2, 13-15

FIRM:16417543v1

## I.      Introduction

In his opposition papers, Plaintiff has failed to carry his burden of presenting substantial and persuasive evidence that he and the opt-in plaintiffs are similarly situated.  As discussed below, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Decertification of the Collective Class, dated August 5, 2011 (hereinafter, "Opp. Brf."), is rife with factual inaccuracies, exaggerations and overgeneralizations and relies on outdated and inapposite case law.

The evidence shows that the factual and employment settings of the opt-in plaintiffs are disparate, there are individual defenses available to Cabana applicable to each plaintiff, and fundamental fairness and procedural considerations weigh heavily in favor of decertification. Accordingly, Defendants' motion for decertification of Plaintiff's FLSA collective action should be granted.

## II.     Plaintiff Fails To Meet His Burden of Demonstrating That He and the Opt-In Plaintiffs Are Similarly Situated

One of Plaintiff's main arguments is that Defendants' motion for decertification should be denied because it "re-hashes" the same arguments and evidence that Defendants' raised in opposition to Plaintiffs' initial application for collective action certification filed in October 2010. (*See* Opp. Brf. pp. 7, 29).  This argument confuses the two-step legal analysis applicable to a motion for decertification and should be rejected.  It is Plaintiff, not Defendants, who has the substantial burden at this second step of the decertification inquiry of coming forward with much more persuasive evidence than was needed to have the action conditionally certified under the FLSA. *See Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008).

On that first step, Plaintiff only had to satisfy a "low standard of proof" in making a "modest factual showing" that he and potential opt-in plaintiffs were "similarly situated" with regard to "a common policy or plan that violated the law." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citations omitted). The Court held that Plaintiff satisfied this low standard with respect to Cabana's New York restaurants in its February 1, 2011 Memorandum and Order, granting Plaintiff's motion to send notice to potential opt-in plaintiffs who may be similarly situated to the named Plaintiff Gerardo Valdez Lujan. (*See* Docket No. 55).

Now, in considering Defendants' post-discovery motion for decertification, the Court is afforded a much fuller record, and must apply a "stringent standard" of proof in determining whether plaintiffs are similarly situated for purposes of the FLSA. *Zivali v. AT&T Mobility, LLC*, --- F. Supp. 2d ---, 2011 WL 1815391 (S.D.N.Y. May 12, 2011). The burden is squarely on the named Plaintiff Lujan to prove that the other opt-in employees are similarly situated to him for purposes of representing them in this lawsuit. *Ayers v. SGS Control Servs.*, No. 03 Civ. 9078(RMB), 2007 WL 646326, at *4 (S.D.N.Y. Feb. 26, 2007). Further, Plaintiff can no longer rely on hearsay, anecdotes or unsubstantiated allegations of unauthorized practices, but must present substantial evidence that Cabana applied a uniform, unlawful policy to Lujan and in a similar manner applied the same uniform unlawful policy to all the other opt-in plaintiffs.

The evidence presented by Plaintiff in opposition to Defendants' decertification motion is inadequate to justify continued collective action status. Defendants' motion should be granted, with the collective action being decertified such that the claims of the opt-in plaintiffs are dismissed without prejudice and Lujan may proceed on his own claims. *See Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

2

A.    **The Evidence Submitted By Plaintiff Is Inadequate To
Support Continued Certification as A Collective Action**

1.    **The Declarations Filed By Plaintiff Are Inadmissible**

In opposition to Defendants' motion for decertification, Plaintiff submits or refers to 20 declarations, 9 of which are over a year old. These declarations are unreliable and inadmissible in many respects. Eleven of these declarations -- those that appear to have been signed in June or July 2011 -- were previously filed by Plaintiff on July 5, 2011 in support of his motion for Rule 23 class certification. These declarations (which are attached respectively as Exhibits A-L and O-P to the July 5, 2011 Declaration of Lloyd Ambinder, Esq. (the "Ambinder Decl.")) were signed by Plaintiff (the "Lujan Decl."), Alba Elena Bovender (the "Bovender Decl."), Israel Pastor Reyes (the "Reyes Decl."), Nicholai Patchen (the "Patchen Decl."), Tomas Velez (the "Velez Decl."), Ana Carolina Davila (the "Davila Decl."), Jose Luis Romero (the "Romero Decl."), Ascension Moran (the "Moran Decl."), Vanessa Belandria (the "Belandria Decl."), Ariel Penizzotto (the "Penizzotto Decl."), and Hugo Suarez (the "Suarez Decl."). On August 5, 2011, Defendants moved to strike these 11 declarations (Docket Nos. 149-151), and for the reasons set forth in that motion, the 11 declarations should not be considered by the Court with regard to this motion.

