UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERARDO VALDEZ LUJAN, individually and on behalf of all other persons similarly situated who were employed by CABANA MANAGEMENT, INC. and/or GLENN FRECHTER; and/or any other entities affiliated with or controlled by CABANA MANAGEMENT, INC. and/or GLENN FRECHTER,<br><br>                                        Plaintiffs,<br>         - against -<br><br>CABANA MANAGEMENT, INC and/or GLENN FRECHTER, and/or any other entities affiliated with or controlled by CABANA MANAGEMENT, INC. and/or GLENN FRECHTER,<br><br>                                        Defendants. | 10 cv 755 (ILG) (RLM) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' DECLARATIONS SUBMITTED IN OPPOSITION TO DEFENDANTS' MOTION FOR DECERTIFICATION OF COLLECTIVE ACTION**

Lloyd Ambinder, Esq.
LaDonna Lusher, Esq.
VIRGINIA & AMBINDER, LLP
111 Broadway, Suite 1403
New York, New York 10006
(212) 943 – 9080
(212) 943 – 9082
lambinder@vandallp.com
www.vandallp.com

1

## PRELIMINARY STATEMENT

Plaintiff Gerardo Valdez Lujan ("Named Plaintiff"), opt-in Plaintiffs, and putative class members (collectively "Plaintiffs") currently or formerly employed by Defendants Cabana Management, Inc. and/or Glenn Frechter, and/or any other entities affiliated with or controlled by Cabana Management, Inc. ("CMI") and/or Glenn Frechter (collectively the "Defendants" or "Cabana") submit this memorandum of law in opposition to Defendants' Motion to Strike certain declarations submitted by Plaintiffs in opposition to Defendants' Motion for Decertification of Plaintiffs' Collective Action. For the reasons set forth below, Defendants' application should be denied in its entirety.

## FACTUAL BACKGROUND

Plaintiffs are similarly situated current and former employees of Defendants who worked as servers, hosts(esses), bartenders, busboys, runners, dishwashers, cooks, food preparers, and in other restaurant related tasks in Defendants three restaurant locations in New York City. Plaintiffs seek unpaid minimum wages and overtime compensation, and unlawfully withheld wages, tips and gratuities, pursuant to the Fair Labor Standards Act ("FLSA") and New York labor law ("NYLL"), they allege Defendants failed to pay.

On February 1, 2011, this Court conditionally certified Plaintiffs' federal law claims as a collective action pursuant to 29 U.S.C. § 216(b) of the FLSA, and authorized notice be sent to similarly situated employees who worked in any of Defendants three restaurant locations in New York City. [See Docket No.55.] To date, over two dozen individuals have opted-in to this action.

On July 5, 2011, Defendants filed a motion to decertify the FLSA collective action.[1]

---

[1] Also on July 5, 2011, Plaintiffs submitted an application to have their NYLL claims certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. [See Docket No.127.]

[See Docket No.128.] Plaintiffs filed opposition to Defendants' application on August 5, 2011 that included fourteen supporting declarations from current and former employees and managers. [See Docket No.144.] Plaintiffs further relied on six declarations that had been previously submitted and considered by this Court in conjunction with Plaintiffs' application for collective action certification. [See Docket No.35.]

Obviously fearful of the veracity of these declarations, on August 5, 2011, Defendants filed an application to have eleven of these declarations stricken. [See Docket No.149.] Defendants argued that the declarations contain "conclusory allegations not based on personal knowledge, and inadmissible hearsay." [See Docket No.151, p.3.]

Defendants now move to strike the remaining nine declarations relied upon by Plaintiffs in their opposition to decertification.[2] In the instant application, Defendants assert the exact same meritless arguments as in their previous motion to strike. Accordingly, for the same reasons set forth in Plaintiffs' opposition to that motion, Defendants extant application should be denied in its entirety.[3]

**ARGUMENT**

**I.     PLAINTIFFS' DECLARATIONS CLEARLY
        MEET THE EVIDENTIARY STANDARDS**

Defendants urge this Court to strike Plaintiffs' declarations contending they contain conclusory allegations, inadmissible hearsay and are not based on personal knowledge.[4] Defendants' contentions are entirely meritless. As already found by this Court in its Memorandum and Order certifying this action as a collective action, Plaintiffs' declarations

---

[2] These include the declarations of Maria Fernanda Garcia, Edwin Quiza, Ana Milena Ruiz, Yessika Alexandra Calero, Maria Carmenza Guevara, Humberto Morales, Jean Paul Quijano, Cesar Vargas and Carmen Sanchez. [See Docket No.35, Exhibits B-D and F-K.]