The other 9 declarations that Plaintiff cites in his opposition to Defendants' decertification motion date from August or September 2010. Three of those declarations -- of Maria Fernanda Garcia (the "Garcia Decl."), Edwin Quiza (the "Quiza Decl."), and Ana Milena Ruiz (the "Ruiz Decl.") -- are attached to the Ambinder Decl. as Exhibits J, K and L. The other six declarations -- of Yessika Alexandra Calero (the "Calero Decl."), Maria Carmenza Guevara (the "Guevara Decl."), Humberto Morales (the "Morales Decl."), Jean Paul Quijano (the "Quijano Decl."),

Cesar Vargas (the "Vargas Decl."), and Carmen Sanchez (the "Sanchez Decl.") -- were previously filed as attachments to Plaintiff's October 8, 2010 notice of motion to permit court-supervised notification to putative class members pursuant to FLSA §216(b) (Docket No. 35). On August 16, 2011, Defendants moved to strike these 9 declarations, and for the reasons set forth in that motion, these 9 declarations should not be considered by the Court with regard to this motion.

But even assuming, *arguendo*, that Plaintiff's 20 declarations are admitted and considered, they still fail to provide anything more than anecdotal evidence of individual allegations rather than a corporate policy, and therefore do not constitute sufficient evidence, at this second step of the decertification analysis, to justify having this action proceed on a collective basis. The declarations, even taken together, do not establish the existence of a common plan or policy violating the FLSA. *See O'Brien v. Ed Donnelly Enters., Inc.*, No. 2:04-CV-00085, 2006 WL 3483956 (S.D. Ohio Nov. 30, 2006), *aff'd*, 575 F.3d 567 (6th Cir. 2009), in which approximately 426 current and former employees received notice of an FLSA lawsuit, 10 such employees opted-in. In that case, five of the opt-ins alleged their time records were improperly changed to reduce their hours of work, and five opt-ins alleged that they worked "off-the-clock," while three of the ten opt-ins failed to allege they were victims of either practice. The District Court held that this was insufficient evidence to establish existence of a common plan or policy violating the FLSA, and therefore held that the original and opt-in plaintiffs were not similarly situated. *O'Brien*, 2006 WL 3483956 at *4. A similar result should obtain here, as Plaintiff has likewise offered insufficient evidence from a handful of opt-in plaintiffs, after sending notice to hundreds of current and former Cabana employees.

4

2.    **Plaintiff's Time Records Analysis Is Fatally Flawed**

In his opposition papers, Plaintiff submits limited examples of time records of several individuals (*see* Exhibits R-X and Z to the Ambinder Decl.), and a time record "analysis" spreadsheet (Ambinder Decl., Exhibit Q) that Plaintiff contends raise suspicions because there are punches after 10:00 a.m.  As set forth in the Reply Declarations of Elisa Frechter (the "E. Frechter Reply Decl."), Jose L. Torres (the "Torres Reply Decl."), and Benjamin Bautista (the "Bautista Reply Decl."), contrary to Plaintiff's contention, employees were not all scheduled to arrive at the same time.  Plaintiff has simply identified examples of employees arriving at work at different times, as scheduled.  The restaurants opened for business at 11:30.  (*See* Bautista Reply Decl. ¶2). Servers, bussers, runners, bartenders, and hostesses were scheduled to arrive for the lunch shift from 10:00 am to 1:00 pm, depending on the general manager's forecast of business need.  (*See* Torres Reply Decl. ¶¶5, 7, 8; Bautista Reply Decl. ¶3); E. Frechter Reply Decl. ¶4, Exhibits 13 and 15).

Contrary to the Declarations from representatives of Cabana's independent computer timekeeping vendors, Plaintiff's claims are premised upon the unfounded contention that Cabana's timekeeping system was unlawful.  Plaintiff's exhibits fall well short of establishing that Cabana operated under an unlawful policy or that Cabana applied that unlawful policy to Lujan or those other opt-in employees in a similar manner.  Contrary to reflecting hours worked off the books, Plaintiff's exhibit reveals servers arriving for work as they were scheduled, on staggered shifts depending upon whether they were scheduled to open for lunch, or close after dinner, or work a double shift and were scheduled to come in later and leave earlier than the opening and closing servers.  (*See* Torres Reply Decl. ¶5; Bautista Decl. ¶3; E. Frechter Decl. ¶4 and Exhibits 13 and 15).  Plaintiff's "Time Records Analysis" simply

reflects examples of days Ana Milena Ruiz (in May, June, and July 2006) and Carmen Sanchez (in May 2005) were scheduled to work double shifts. When working a double shift employees were scheduled to arrive at 11:30 am. When scheduled to work as a closing server for a dinner shift, employees were scheduled to arrive after 5:30 pm.

### 3.      Plaintiff's Discussion of Cash Sales Slips and Guest Checks Fails

Plaintiff's attempt to use the cash sales slips and guest checks that are attached to the Ambinder Decl. as Exhibits AA, AB, and AC also misses the mark. Contrary to Plaintiff's assertions that these "inconceivable" punch reports depict illegal time and pay policies, they are examples of scheduling a rolling attendance to maximize customer service and minimize the number of unnecessary staff during periods that the restaurant does not have many customers. (*See* Torres Reply Decl. ¶3). The cash-out reports cited by Plaintiff are simply examples of an opening server who finishes working before the restaurant closes and transfers to a closing server the tables he or she opened before punching out. Servers leaving before the restaurant closes transfer their last tables to closing servers and leave the restaurant while the closing server finishes service to the last remaining tables. (*See* Torres Reply Decl. ¶¶4, 10-12, 15). Specifically, Plaintiff's "representative" samples are in fact individual examples of cash-outs after punch-outs that result from servers working double shifts whose section is slow after dinner and leave earlier than closing servers. At the end of the night, tables were served, closed and cashed out by the closing server, and then the closing server punched out after the last table was closed. (Torres Reply Decl. ¶15).