[3] Plaintiffs incorporate the arguments made in their opposition to Defendants first motion to strike into this memorandum, along with further arguments made herein. [See Docket Nos.155-56.]

[4] Interestingly, Defendants never contended Plaintiffs' declarations should be stricken when they were originally filed in support of Plaintiffs' Motion for Conditional Certification over one year ago.

3

contain substantial evidence based on direct, first-hand knowledge of their claims, and specifically describe the violations committed by Defendants against Plaintiffs and their co-workers.  [See Docket No.55.]

All nine declarants set forth facts based on their own personal knowledge of Defendants' unlawful policies and practices of not paying proper wages.  Plaintiffs put forth specific testimony regarding when they worked for Defendants, at which restaurant, the type of work they performed, how many hours they typically worked per week, how much they were paid, that their paychecks did not contain all of the hours they worked – including all overtime hours, circumstances when they had to pay for mistakes to customers' orders with their own tip money, that they saw managers reduce employees' hours in the time-keeping system, and that they had to wait until their first customer arrived to clock-in despite having to report to the restaurant 60 to 90 minutes prior to their clock-in time.  [See Docket No.35, Exhibits B-D and F-K.]  All of these factual statements are based on Plaintiffs' personal knowledge and first-hand experiences that are specific to each Plaintiff.

This Court found these statements sufficient to demonstrate Plaintiffs are similarly situated despite having worked at different Cabana locations, in different job classifications, over different time periods.  [See Docket No.55, p.9; Def. Memo, p.2.]  Indeed, this Court found that Plaintiffs' declarations "articulate a number of FLSA violations common to all three of the New York locations; several such violations are shared among employees in various job classifications, both tipped and untipped."  [See Docket No.55, p.9-10.]

While it is true that this Court's initial evaluation of Plaintiffs' declarations occurred during the more lenient notice stage, this Court recognized that, at that juncture, Plaintiffs must still make a factual showing that they were the victims of an unlawful policy, plan or procedure.

[See Docket No.55, p.8 (citing *Laroque v. Domino's Pizza, LLC*, 557 F.Supp.2d 346, 353 (E.D.N.Y. 2008).] Plaintiffs' declarations demonstrate a factual showing and are properly admissible.

### A. Plaintiffs' Declarations Set Forth Each Plaintiffs' First-Hand Experiences of Defendants' Unlawful Wage Violations

Plaintiffs' declarations constitute substantial evidence in support of Plaintiffs claims, and describe with particularity each Plaintiff's encounter with Defendants unlawful actions. Plaintiffs' statements are not conclusory, nor do they lack factual foundation, as each Plaintiff testifies to his or her own experience of working for Defendants, and being deprived of lawfully owed wages.

All Plaintiffs state that they typically worked more than 40 hours each week, and worked lunch shifts from approximately 10:00 a.m. to 4:00 – 6:00 p.m., dinner shifts from approximately 4:00 p.m. to 1:00 a.m., or double shifts from approximately 10:00 a.m. to 10:00 p.m. or later during weekends. [See Docket No.35, Exhibit B, Affidavit of Yessika Alexandra Calero ("Calero Aff.") at ¶ 5; Exhibit C, Affidavit of Maria Fernanda Garcia ("Garcia Aff.") at ¶ 5; Exhibit D, Affidavit of Maria Carmenza Guevara ("Guevara Aff.") at ¶ 5; Exhibit F, Affidavit of Humberto Morales ("Morales Aff.") at ¶ 6; Exhibit G, Affidavit of Jean Paul Quijano ("Quijano Aff.") at ¶ 5; Exhibit H, Affidavit of Edwin Quiza ("Quiza Aff.") at ¶ 6; Exhibit I, Affidavit of Ana Milena Ruiz ("Ruiz Aff.") at ¶ 5; Exhibit J, Affidavit of Cesar Vargas ("Vargas Aff.") at ¶ 5; Exhibit K, Affidavit of Carmen Sanchez ("Sanchez Aff.") at ¶ 5; deposition of Ana Milena Ruiz ("Ruiz Dep."), Docket No.130-6, pp.18:5, 24:12; Deposition transcript of Cesar Vargas ("Vargas Dep.), Docket No.130-8, pp. 105:17-18.] Plaintiffs were paid approximately $3.85 to $4.65 per hour plus tips if they were tipped employees, and approximately $7.00 to $7.15 per hour if they were a non-tipped employee. [Garcia Decl. ¶ 4; Quiza Decl. ¶ 5; Ruiz Decl. ¶ 4;

Vargas Aff. ¶ 4; Sanchez Aff. ¶ 4; Morales Aff. ¶ 5; Quijano Aff. ¶ 4; Guevara Aff. ¶ 4; Calero Aff. ¶ 4.]