The Squirrel system did not record the transfers from the server who opened his/her last table to the closing server who finished the service. The PosiTouch system does record transfers when they occur, and a sales record is kept of who opened a table, and who closed

6

it.  On the Squirrel system the time each server worked was accurately recorded, but the transfer of a table from one server to another was not recorded.  (Torres Reply Decl. ¶¶13-14).  It is important to note that Plaintiff's exhibits are based on transactions that took place with ONLY the Squirrel system.  Plaintiff attempts to confuse the court by attempting to claim features for the Squirrel system that were only available with the PosiTouch system.  The PosiTouch system requires servers to punch in prior to opening a table and prohibits employees from punching out prior to cashing out or closing open tables.  Unlike the Squirrel timekeeping system, PosiTouch records transfers of tables from one to another server.  Plaintiff acknowledges that PosiTouch has more sophisticated features than the Squirrel system, but he chooses to lump the systems together in his attempt to confuse the Court and establish his claim.  Cabana provides many more examples of cash-outs taking place on the clock than Plaintiff's limited samples of the transferred tables he uses to support the false implication he urges the Court to draw.  E. Frechter Reply Decl. ¶2 and Exhibits 11 A – 11G.

<strong>4.  The Testimony of Glenn Frechter and Benjamin<br>Bautista Does Not Establish That Lujan and<br>The Opt-In Plaintiffs Were Similarly Situated</strong>

Plaintiff also cites to the deposition testimony of Defendant Glenn Frechter and Benjamin Bautista, the General Manager of Cabana Forest Hills.  The only use that Plaintiff makes of Glenn Frechter's deposition testimony is in discussing the basics of Cabana's timekeeping systems and payroll processes.  (*See* Opp. Brf. p. 15).

Plaintiff cites to Bautista's deposition testimony in a few contexts.  First, Bautista testified that Cabana's managers regularly make adjustments to employee time records.  (Opp. Brf. p. 13-15).  The fact that Cabana's managers made adjustments to time records does not demonstrate

7

that such adjustments were illegal or unwarranted. The adjustments had to be made to add and subtract time when breaks were taken while employees remained punched in or at times when employees forgot to punch in or out. *See* the Declaration of Elisa Frechter in opposition to Plaintiff's motion for class certification (Docket No. 146). Nor does Bautista's inability to recall at his June 2011 deposition why particular adjustments were made on particular time records dating from 2005 support Plaintiff's claim. There is no basis to support Plaintiff's allegation that adjustments were unwarranted for those employees clocking in after 10 a.m. for the lunch shift or after 4 p.m. for the dinner shift. Contrary to Plaintiff's implication that all employees were scheduled to arrive simultaneously, Cabana employees were scheduled to arrive at staggered times, to meet the needs of rush periods. (Bautista Dep. 219-243; Bautista Reply Decl. ¶3; E. Frechter Reply Decl. ¶4, Exhibits 13 and 15).

Second, Plaintiff cites to Bautista's deposition testimony regarding what he knew about the Department of Labor investigation ("DOL") of Cabana and the circumstances in which he gave the check for back wages and DOL official release form WH-58. (Opp. Brf. p. 26). None of this testimony changes the facts that Lujan signed the DOL release form WH-58 and cashed his back wage check. The DOL's mission is to enforce the FLSA. The DOL's investigators routinely find FLSA violations and assess back wage liability to employers. The only reason the DOL did not find more back wages were due to Lujan is simply because more back wages were not in fact due Lujan.

Third, the fact that Bautista could not accurately recite portions of Cabana's employee handbook at his deposition (Opp. Brf. p. 35) does not prove that Cabana's written policies were not enforced. Bautista testified that although it was Cabana's policy to require written approval for overtime, when it was performed, he authorized payment of overtime wages whether or not

8

overtime had been previously approved.   (Bautista Dep. 219-243; Bautista Reply Decl. ¶6). Bautista's testimony that it is Cabana's policy to pay for even unauthorized overtime demonstrates Cabana's policy is to pay for all hours actually worked.

In short, the deposition testimony of Glenn Frechter and Benjamin Bautista which Plaintiff cites supports a finding that Cabana's policies are entirely lawful, and does not begin to demonstrate or advance Plaintiffs' argument that Plaintiff and the opt-in plaintiffs are subject to an unlawful policy.

**B.    Defendants' Evidence Demonstrates That Plaintiff Lujan and The Opt-In Plaintiffs Are Not Similarly Situated**

The evidence submitted by Defendants in support of their motion for decertification establishes that Lujan and the opt-in plaintiffs are <u>not</u> similarly situated with regard to a common policy or plan that violated the law.   On the contrary, that evidence shows beyond doubt that Cabana's policies were in compliance with the law.   *See* the declarations and computerized time keeping vendors, current and former employees of Cabana (at Exhibits 12 to 34 of the July 5, 2011 Declaration of Douglas Weiner filed in support of Defendants' decertification motion (the "Weiner Decl.")), the punch reports and analysis of time and pay records (Weiner Decl., Exhibits 36-43), and void reports (Weiner Decl., Exhibits 44-46) submitted by Defendants.