Plaintiffs testified that they did not receive the minimum wage for all the hours that they worked, nor did they receive overtime compensation, at time and one half their regular hourly wage, for all the hours over 40 that they worked in any given week. [Quiza Decl. ¶ 8; Garcia Decl. ¶ 7; Ruiz Decl. ¶ 7; Vargas Aff. ¶ 7; Sanchez Aff. ¶ 7; Morales Aff. ¶ 8; Quijano Aff. ¶¶ 7-8; Guevara Aff. ¶ 7; Calero Aff. ¶ 7.] Plaintiffs further testified that their payroll checks did not accurately reflect all the hours worked in any given week. [Quiza Decl. ¶ 7; Garcia Decl. ¶ 6; Ruiz Decl. ¶ 6; Vargas Aff. ¶ 6; Sanchez Aff. ¶ 6; Morales Aff. ¶ 7; Quijano Aff. ¶ 7; Calero Aff. ¶ 6.] In fact, numerous Plaintiffs testified that, almost on a daily basis, they personally witnessed managers access employees' time records in the computer system, and reduce the number of hours that employees worked in order to avoid paying wages and overtime compensation. [Garcia Decl. ¶14; Ruiz Decl. ¶ 15; Vargas Aff. ¶ 15; Morales Aff. ¶ 15; Calero Aff. ¶ 14.]

In addition, servers, bartenders, and bussers were often not permitted to clock-in until their first table arrived, despite the fact that they had to be ready to work up to one and one-half (1.5) hours earlier when their shift began. [Garcia Decl. ¶ 10; Ruiz Decl. ¶ 11; Vargas Aff. ¶ 9; Sanchez Aff. ¶ 10; Morales Aff. ¶ 10; Ruiz Dep. 28:23-29:20; Vargas Dep. 13:12-19, 14:24-25.]

Plaintiffs also testified that Cabana unlawfully retained the wages and gratuities of tipped employees. Plaintiffs stated that if a tipped employee made a "mistake" to a customer's order, a customer did not pick up a take-out order, or a customer did not pay all or part of a bill, Cabana required that the employee pay for any losses with his or her tips. [Quiza Decl. ¶¶ 9-10; Garcia Decl. ¶¶ 8-9; Ruiz Decl. ¶¶ 9-10; Vargas Aff. ¶ 8; Sanchez Aff. ¶ 8; Morales Aff. ¶ 9; Calero Aff. ¶ 8; Ruiz Dep. 149:10-14; Vargas Dep. 129:19-22, 134:23-24.] As a result of these

violations, Defendants were ineligible to take a tip credit and pay Plaintiffs and the putative class less than the minimum wage.

That Plaintiffs assert the same violations were committed against them and their co-workers does not make their statements suspicious or less credible, as Defendants wrongly contend. Indeed, the fact that Plaintiffs experienced the same wage violations and witnessed Defendants' managers enforce the same unlawful policies against their co-workers is precisely what makes Plaintiffs' similarly situated in their claims.

### B. Plaintiffs' Declarations Are Firmly Supported By Other Factual Evidence

Plaintiffs' claims and testimony are corroborated by a plethora of other factual evidence submitted by Plaintiffs. For example, two of Defendants' own former managers, Ariel Penizzotto and Hugo Suarez, submitted declarations affirming that full-time employees, both front of house and back of house, generally worked 15 to 20 hours more each week than what was reflected in their paychecks. [See Docket No.127-19, Declaration of Ariel Penizzotto ("Penizzotto Decl.") and Docket No.127-20, Declaration of Hugo Suarez ("Suarez Decl.").] Penizotto and Suarez worked at all three NYC Cabana locations, and stated that they, and other Cabana managers, were instructed to reduce employee hours in the computer system on a regular basis by cutting the "punch-in" and "punch-out" hours for employees. [*Id*.] Penizzotto and Suarez also confirmed that Cabana had a policy of requiring employees to only clock-in when the first customer arrived, and by requiring employees to use their own wages to pay for mistakes to a customer's bill and when a patron refused to pay for part or all of a meal. [*Id*.]