Also, as discussed in Defendants' July 5, 2011 memorandum of law filed in support of this motion ("Def. Brf."), at pp. 13-21, the testimony of Lujan and the eight opt-in plaintiffs who appeared for deposition show that they experienced disparate factual and employment settings such that proceeding as a collective action is inappropriate.   (*See* Exhibits 1-9 of the Weiner Decl.).   Moreover, defenses individual to each opt-in plaintiff preclude collection action.   (*See* Def. Brf., pp. 21-23).

For further proof on these issues, the Court is also respectfully referred to the evidence submitted by Defendants in opposition to Plaintiff's motion for class certification pursuant to Fed. R. Civ. P. 23. (*See* Docket Nos. 146, 147). There are declarations from officials of Cabana's time keeping vendors who testify Cabana's computer time records were not manipulated, declarations from 22 former Cabana employees who corroborate Cabana's lawful policies. Cabana's 39 declarations demonstrate that Cabana's policy was to record time accurately, to pay employees for all hours worked, to pay employees who worked over 40 hours in one week at time and one half for those overtime hours, and not to require employees to pay for mistakes or customer walk-outs. *See* Docket No. 147. Plaintiff produced no admissible evidence that Cabana's time keeping system was illegal, or used in an illegal manner. More than twice as many former employees provided statements confirming Cabana's compliance with applicable law than the 9 opt-in plaintiffs who appeared for their depositions and related isolated allegations of violation. Current employees corroborate the testimony of the former employees. Defendants' declarations of former and current employees who trained, worked with, supervised, and were supervised directly by Ariel Penizzotto and Hugo Suarez refute much of the testimony of the two former short term assistant managers.

Resolving the claim of Plaintiff Lujan, a runner at Cabana Forest Hills, thus does nothing to resolve the claims of the servers, dishwasher or kitchen manager. Resolving Lujan's claim an unnamed manager punched him out while he was still working does nothing to resolve the opt-in servers' claims regarding being forced to wait for their first table to punch in.

Resolving Lujan's claim that he was forced to pay for a mistake once in seven years does nothing to resolve anecdotal claims from other opt-in plaintiffs that certain managers at intermittent times forced them to pay for mistakes. Resolving Lujan's claim for tips and unpaid

work does nothing to resolve Moran's claim that he performed non-exempt duties and was therefore misclassified. Because Lujan is not representative of the other opt-in plaintiffs, there is no value to the Court to allow him to represent the disparate claims of the other opt-in plaintiffs.

In this second stage of the certification inquiry requiring a stringent standard of proof, Plaintiff Lujan has failed to meet his burden that Cabana's pay policy was unlawful, that he and the opt-ins were similarly subjected to Cabana's unlawful policy, or that he is similarly situated to the opt-in plaintiffs.

## III.   This Action More Closely Resembles The *Zivali* Case Than The *Pefanis* Case.

In support of his legal argument that Plaintiff and the opt-in plaintiffs are similarly situated, Plaintiff relies heavily on *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002 (DLC), 2010 WL 3564426 (S.D.N.Y. Sept. 7, 2010). That case is plainly distinguishable from this action, and should not sway the Court to deny Defendants' decertification motion. In *Pefanis*, when the defendant moved to decertify the collective action, the situations of only one named plaintiff (Pefanis -- a waiter who worked from November 2006 to November 2007) and one opt-in plaintiff (Peralta -- a prep cook who worked from 1999 through April 2008) were being examined. These two individuals worked in the same restaurant under the same general manager, and the restaurant did not maintain contemporaneous time records for its employees while they worked there. The *Pefanis* court denied the decertification motion, finding, "At their core, both Pefanis' and Peralta's claims are premised on the fact that they were non-exempt employees who worked overtime, but were not properly compensated by Westway." *Pefanis*, 2010 WL 3564426, at *4.

In this action, by contrast, 22 individuals opted-in, and the 23 putative plaintiffs worked in numerous different occupations, at three different restaurants, under numerous

different managers, during different time periods over the course of 6 years. Most significantly, Cabana kept meticulous contemporaneous time and payroll records. (*See* Def. Brf. pp. 13-16). The opt-in plaintiffs here also include at least one exempt employee (Ascension Moran, who now claims he was misclassified), three who have accepted settlement offers, and the 10 who failed to appear for their scheduled depositions. Further, Plaintiff's claims are not simple failure to pay minimum wage and overtime claims that the *Pefanis* court found relevant to the FLSA collective action analysis in that case. *Pefanis*, 2010 WL 3564426, at *4. For example, in this action, Lujan asserts claims based on Defendants allegedly requiring its employees to pay for mistakes or customer walk-outs and manipulating time records. However, by virtue of their occupations or simply their experiences, some of the opt-in plaintiffs herein (*e.g.*, the busboy Reyes, the dishwasher Saldana, and the kitchen manager Moran) have not made similar claims, and could not even allege similar claims. (*See* Reyes Dep. 19:20-21:11; Saldana Dep. 5:5-8). Likewise, such individuals do not make the claim that they were required to work off-the-clock while waiting for the first customers to arrive, as do some, but not all, servers at intermittent times. (*See* Def. Brf. pp. 10-12, 17-19). In this vein, the assertion in Plaintiff's Opp. Brf., at p. 6, that "servers, bartenders, and bussers were often not permitted to clock-in until their first table arrived, despite the fact that they had to be ready to work up to one and one-half (1.5) hours earlier when their shift began" (emphasis added) is a blatant falsehood. The Plaintiff limited that claim to servers and never testified he was subject to this "policy".