Even the testimony of Defendants' general manager, Benjamin Bautista, provides factual support for Plaintiffs' claims that Defendants routinely manipulated employees' time records to shorten the amount of hours they actually worked. Bautista testified that Cabana's managers

7

regularly make adjustments to employee time records. [See Docket No.127-7, deposition of Benjamin Bautista ("Bautista Dep."), pp.97:10-12; 200:5-17; 214:2-4.] Bautista testified that these changes were often handwritten by managers, and not based on any documentation detailing the accurate hours the employee worked. [Bautista Dep., pp.200:15-24; 214:15-22.]

In addition to the sworn testimony from employees and managers, Plaintiffs provided further factual support for their claims by submitting an analysis of Defendants' records. The analysis and corresponding records show that Plaintiffs' time records and payroll reports were routinely manipulated to reduce Plaintiffs' hours. [See Docket No.144, Exhibits Q – Z.][5] The analysis further establishes that Plaintiffs were not paid for all of the hours they actually worked.

Perhaps the most compelling evidence that Plaintiffs submitted in support of the claims made in their declarations may be found when comparing Plaintiffs' punch-in and punch-out data to Cabana's "cash-sales slips" and "guest checks." The cash-sales slips reflect the exact time that a server cashes-out[6] at the end of the night, and the guest checks reflect the time a customer's order was placed or when the customer paid their bill.

Plaintiffs' analysis compares the time a server printed the cash sales slips, and the time of the last guest check, to the time the server clocked-out that same day. [See Docket No.144, Exhibits AA – AC.] An employee could only open or close a guest check and print a cash sales slip if that employee were clocked-in to the time-keeping system. [Ruiz Dep. p. 53:7-25; Vargas Dep. p.15:5-25, 16:1-9.] As such, it would have been impossible for a server to punch-out and

---

[5] These records reflect an extraordinary high frequency of workers clocking-in and out at the _exact_ top of the hour or half-hour. For example, during July 2007, Plaintiff Lujan worked a total of 18 days. On every single day that Lujan worked, Cabana's records show that he clocked-in at exactly 12:00 p.m., except for one day where he clocked-in at exactly 1:00 p.m., times when the lunch hour would be in full swing. [Docket No.144, Exhibits W – X ] On those exact same days, Lujan also clocked-out at exactly 10:00, 11:00 or 11:30 p.m. [_Id_.] Similar patterns are found when examining the other Plaintiffs' records. [See Docket No.144 Exhibits Q – Z.]

[6] The term "cash out" refers to the process by which servers use the cash sales slip to determine how much cash, if any, is owed to the restaurant at the end of the shift. [Vargas Dep., p.15:24-25; 16:2-3, Docket No. 130, Exhibit 8.] All credit card receipts from patrons are also verified by comparing this information to the figures on the cash sales slip and given back to the restaurant, along with the cash sales slip.

8

go home for the night if he or she was opening or closing guest checks, and printing the cash sales slip hours later. Not surprisingly, the majority of the time records indicate that the workers punched-out for the night long before the workers printed their cash sales slips and cashed out, and long before the final guest checks indicated these employees had stopped serving customers.[7]

The sworn testimony of employees and managers and the significant documentary evidence represents a substantial factual showing that strongly supports Plaintiffs claims that Defendants engaged in a policy and practice of not paying minimum wages for all the hours that they worked, nor overtime compensation for all the hours they worked over 40 each week. *See Pefanis v. Westway Diner, Inc.*, 2010 U.S. Dist. LEXIS 93180, 15-16 (S.D.N.Y. Sept. 7, 2010) (class certification of tipped and non-tipped employees was granted as plaintiffs all could claim they were affected by at least one of defendants alleged unlawful policies, which included failing to pay employees for all hours worked, failing to pay overtime, and making illegal deductions.)