The opt-in plaintiffs' occupations, working experiences and claims are more numerous and much more diverse in this action than they were in the *Pefanis* case, and so it should not be followed by this Court. It should also be noted that the portion of the *Pefanis*

case that denies the defendant's motion for decertification of the FLSA collection action (*Pefanis*, 2010 WL 3564426, at *4) has not been cited or followed in any reported decision.

More on point is *Zivali*, where the court decertified a class action in which 4,100 retail store assistant store managers and retail sales consultants opted-in to claim they were not paid proper wages and overtime compensation by the defendant.  In that case, the court found the defendant AT&T used a timekeeping system capable of capturing all time worked and that its formal corporate policies to pay overtime were lawful.  *Zivali*, 2011 WL 1815391, at *3-4.  Plaintiff Zivali argued that notwithstanding these compliant policies and timekeeping system, there were pervasive practices and culture at AT&T that resulted in class-wide wage and overtime violations.  *Id.*, at *5.

Applying the second step, "stringent standard" of proof (*Id.*, at *2), the *Zivali* court found that plaintiffs' claims involved highly individualized situations, including whether they had to work off-the-clock prior to the daily opening of the stores; and whether adjustments were made to the timekeeping system to manipulate records of work.  *Id.*, at *6-7.  Additionally, the defenses available to AT&T appeared to be highly individual as to each plaintiff.  *Id.*, at *7.  After finding that "[r]esolution of the many fact-specific issues in this case would essentially require 4,100 mini-trials," the court granted AT&T's motion to decertify the FLSA collective action.  *Id.*, at *8.  A similar result is appropriate in this case.

Although the number of opt-in plaintiffs is smaller in this action, the *Zivali* court's analysis is directly applicable, Plaintiff's arguments to the contrary notwithstanding (Opp. Brf. pp. 33-35).  There is no real dispute that Cabana's timekeeping system and policies on payment of employees are legally compliant.  *See* Glenn Frechter Decl. pp. 2, 6-8 (Docket No. 147.1); Troy Gimson Decl. ¶¶3-5, 7-8 (Docket No. 147.6); Buzz Cmayo Decl. ¶¶2-6 (Docket No.

147.7); Eduardo Arevalo Decl. ¶5 (Docket No. 147.32); Harold Quinterro Decl. ¶¶5-7 (Docket No. 147.33); Alexis Rodriguez Decl. ¶¶4-6 (Docket No. 147.34); Jose Torres Decl. ¶¶4-6 (Docket No. 147.35); Benjamin Bautista Decl. ¶¶5-7 (Docket No. 147.38). Plaintiff's hodgepodge of claims are that certain managers at certain times engaged in certain *practices* contrary to Cabana's policies that were illegal and resulted in unpaid wages. (*See* Opp. Brf. p. 35). However, as in *Zivali*, the fact-specific issues raised by the claims of the 23 putative plaintiffs herein would essentially require 23 mini-trials to determine whether they were in fact contrary to the contemporaneous payroll records made to work off-the-clock, or denied overtime pay, or forced to pay for any mistakes of customer walk-outs.   In these circumstances, representative "evidence" will not yield a fair or just result, is inappropriate and unwarranted.

Plaintiff's attempt to dispatch the watershed case of *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011), is unconvincing.   (*See* Opp. Brf. p. 34).   *Dukes* addressed the issue of "commonality," *i.e.*, a showing that the plaintiffs and the potential class members have suffered the same injury, in the context of class certification under Fed. R. Civ. P. 23.   The "similarly situated" standard inherent to a section 216(b) collective action serves the same purpose as the Rule 23 commonality requirement by requiring a showing that a class may be bound by "the glue" of common answers to common facts and legal theories.

Lujan and the opt-in plaintiffs are not similarly situated because their claims do not "depend upon a common contention," *i.e.*, a contention that is of "such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