### C. Plaintiffs' Declarations Do Not Constitute Hearsay

Plaintiffs' declarations also do not constitute hearsay because they "contain no oral or written assertions originally made by anybody other than the declarant." *Reyes v. AT&T Mobility Serv., LLC*, 759 F.Supp.2d 1328, 1330, n.3 (S.D. Fla. Dec. 29, 2010). Plaintiffs' statements simply describe the *conduct* of non-declarants. *Id*. Defendants' suspicion that Plaintiffs could only have made these assertions about their co-workers "if they were told those things" is an unfounded attack on Plaintiffs' credibility, not a challenge to purported hearsay. *Id*.

---

[7] For example, during August 2007, Plaintiff Vargas' time records show that he completed his shift and clocked-out 55% of the time *before* he cashed out, and *before* he entered his last customer order. [Docket No.144, Exhibit AC.] Likewise, the same comparison for records produced for Carmen Sanchez in July 2005 shows that 75% of the time, she completed her shift clocked-out for the day *before* she entered her last customer order and *before* she cashed out. [Docket No.144, Exhibit AA.] The same is true for Vanessa Valesquez who punched out 65% of the time *before* cashing out and *before* entering her last customer order. [Docket No.144, Exhibit AB.]

9

In any event, even if this Court were to determine that Plaintiffs declarations contain hearsay, the statements should not be stricken because courts have consistently held that traditional hearsay is admissible in support of motions for certification. *See Summa v. Hofstra University*, 2010 WL 2232671, fn 6 (E.D.N.Y. June 1, 2010) ("Defendant's argument that [plaintiffs' affidavit] contains conclusory allegations and hearsay is unpersuasive" and "[c]ourts regularly grant motions" with similar evidence.) (*citing Cano v. Four M. Food Corp.*, No 08-CV-3005 (JFB)(AKT), 2009 WL 5710143, at *5 (E.D.N.Y. Feb. 3, 2009)); *See also Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 91, 96 (S.D.N.Y. 2003); *Iglesias-Mendoza v. La Belle Farm*, 239 F.R.D. 363, 368 (S.D.N.Y 2007); *Guzman v. VLM, Inc.*, No.07-CV-1126 (JG)(RER) 2007 WL 2994278, at *4 (E.D.N.Y. Oct. 11, 2007).]

Moreover, this Court has already found that Plaintiffs' declarations "supplied sufficient nonhearsay evidence of violations at the New York locations to obviate the need to rely on hearsay evidence." [Docket No.55, p.10, n.9.] This Court stated that Plaintiffs' declarations "contain sufficient, fairly uniform, nonhearsay evidence of several violations purportedly common among the New York restaurants." [*Id.* at 17.] This Court further found the declarations contained first-hand knowledge from each Plaintiff that corroborated the other worker's claims, and constituted sufficient, admissible evidence that these individuals are similarly situated. [*Id.* at 13.] This Court should not deviate from that finding simply because Defendants have decided to contest Plaintiffs' submission one year later.

Additionally, Defendants cannot claim they are prejudiced by any of Plaintiffs' statements because Defendants had ample opportunity to question each Plaintiff on his or her claims at Plaintiffs' respective depositions. Each of Plaintiff's depositions lasted several hours, and Defendants repeatedly asked Plaintiffs questions about the statements made in their

declarations.

### D.  Plaintiffs Did Not Submit Cookie-Cutter Declarations

This Court should also disregard Defendants contention that Plaintiffs have filed "cookie-cutter" declarations that should be dismissed.  As stated above, each Plaintiff's declaration contains specific facts based on the declarants' knowledge and experiences while working for Defendants (see Point I.A. *supra*).

That many of their declarations contain similar statements is of no surprise considering they allege the exact same claims that Defendants deprived them of their lawfully owed wages.  Nevertheless, each Plaintiff has provided specific details regarding their claims, such as naming managers that enforced Defendants' violative policies against them, describing times they were forced to use their tip money to pay for customer mistakes, and identifying co-workers who shared their experiences.  [See Docket No.35, Exhibits B-D, F-K.]  Plaintiffs' further bolstered their claims at their respective depositions.

While Defendants lamely attempt to discredit this evidence by selecting random snippets of Plaintiffs' deposition testimony that Defendants completely take out of context and totally misconstrue, this Court should not be fooled by such tactics.  A full-reading of Plaintiffs' declarations, deposition testimony and the other evidence submitted clearly outlines Plaintiffs' individual, first-hand experiences with Defendants unlawful practices, and amounts to a persuasive factual showing that substantially supports Plaintiffs' claims.