Like the defendants in *Zivali* and *Dukes* cases, who operated different establishments run by different managers, the fact that there are three different Cabana restaurants run by different managers weighs against a finding that Lujan and the opt-in plaintiffs here are similarly situated. The testimony of Defendants' managers is that each Cabana restaurant manages its own scheduling, staffing, overtime allocation and labor budget. *See* Carola Encarnacion Decl. pp. 3-4 (Docket No. 147.21); Yan Salcedo Decl. pp. 2-3 (Docket No. 147.22); Eric Landsman Decl. ¶4 (Docket No. 147.30); Eduardo Arevalo Decl. ¶13 (Docket No. 147.32); Harold Quinterro Decl. ¶¶8, 11, 14-16, 31 (Docket No. 147.33); Alexis Rodriguez Decl. ¶¶7, 10, 11, 13-16, 29 (Docket No. 147.34); Jose Torres Decl. ¶¶7, 10, 11, 13-16, 31 (Docket No. 147.35); Benjamin Bautista Decl. ¶¶8, 11, 15, 16 (Docket No. 147.38); Aldo Cabrera Decl. ¶¶8, 12, 13, 24 (Docket No. 147.44). *See also* Glenn Frechter Decl. pp. 5-6 (Docket No. 147.1). Also, the PosiTouch timekeeping system was installed independently at each Cabana location, with Cabana Forest Hills installing it almost a year after Cabana Seaport. (Glenn Frechter Dep. 87-88). The managers and employees of the three Cabana restaurants did not receive similar training collectively. (Bautista Reply Decl. ¶7).

By submitting in opposition to Defendants' motion only anecdotal declarations of opt-in plaintiffs' experiences working for different managers at different times at different restaurants, and his faulty analysis of time records, cash sales slips and guest checks, Plaintiff has failed to provide "significant proof" that Cabana operated under a general policy of depriving its employees of the money earned in minimum and overtime wages and gratuities to which those employees were entitled. "[I]f there is not a uniform practice but rather decentralized and independent action by supervisors that is contrary to the company's

established policies, individual factual inquiries are likely to predominate and judicial economy will be hindered rather than promoted by certification of a collective action." *MacGregor v. Farmers Ins. Exch.*, No. 2:10-CV-03088, 2011 WL 2981466 (D.S.C. July 22, 2011) (denying plaintiffs' "first step" motion to allow notice to similarly situated employees).

Accordingly, Plaintiff's claims cannot be found to be in common with the claims of the other opt-in plaintiffs, *Dukes*, 131 S. Ct. at 2551, and Plaintiff cannot be found to be similarly situated to those individuals.

**IV.   Plaintiff's Claims of Off-The-Clock Work Or Adjustment Of Recorded Hours Are Insufficient To Survive Defendants' Decertification Motion.**

Traditionally, individual claims that plaintiffs worked off-the-clock or that their managers routinely adjusted their recorded hours, like the claims at issue here, are insufficient to justify treatment as a collective action. The following authorities held, in either the first or second step of the decertification analysis, that collective action status was not appropriate in circumstances analogous to the violations alleged in this action.

For example, in *O'Brien*, a case with facts similar to this action, two named plaintiffs who worked at two McDonald's restaurants in Ohio alleged that they were not paid the minimum hourly wage and overtime compensation due them. Their action was conditionally certified pursuant to the FLSA and 8 individuals opted-in. After discovery, defendants moved to decertify and plaintiffs argued that they were similarly situated because they were paid hourly wages, performed virtually identical tasks, and were cheated out of wages by (a) working off-the-clock and (b) managers improperly changing plaintiffs' recorded hours of work to reduce their pay. *O'Brien*, 2006 WL 3483956, at *3-4. The court

rejected plaintiffs' arguments and decertified the collective action, holding that they had not demonstrated the existence of an unlawful common policy or plan that victimized both the original and opt-in plaintiffs. (The allegations by only a handful of putative plaintiffs of misconduct did not demonstrate a common plan or policy). *O'Brien*, 2006 WL 3483956, at *4. The court also held that each claim would require extensive consideration of individualized issues of liability and damages. *O'Brien*, 2006 WL 3483956, at *4-5. The same is true in this action.

Similarly, in *Basco v. Wal-Mart Stores Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709 (E.D. La. July 2, 2004), three named plaintiffs sought certification to proceed as a collective action pursuant to the FLSA. The plaintiffs' allegations included assertions that hourly workers were required to work off-the-clock (both after clocking out at the end of a shift and during unpaid meal breaks) and that managers manipulated time and wage records to reduce amounts paid to employees, including overtime pay. *Basco*, 2004 WL 1497709, at *2. Evaluating plaintiffs' motion under both the lenient first step analysis and the more stringent second step analysis, the court denied their motion, finding that there was no "single decision, policy or plan at issue." *Basco*, 2004 WL 1497709, at *8. The court continued:

> The potential opt-in plaintiffs performed different jobs at different geographic locations and were subject to different managerial requirements which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis. This case should not be certified; it would be an exercise in gross mismanagement of judicial and litigant time and money to certify the class as requested given the overwhelming evidence before the court.

*Basco*, 2004 WL 1497709, at *8. The same is true here.

Another case reached a similar result with respect to a proposed FLSA collective action involving trainers at the 24 Hour Fitness chain of fitness clubs. *Beauperthy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111 (N.D. Cal. 2011). The 772 putative plaintiffs alleged that 24 Hour Fitness had failed to compensate them for off-the-clock work for which they should have received overtime compensation. Rejecting plaintiffs' arguments, the court stated that "24 Hour's official policy was to pay its employees for all hours worked," and continued, "[w]hile Plaintiffs offer substantial evidence that many trainers did perform off-the-clock work, the evidence indicates that the decisions of individual club-level managers, not a company-wide policy, were the causal factor." *Beauperthy*, 772 F. Supp. 2d at 1124. The court also accepted the defendants' argument that plaintiffs' "hodgepodge of allegations only calls attention to the fact that Plaintiffs are unable to identify a single policy, plan or decision which required them to work off-the-clock." *Beauperthy*, 772 F. Supp. 2d at 1125. Considering factors of fairness and procedural integrity, the court further found that the need for "individualized inquiries would make proceeding by representative testimony impracticable" and that proceeding collectively would be "unmanageable, chaotic, and counterproductive." *Beauperthy*, 772 F. Supp. 2d at 1127-28. The same holds true in this action.