### II.    DEFENDANTS' ARGUMENTS ARE AN IMPROPER ATTEMPT TO RE-ARGUE THE MERITS AND ARE INOPPOSITE TO PREVAILING LAW

Defendants improperly utilize their application to strike Plaintiffs' declarations as opportunity to reiterate arguments that they made in their motion for decertification.  In fact, the majority of Defendants' application is a re-hashing of arguments Defendants asserted that go

towards the merits of Plaintiffs' claims. This illicit attempt to repeat arguments better suited for the decertification motion should not be condoned here.

Moreover, the case law relied upon by Defendants should also be disregarded as the majority of cases Defendants cite are from outside of this jurisdiction and are entirely inapposite to Defendants' application. See *Planned Parenthood v. Doyle*, 162 F.3d 463, 468 (7th Cir. Wis. 1998) (court denied a motion for preliminary injunction against partial-birth abortions because the affidavits offered in support contained "no evidence at all concerning the health implications of banning the procedure"); *Desert Sun Net LLC v. Kepler*, 2006 U.S. Dist. LEXIS 78586 at *23 (W.D. Wash. Oct. 27, 2006) (court denied motion for preliminary injunction because, *inter alia*, affidavits offered in support only contained vague assertions from unidentified customers that were having bad customer service experiences); *Smith v. Tradesmen Int'l, Inc.,* 289 F. Supp. 2d 1369 (S.D. Fla. 2003) (court declined to collectively certify nationwide class of employees until additional discovery was conducted); *Flores v. Osaka Health Spa, Inc.,* 2006 WL 695675, *2 (S.D.N.Y. March 16, 2006) (court denied collective certification because plaintiff stated that it was her "understanding" that her co-workers worked similar hours, and was unclear as to who exactly she was similarly situated to, citing different class members in various court papers); Id. at *2; *Levinson v. Primedia Inc*., 2003 WL 22533428, *1 (S.D.N.Y. Nov. 6, 2003) (court focused on plaintiffs' claim that defendants were employers under the FLSA, as opposed to independent contractors, who could not be held liable, and held that plaintiffs failed to show that other potential plaintiffs were in an employee-employer relationship with the defendants); *Morales v. Plantworks, Inc*., 2006 U.S. Dist. LEXIS 4627 (S.D.N.Y. Nov. 6, 2003) (court denied conditional certification because only affidavit submitted in support was of Plaintiffs' attorney).

These cases are nothing like the instant matter where Plaintiffs properly submitted

substantial evidence consisting of declarations from nine similarly situated class members. These declarations were corroborated by statements from nine additional similarly situated employees and two former managers. [See Docket No.144, Exhibits A-P.] All such statements contained fact-specific assertions made from the declarant's personal experiences and subjections to Defendants' illegal policies and practices. All declarations were properly submitted and none should be stricken.

Additionally, Defendants attempt to convince this Court to adopt the standard for submitting affidavits in support of motions for summary judgment motions when analyzing the declarations submitted here. [Def. Memo, p.5.] The summary judgment standard that Defendants cite to is the only standard created by the Federal Rules for submitting affidavits in support of motions, and requires that the affidavit "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify." *Richards v. Computer Sciences Corp.*, 2004 U.S. Dist. LEXIS 19637 (D. Conn. Sept. 28, 2004). While Plaintiffs contend that this standard is inappropriate when considering declarations submitted in opposition to a decertification motion under the FLSA, Plaintiffs submit that their declarations would meet this standard should this Court choose to apply it.

Finally, should this Court find certain of the statements contained in Plaintiffs' declarations are objectionable, Plaintiffs respectfully submit that the entire declaration need not be stricken. *United States v. Alessi*, 599 F.2d 513, 514-151 (2d Cir. 1979).

## **CONCLUSION**

In light of the foregoing, Plaintiffs respectfully request this Court deny Defendants' application to strike Plaintiffs' declarations submitted in opposition to Defendants' Motion for Decertification of the FLSA Collective Action, along with such other relief as this Court deems

proper.

Dated: New York, New York
       September 26, 2011

                                        _____/s/_____
                                        Lloyd Ambinder, Esq.
                                        LaDonna Lusher, Esq.
                                        VIRGINIA & AMBINDER, LLP
                                        111 Broadway, Suite 1403
                                        New York, New York 10006
                                        Tel:    (212) 943-9080
                                        Fax:   (212) 943-9082

                                        *Attorneys for Plaintiffs and Putative Class*