In *Johnson v. TGF Precision Haircutters, Inc.*, No. Civ.A. H-03-3641, 2005 WL 1994286 (S.D. Tex. Aug. 17, 2005), one named plaintiff and 264 opt-in plaintiffs who were hair stylists and receptionists at over 90 beauty salons in Texas asserted that they were denied overtime pay, including by such practices (affecting some plaintiffs but not others) as being required to work off-the-clock by arriving early and staying late beyond the time of their scheduled shifts, being forced to clock out when taking short breaks or when waiting

18

for customers, and being required to attend meetings or training sessions without pay. *Johnson*, 2005 WL 1994286, at *3-4. The court granted the defendants' motion to decertify the FLSA collective action and dismissed the opt-in plaintiffs without prejudice, finding that "The foregoing conglomerate of diverse evidence indicates that some Plaintiffs may have prima facie claims for FLSA violations at different times, in different places, in different ways, and to differing degrees, but the evidence of varied particular violations is insufficient to show that Defendants implemented a uniform, systematically applied policy of wrongfully denying overtime pay to Plaintiffs." *Johnson*, 2005 WL 1994286, at *4. Plaintiff's evidence herein is likewise insufficient.

Cases such as these, decertifying or refusing to certify proposed FLSA collective actions that are based on allegations of off-the-clock work, are legion. *See, e.g., Adair v. Wisconsin Bell, Inc.*, No. 08-0280, 2008 WL 4224360, at *7 (E.D. Wisc. Sept. 11, 2008) (refusing to conditionally certify collective action where defendant established that its company-wide policies did not cause differences between compensable work and pay); *Simmons v. T-Mobile USA, Inc.*, No. 06-1820, 2007 WL 210008, at *6 (S.D. Tex. Jan. 24, 2007) (finding that supervisors' independent refusal to upwardly amend overtime hours, which violated written policy of the employer to pay overtime, did not indicate common policy or plan of the employer sufficient to satisfy "similarly situated" standard, even when employer discouraged employees from working overtime); *Salinas v. O-Reilly Auto., Inc.*, No. 04-1861, 2005 WL 3783598, at *6 (N.D. Tex. Nov. 17, 2005) (finding that plaintiffs' evidence failed to show a common policy or practice where the evidence only demonstrated that "a handful of [defendant's] managers ... committed ... FLSA violations in a variety of different ways"); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La.

2005) ("individual inquiries must predominate in this case because of the different locations, managers, and factual situations involved at each location").

See also Epps v. Oak St. Mortg. LLC, No. 5:04-CV-OC-10GRJ, 2006 WL 1460273, at *7 (M.D. Fla. May 22, 2006) ("even assuming that Oak Street had a corporate policy of discouraging overtime, each Plaintiff and opt-in Plaintiff's proof of a violation will be individualized because it depends upon how or whether each individual manager implemented the policy with regard to each individual plaintiff") (citation omitted).

It is respectfully submitted that the Court should be guided by these precedents and hold that, given Plaintiff's insufficient evidentiary showing in opposition, Defendants' motion for decertification of the FLSA collective action should be granted.

## V.  Defenses Individual To Each Opt-In Plaintiff Preclude Collective Action.

Despite Plaintiff's arguments (Opp. Brf. pp. 23-27), the fact remains that Defendants must pursue a number of defenses against Plaintiff and the opt-in plaintiffs that will result in individualized defenses that weigh against certifying the class for collective action. Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1154 (D. Minn. 2005). Further, neither Lujan nor one opt-in has specified a claim or a methodology for establishing a basis for a claim. Each employee would need to demonstrate individual calculations of damages. Moreover Cabana's defenses primarily address liability, as well as damages.

Plaintiffs attempt to minimize the fact that he signed the DOL official release form WH-58 and cashed the check for back wages covering June 2006 through June 2008 is unavailing. (Opp. Brf. pp. 25-27). By his actions, Lujan has waived his claims for that period of time and thus is not representative of the other opt-in plaintiffs' claims. Plaintiffs' apparent intent to argue that such waiver was not effective because Lujan did not understand

what he was signing makes it evident that there will be at least one mini-trial on those issues. Plaintiff's false assertion that all plaintiffs were unaware of any DOL investigation during the time they worked for Defendants (Opp. Brf. p. 25) is another subject that could give rise to several mini-trials. Velez spoke to the DOL investigator and was given her card and told to call if he had any question. Velez and Moran admit they were given cards by DOL investigators while they worked for Cabana, and observed others given cards also. (*See* Velez Dep. 11:23-20:6; Moran Dep. 93:15-94:23). Reyes asserts in his declaration that spoke to someone from the DOL while he was working at Cabana (Reyes Decl. ¶11), but he contradicted that assertion during his deposition when he testified that he had never spoken to the DOL. *See* Reyes Dep. 24:15-26:20, 53:5-11.[1]

Furthermore, Plaintiff's insistence that the eleven opt-in plaintiffs who did not appear for their depositions "still hold FLSA claims" (Opp. Brf. p. 27) demonstrates that these individuals' rights to pursue those claims will be litigated, resulting in yet more mini-trials and/or motion practice.

Finally, Plaintiff's assertion that damages for individual plaintiffs (if liability is proven at trial) "will be determined by the application of mathematical formulae common to all class members" is completely off the mark. (Opp. Brf. p. 24). There is no such formula that could account for differences in the claimed violations allegedly experienced among the opt-in plaintiffs. Some plaintiffs claim that they had to pay on rare occasions for mistakes or walk-outs while some admit they never had to pay; some plaintiffs claim they worked off-the-clock while some admit they never did; some plaintiffs claim they were denied

---

[1] Quiza states in his declaration, "While working at Cabana, I never heard anything about a Department of Labor investigation." (Quiza Decl. ¶2). This is hardly surprising, given that the DOL's investigation concerned the period June 2006 through 2008 and occurred years after Quiza's 2004-2005 employment at Cabana! Plaintiff submits similarly misleading statements from Penizzotto and Suarez whose employment also preceded the DOL audit.

overtime pay all the time, while some admit they were not denied overtime pay during certain time periods. *See* Def. Brf. pp. 13-20.

In short, the existence of such individualized defenses "heightens the individuality of the claims and complicates the significant management problems," making collective treatment of this action all the more impractical and inappropriate. *Basco*, 2004 WL 1497709, at *8.

**VI.    Fairness and Procedural Considerations Mandate Decertification.**

In deciding a second-step decertification motion, an essential element is whether the action can be coherently managed and evidence can be presented at trial "in a manner that will not confuse the jury and unduly prejudice any party." *Thiessen v. Gen. Elec. Capital Corp.*, 996 F. Supp. 1071, 1084 (D. Kan. 1998). Here, attempting to litigate this action on a collective basis would confuse the jury and unduly prejudice Cabana.

As the Supreme Court has recognized, one of the primary objectives of a collective action is to enhance judicial efficiency by resolving common issues of law and fact arising from the same alleged unlawful conduct. *See Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). This objective is undermined where, as here, the parties would be forced to litigate a series of unending individualized issues. *See Bayles v. Am. Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1065 (D. Colo. 1996) ("oxymoronic to use [a collective action] in a case where proof regarding each individual plaintiff is required to show liability."); *see also Hinojos v. Home Depot, Inc.*, No. 2:06-CV-00108, 2006 WL 3712944, at *3 (D. Nev. Dec. 1, 2006) (no collective action treatment because action would be unmanageable at trial due to "need for individualized determinations to resolve the claims of each plaintiff").

Neither the judicial system nor the litigants would benefit from having this matter proceed as a collective action. The jurors would likely be overwhelmed by the volume of payroll records and the degree of analysis required to evaluate them and to determine the merits of all of the numerous individualized issues presented by each opt-in plaintiff. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (collective action can impose "extraordinary burdens on the jury, both in terms of the quantity of the evidence and the length of trial").

Finally, allowing this suit to proceed as a collective action would infringe upon Defendants' due process rights. Defendants are entitled to defend against the asserted claims and their rights are compromised where employees are not similarly situated. *See Gatewood v. Koch Foods of Miss., LLC*, No. 3:07CV82-KS-MTP, 2009 U.S. Dist. LEXIS 113896, at *71-72 (S.D. Miss. Oct. 20, 2009) (decertification ordered due to "plethora of individual issues" raised by claims and defenses that presented due process and "serious fairness issues").

On the other hand, decertifying the collective action would not unfairly disadvantage plaintiffs. Their claims would merely be dismissed without prejudice and they would retain the right to pursue their claims individually, either administratively through the state or federal DOL or as litigants in state or federal court. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001). Individual plaintiffs have substantial claims for tips, minimum and overtime wages and would have "sufficient incentive to pursue a meritorious claim" given their claims of hours worked. *Novak v. Home Depot U.S.A., Inc.*, 259 F.R.D. 106, 117 (D.N.J. 2009) (finding class treatment inappropriate where individual recovery was potentially substantial). Also, to the extent that any opt-in plaintiffs have credible claims,

23

they would likely benefit from having their claims tried separately from plaintiffs with non-meritorious claims. *See id.*

In sum, based upon virtually the same considerations of overall fairness and procedural requirements that have led this Court and others to deny collective treatment of the same issues as presented here, collective treatment is unwarranted.

## VII.   Conclusion

For the foregoing reasons, Defendants' motion for decertification of Plaintiff Gerardo Valdez Lujan's FLSA collective action should be granted in its entirety.

Dated:  August 19, 2011

EPSTEIN BECKER & GREEN, P.C.

Douglas Weiner
David J. Clark
250 Park Avenue
New York, New York 10177-1211
Tel: 212.351.4500
dweiner@ebglaw.com

Attorneys for Defendants
Cabana Management, Inc. and Glenn Frechter