UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERARDO VALDEZ LUJAN, individually and on behalf of all other persons similarly situated who were employed by CABANA MANAGEMENT, INC. and/or GLENN FRECHTER; and/or any other entities affiliated with or controlled by CABANA MANAGEMENT, INC. and/or GLENN FRECHTER,<br><br>                                            Plaintiffs,<br><br>                - against -<br><br>CABANA MANAGEMENT, INC and/or GLENN FRECHTER, and/or any other entities affiliated with or controlled by CABANA MANAGEMENT, INC. and/or GLENN FRECHTER,<br><br>                                            Defendants. | 10-CV-0755 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE CERTAIN EVIDENCE SUBMITTED BY DEFENDANTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

LaDonna M. Lusher, Esq.
Kara Belofsky, Esq.
VIRGINIA & AMBINDER, LLP
111 Broadway, Suite 1403
New York, New York 10006
(212) 943 – 9080
(212) 943 – 9082
llusher@vandallp.com
www.vandallp.com

## PRELIMINARY STATEMENT

This action was brought to recover unpaid minimum wages and overtime compensation, and unlawfully withheld wages, tips and gratuities, owed to Gerardo Valdez Lujan ("Named Plaintiff") and the other members of the putative class (collectively "Plaintiffs") who are presently or were formerly employed by Cabana Management, Inc. and/or Glenn Frechter, and/or any other entities affiliated with or controlled by Cabana Management, Inc. and/or Glenn Frechter (collectively the "Defendants" or "Cabana").

The instant application seeks an Order striking certain declarations and evidence submitted by Defendants on August 5, 2011 as part of their opposition to Plaintiffs' Motion for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiffs' motion should be granted in its entirety.

## BACKGROUND

Defendants employed Plaintiffs to perform work as servers, hosts(esses), bartenders, busboys, runners, dishwashers, cooks, food preparers, and other restaurant related tasks at Defendants' three restaurant locations known as Cabana Forest Hills, Cabana East (or Midtown), and Cabana South Street Seaport.[1] Plaintiffs' allege that they were subjected to the same unlawful pay practices at all three of Cabana's restaurant locations.

More specifically, Plaintiffs allege that Defendants failed to pay minimum wages for all hours worked, failed to pay overtime compensation at time and one half the regular hourly wage for all hours worked beyond forty each week, and improperly retained the wages, tips and gratuities of employees, and were therefore ineligible to take a tip credit and pay employees less than the minimum wage.

---

[1] Hereafter, Cabana Forest Hills will be referred to as the "Forest Hills" location, Cabana East or Midtown will be referred to as the "Midtown" location, and Cabana South Street Seaport will be referred to as the "Seaport" location.

1

On February 19, 2010, Plaintiffs filed a complaint against Defendants alleging violations of the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§ 206, 207 and 216(b), New York Labor Law Article 19 §§ 633 and 650 *et sec*, New York Labor Law Article 6 § 190 *et sec*., and N.Y. CODES RULES AND REGULATIONS TITLE 12 §§ 137-1.2 and 137-1.3 (hereinafter "NYLL claims").[2] The Named Plaintiff, as well as 32 additional opt-in Plaintiffs and/or putative class members have, to date, joined this lawsuit.

Conditional certification of Plaintiffs' FLSA claims was granted on February 1, 2011 pursuant to 29 U.S.C. §216(b). [See Docket No. 55.] On July 5, 2011, Plaintiffs applied for class certification of their NYLL claims pursuant to Fed. R. Civ. Pro. 23. [See Docket No. 127.] Defendants filed opposition to Plaintiffs' class certification motion on August 5, 2011, and submitted 56 exhibits in support thereof. [See Docket Nos. 146-48.] Defendants' exhibits improperly contain evidence that was never produced to Plaintiffs during discovery. Defendants further submitted declarations from individuals and experts who were never previously identified. Because this evidence was improperly submitted, it should be stricken and not considered by the Court when evaluating Plaintiffs' Motion for Class Certification.

## ARGUMENT

### I. DEFENDANTS EXHIBITS SHOULD BE STRICKEN BECAUSE THEY CONTAIN EVIDENCE NEVER PRODUCED TO PLAINTIFFS DURING DISCOVERY

Defendants advance 56 exhibits that contain or rely on documents and evidence that were never produced to Plaintiffs in discovery, despite Plaintiffs demands for production. Defendants' reliance on this discoverable material is highly prejudicial to Plaintiffs and should not be condoned. As such, the Court should strike this evidence and any declarations based thereon.

---

[2] Plaintiffs' filed a First Amended Complaint on June 7, 2010.

### A. Defendants Refused to Produce Discovery for Anyone Except the Named Plaintiff, Opt-in Plaintiffs and Individuals Who Submitted Affidavits in Support of Plaintiffs' Motion for Collective Action Certification, Despite Plaintiffs Demands for Information Pertaining to the Rest of the Putative Class

Throughout the discovery period, Defendants insisted that they would only engage in discovery for Named Plaintiff Lujan, any Plaintiffs who opted-in to the FLSA portion of this action and any putative class members who provided an affidavit in support of Plaintiffs' Motion for Collective Action Certification pursuant to 29 U.S.C. § 216(b). [See Defendants Responses to Plaintiffs Discovery Demands attached to the Declaration of LaDonna M. Lusher ("Lusher Decl.") as Exhibit A.] This was despite Plaintiffs' request for information pertaining to all putative class members. [See Plaintiffs' Discovery Demands attached to the Lusher Decl. as Exhibit B.]

Defendants' production was also incomplete because even though Defendants engaged in discovery for Named Plaintiff Lujan, the opt-in Plaintiffs and putative class members who provided an affidavit in support of collective action certification, Defendants did not provide complete responses for all of the opt-in Plaintiffs and those putative class members specified. On multiple occasions, Plaintiffs informed Defendants that their discovery responses were incomplete for these opt-in Plaintiffs and select putative class members, and requested that all documents and information pertaining to these individuals be produced. [See emails and letters attached to Lusher Decl. as Exhibit C.] To date, Defendants have never provided complete responses to Plaintiffs.

Despite their incomplete production and their refusal to produce information pertaining to any other putative class members, when Defendants submitted their opposition to Plaintiffs' motion for class certification, they included multiple documents and declarations that were *never*

3

produced to Plaintiffs during discovery. These included documents pertaining to the opt-in Plaintiffs, as well as documents from putative class members who were never identified to Plaintiffs, and who Defendants adamantly refused to provide discovery for in response to Plaintiffs demands.

Specifically, Exhibits 1, 2 and 3 attached to the Declaration of Elisa Frechter purportedly "summarize" punch records for the opt-in Plaintiffs and compare the hours recorded with hours reported in payroll records, paystubs and check registers. While Ms. Frechter claims the documents she used to "transcribe" these summaries were produced in discovery, this is a complete falsehood because the majority of these records were never produced. The following illustrates the discrepancies with Ms. Frechter's "summaries" and the documents she purports to rely on that were never produced to Plaintiffs:

- Ana Ruiz - Defendants provide a "summary" of records from February 2004 to June 2008, yet during discovery, Defendants never provided Plaintiffs with Ruiz's payroll reports from 2004, 2005, 2006 or from October 2007 through the end of her employment in 2008.[3] Defendants also failed to produce Ruiz's punch records from 2004, 2005, and August 2006 through December 2006, and October 2007 through November 2007.

- Cesar Vargas – Defendants "summary" of Vargas' records encompasses his employment from April 2007 until December 2008, yet Defendants failed to provide Plaintiffs with any punch reports for Vargas for all of 2008.

- Humberto "Angel" Morales – Defendants "summary" of records is from August 2009 until May 2010, yet Defendants did not provide Plaintiffs with any of

---

[3] Defendants produced some "payroll worksheets" with hand-written wage notations for Ruiz for 2004, 2005 and 2006, but never produced payroll reports.

4

Morales' punch reports from November 2009 through March 2010, or payroll records from October 2009 through May 2010.

- Israel Pastor Reyes – Defendants provide a "summary" of records for February 2008 through March 2011. Yet Defendants never provided Plaintiffs with punch reports or payroll records for Reyes for 2007.

- Jose Luis Romero – Defendants "summary" of Romero's records encompasses October 2007 until April 2008. Defendants failed to provide any payroll records for Romero for October 2007 through November 2007.

- Juan Ricardo Roa – Defendants provide a "summary" of records from March 2008 through October 2008, yet Defendants failed to provide Plaintiffs with any payroll records for Roa.

- Marcus Chae – Defendants "summary" encompasses records for Chae from January 2008 through July 2008. Defendants never produced payroll records for Chae from January 2008 through March 2008.

- Nicolai Patchen – Defendants provide a "summary" of records for May 2009 through May 2011. Yet Defendants never produced a single punch report for Patchen, and failed to produce Patchen's payroll records from September 2009 through June 2010.

- Ana Carolina Davila – Plaintiff Davila was employed by Defendants from March 2007 until November 2009, however, Defendants never produced Davila's payroll records from March 2007 through March 2008, and only produced her punch reports for half of 2009 (June through November).

5

- Defendants provided "summaries" for Plaintiffs Manual Rojas, Jessica Verdejo and Ricardo Vallejo, however, Defendants failed to provide Plaintiffs with <u>any</u> payroll reports for these individuals.

- Defendants also provided summaries for Plaintiffs Ana Maria Montoya, Eddy Quintana and Asencion "Freddy" Moran, yet Defendants failed to produce <u>any</u> payroll records or punch reports for these Plaintiffs during discovery.

Despite Defendants complete failure to timely produce this information to Plaintiffs during discovery, Ms. Frechter purportedly relied on these records when she compiled her "summaries" contained in Exhibits 1 and 2, and submitted several of these documents in her Exhibit 3. [See E. Frechter Decl., Exhibits 1, 2 and 3.]

Moreover, the punch records and payroll reports Ms. Frechter claims to have relied upon were never given to Plaintiffs in their original/native format, as requested. [See Plaintiffs Discovery Demands attached to the Lusher Decl., Exhibit B.] Thus, Plaintiffs have no idea if the records Ms. Frechter utilized to compile her "summaries" are the same documents that were produced in discovery. [See E. Frechter Decl. referring to "original punched time reports" and hours "originally recorded" at ¶ 3.] In fact, it is clear that the documents Defendants submitted in their opposition have been manipulated as evidenced by the self-serving hand-written notations and information appearing in bright-red that was clearly added by Defendants for their own benefit without any justification of its authenticity. These documents and information were never provided to Plaintiffs in discovery.

Most disturbingly, in Exhibit 4 attached to Ms. Frechter's Declaration, Defendants submit guest checks from opt-in Plaintiffs Bovender, Patchen, Velez and Davila. When Plaintiffs specifically demanded production of these guest checks for all opt-in servers, Defendants

refused, arguing that they were irrelevant, and that producing them would be extremely burdensome. [See Docket Nos. 114; 123.] Magistrate Judge Mann held that the guest checks were relevant, but due to Defendants' representations that their production was extremely burdensome, she limited Plaintiffs' request to only 2 months of guest checks. [See Docket No. 115; 124.] Yet now, Defendants have the audacity to use guest checks they handpicked in support of their opposition which were never produced to Plaintiffs. Defendants' behavior smacks of sharp practice, which at best violates the rules of discovery, and at worst can be characterized as misrepresentations made to this Court in an effort to prevent Plaintiffs from obtaining these critical records. Moreover, Defendants included guest checks for Kayla Polanco, a putative class member who was never identified to Plaintiffs and for whom Defendants provided no discovery.

Likewise, Exhibit 6 contains hand-selected void reports from over fifty individuals that Defendants never produced to Plaintiffs. Almost every single void report pertains to an individual who Defendants have never identified throughout this entire action, and have never produced any other discovery related documents.

Exhibit 8 attached to the Declaration of Ms. Frechter purports to be samples of select punch records for ten different servers who worked for Cabana. The only punch records included in Exhibit 8 that were previously provided to Plaintiffs are the two pages pertaining to Plaintiff Bovender. Yet, these still aren't the same records Defendants originally provided as Defendants have clearly manipulated the records submitted here to highlight certain information Defendants deem favorable to them, and many of the records contain handwriting that Plaintiffs have never seen. Likewise, the employee sign-off sheets in Defendants' Exhibit 9, and schedules and check registers in Defendants' Exhibits 5 and 10 were never produced to Plaintiffs.

Ms. Frechter also claims to have relied upon a plethora of other documents that were never produced to Plaintiffs. In compiling her "summaries," Ms. Frechter says she also reviewed Cabana's check registers, guest checks, and audit findings of the United States Department of Labor's 2008 investigation of Cabana. [E. Frechter Decl., ¶ 1.] These documents were never produced to Plaintiffs during discovery, despite Ms. Frechter's false claims.

It is clear that Defendants' Exhibits 1 through 10 attached to the Declaration of Elisa Frechter are rife with documents never produced to Plaintiffs, and rely on information never provided to this Court or to Plaintiffs in discovery. These records and information are clearly responsive to Plaintiffs' discovery demands and should have been produced. [See Lusher Decl., Exhibit B.] Defendants should not be permitted to flout discovery deadlines and play gatekeeper by deciding which documents to produce in discovery and which documents to submit to the Court in their opposition to Plaintiffs' motion.

Federal Rule of Civil Procedure 37(c)(1) states:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

"The purpose of [Rule 37(c)] is to prevent the practice of 'sandbagging' an adversary with new evidence." *Gotlin v. Lederman*, 2009 U.S. Dist. LEXIS 78818, 11-12 (E.D.N.Y. Sept. 1, 2009) (*citing Ventra v. United States*, 121 F.Supp.2d 326, 332 (S.D.N.Y. 2000) (*quoting Johnson Elec. N.A. v. Mabuchi Motor Am. Corp.*, 77 F.Supp.2d 446, 458 (S.D.N.Y. 1999)). When deciding if the evidence should be precluded, courts consider "(1) the explanation for the failure to disclose, (2) the importance of the evidence to be precluded, (3) prejudice if the evidence were not precluded, and (4) the possibility of a continuance." *Id*. (*citing DeSantis v. Deutsche Bank Trust*

8

*Co. Ams., Inc.*, No. 05 Civ. 10868 (DC), 2009 U.S. Dist. LEXIS 3786, at *4 (S.D.N.Y. Jan. 9, 2009); *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).

Here, Defendants have failed to provide *any* explanation for their refusal to disclose this relevant information which was clearly at their disposal. Instead, Defendants falsely claim it was produced, yet they spent all of discovery refusing to produce much of the very information pertaining to putative class members that they submit here. [See Defendants Responses to Plaintiffs' Discovery Demands attached as Exhibit A to the Lusher Decl.]

Plaintiffs would be highly prejudiced if this Court were to consider any of these documents and the conclusions supposedly drawn from them. Plaintiffs have had no opportunity to review these records, and are unable to verify or refute the statements in Ms. Frechter's Declaration. Plaintiffs also never had the opportunity to depose Ms. Frechter and question her methodology and records she reviewed. Conversely, any prejudice to Defendants would be *de minimis* as Defendants still have an opportunity to submit this evidence during post-class certification discovery or prior to trial.

Defendants should not be permitted to disregard their discovery obligations. Therefore, Plaintiffs' respectfully request that this Court strike the evidence submitted in Exhibits 1 through 10 attached to Ms. Frechter's declaration. Plaintiffs further request this Court strike Ms. Frechter's declaration, which is based exclusively on this evidence. *See Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.,* 726 F. Supp. 2d 339, 349 (S.D.N.Y. 2010) (court refused to consider documents not provided to Plaintiffs' during discovery).

### B. This Court Should Strike the Declarations Submitted By the 32 Individuals Never Disclosed in Defendants' Initial Disclosures

This Court should also strike the 32 declarations submitted by former and current employees and managers of Cabana. [See Exhibits 6 – 29, Exhibits 32 – 34 and Exhibits 36 – 39 attached to the Declaration of Douglas Weiner, dated August 5, 2011 ("Weiner Decl.").] Defendants never identified any of these individuals to Plaintiffs or named them in their Initial Disclosures. [See Defendants Initial Disclosure Statement dated January 24, 2010, attached to the Lusher Decl. as Exhibit D.]

Federal Rule 26(a)(1)(A) requires that a party notify its adversary of the names and contact information of "each individual likely to have discoverable information that the disclosing party may use to support his claim." A party has an ongoing obligation to supplement incomplete or incorrect disclosures. Fed. R. Civ. Pro. 26(e)(2). Where a party fails to timely disclose the identity of such individuals, a party is precluded from using the witness's testimony "to supply evidence on a motion…." Fed. R. Civ. Pro. 37(c)(1); *see also Gotlein ex rel. City of Richmond v. Lederman*, 2010 WL 1779984, *4 (E.D.N.Y. May 3, 2010) (party was precluded from using testimony of witness who was not timely disclosed during discovery); *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002).

Defendants have no justification for failing to disclose these 32 employees and managers to Plaintiffs as their identities were always known to Defendants. By failing to disclose these individuals, Plaintiffs were denied the opportunity to subpoena and depose them, or demand that Defendants provide discovery for these individuals.[4] Thus, Defendants should not be allowed to submit declarations from these individuals in violation of Rule 26(a)(1)(A).

---

[4] It should be noted that none of these declarations were produced to Plaintiffs prior to Defendants submission of its opposition to Plaintiffs' class certification motion, however, Defendants have filed a motion to strike declarations

Additionally, five of these individuals were not even employed by Defendants during the time period encompassed in this action. [See Declarations of Michelle Zapata, Ania Gofman, Sully Chacon, Carola Encarnacion and Ricardo Alfaro attached to the Weiner Decl. as Exhibits 8, 9, 12, 16, 18 and 22 respectively.] These individuals do not even qualify as members of the putative class, thus, their declarations should be stricken on this reason alone.

## II. THIS COURT SHOULD STRIKE DECLARATIONS SUBMITTED BY PURPORTED EXPERTS THAT WERE NEVER IDENTIFIED

Defendants improperly submit four declarations from individuals who are clearly testifying as purported experts, but who were never identified as such by Defendants. [See Declarations of Elisa Frechter, Troy Gimson, Buzz Cmayo and Russell Mantell attached to the Weiner Decl. as Exhibits 2 – 5.] In fact, three of these individuals (Gimson, Cmayo and Mantell) were never identified at all in Defendants Rule 26 Disclosures, or in any response to discovery. All four declarations should be stricken from Defendants' submission.

Pursuant to Rule 26(a)(2), a party is required to disclose the identity of any witness it may use to present expert testimony. Expert testimony is based on specialized knowledge, as opposed to lay witness testimony, which is based on personal observations about the case. *Fox v. Perry H. Koplik & Sons, Inc.*, 382 B.R. 599, 602 (Bankr. S.D.N.Y. 2008). Rule 26(a)(2)(B) states that "expert witnesses must submit a written report that includes, among other things, a 'complete statement of all opinions the witnesses will express and the basis and the reasons for them and the facts or data considered by the witness in forming them.' *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011) (*citing Point Productions A.G. v. Sony Music Entertainment, Inc.*, No. 93 Civ. 4001, 2004 U.S. Dist. LEXIS

---

submitted by Plaintiffs alleging Plaintiffs had an obligation to produce such declarations during discovery. [See Docket No. 149.]

11

2676, at *8 (S.D.N.Y. Feb. 23, 2004)). Failure to do so results in a party being unable to supply the expert witnesses' evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. *Id*; Fed. R. Civ. Pro. 37(c)(1).

### A. This Court Should Strike the Declarations of Buzz Cmayo and Troy Gimson

Here, Defendants should be precluded from submitting the declarations of Buzz Cmayo and Troy Gimson because the testimony given by these individuals clearly rises to the level of expert testimony. These individuals are not testifying as lay witnesses about observations they personally witnessed at Cabana's restaurants. Rather, they are testifying about the operation and installation of sophisticated computerized time-keeping systems installed at Cabana locations, and offering opinions on the claims made in this case.

Indeed, Mr. Cmayo testifies that he is "trained and experienced in the field of computerized timekeeping systems, particularly the POSitouch and Attendance system." [See Exhibit 4, ¶ 1.] He states that he is "fully familiar with the design and capabilities of the POSitouch computerized time keeping system." [*Id.*] Importantly, Mr. Cmayo never explains his knowledge or affiliation with a company called CC Productions, however, he claims that CC Productions "installed, tested and verified the proper operation of the POSitouch Time and Attendance systems at the 3 Cabana restaurants located at Cabana Forest Hills, Cabana Midtown and Cabana Seaport." [Id. at ¶ 3.] Mr. Cmayo goes on to provide technical and specialized knowledge as to how the POSitouch system purportedly kept track of employees' hours at the Cabana locations. [Id. at ¶¶ 4-5.] Mr. Cmayo asserts that the POSitouch system "is installed in over 30,000 locations nationwide, and is used by many major chain-restaurant enterprises and employers in the hospitality industry." [Id. at ¶

6.] Mr. Cmayo further states he was "advised that some employees now claim that Cabana may have altered the POSitouch timekeeping records from their original punches." Nevertheless, Mr. Cmayo claims that in his "twenty-plus years of working with POSitouch," he has never heard any customers complain "that an employee punch adjustment was not properly documented on a POSitouch report."

Similarly, Mr. Gimson states that he is "trained and experienced in the field of computerized Squirrel Point of Sale and time keeping systems," and that he is "fully familiar with the design and capabilities of the Squirrel computerized time keeping system." [See Exhibit 3, ¶ 1.] Mr. Gimson claims he worked for a company that "installed, tested and verified the proper operation of the Squirrel timekeeping system at the Cabana restaurants located at Cabana Forest Hills, Cabana Midtown and Cabana Seaport." [*Id*. at ¶ 3.] Mr. Gimson goes on to provide technical and specialized knowledge as to how Cabana utilized the Squirrel system to document employees' hours at the Cabana locations. [*Id*. at ¶¶ 4-5.] Significantly, Mr. Gimson claims to have reviewed Cabana's time reports, and states that Cabana's managers "were not using the full potential of features available through the Squirrel system" because managers were making manual adjustments to employees' time records. [*Id*. at ¶ 5.] Yet, despite Mr. Gimson's recognition that employee time records were altered, he opines that his review of punch reports from 2004 – 2007 "bear no evidence of tampering or improper manipulation." [*Id*. at ¶ 7.] Mr. Gimson surmises that, "[f]rom the records [he's] observed, Cabana's Squirrel Point of Sale time keeping system was operating as it was designed, and recorded the hours employees punched." [*Id*. at ¶ 8.]

13

Clearly Messrs. Cmayo and Gimson are testifying as expert witnesses. These individuals have provided testimony that is based on scientific, technical or specialized knowledge that is far beyond the opinion testimony of a lay witness. Their testimony is not based on their own personal observations of events taking place at Cabana, but expounds from their experience with technical computerized systems, and from records they were given to review solely for litigation purposes.

As expert witnesses, these individuals should have been timely disclosed to Plaintiffs, along with a written report containing their opinions, their basis in forming those opinions, the information they reviewed, their qualifications and whether they were compensated for providing their testimony. Defendants failure to identify Messrs. Cmayo and Gimson as expert witnesses and submit an expert report on behalf of these individuals is highly prejudicial to Plaintiffs. Indeed, Defendants even failed to disclose their identity in Defendants' Initial Disclosure Statement. As such, Plaintiffs never had an opportunity to depose these expert witnesses and examine them on their qualifications, their specialized knowledge of Cabana's time-keeping systems, and the opinions they have offered regarding Plaintiffs' claims in this case. Accordingly, this Court should strike the declarations of Messrs. Cmayo and Gimson.

### B. This Court Should Strike the Declaration of Russell Mantell

Likewise, Defendants submission of the declaration of Russell Mantell should also be precluded due to Defendants failure to identify Mr. Mantell as an expert witness, or any kind of witness for that matter. Mr. Mantell proclaims to be a Certified Public Accountant who has "performed accounting services for Cabana for over 12 years." [See Exhibit 5, ¶

1.]  In his declaration, Mr. Mantell provides specialized testimony regarding tax methods purportedly utilized by Cabana to compute weekly wages owed to tipped employees.  Mr. Mantell relies on his experience and specialized knowledge to opine that Cabana's methods are entirely proper.  [*Id*. at ¶ 1.]

Mr. Mantell further provides unverified testimony regarding an audit performed by the United States Department of Labor which he allegedly participated in, however, his testimony is void of any statements based on his own personal knowledge of the investigation.  [*Id*. at ¶ 2.]  Instead, Mr. Mantell simply states information he was allegedly told by a DOL investigator who performed the audit.  He then gives his opinion regarding the audit's findings.  Although Mr. Mantell claims he received the "findings" from the DOL, and that the DOL found that most of Cabana's employees were paid properly, Mr. Mantell fails to submit any evidence of the DOL's audit and findings to justify the conclusions he made in his declaration.[5]

Clearly Mr. Mantell is testifying as an expert witness with a specialized background, and not simply stating personal observations that would be provided by a lay witness who does not have Mr. Mantell's education and experience.  In fact, Courts have found Certified Public Accountants like Mr. Mantell qualify as expert witnesses.  *In re Worldcom, Inc. SEC. litig.*, 2004 U.S. Dist. Lexis 25155 (S.D.N.Y. Dec. 15, 2004) (court found accountant qualifies as an expert); *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135 (S.D.N.Y. Oct. 15, 2003) (court found Certified Public Accountant with 17 years of experience to be an expert witness).

---

[5] Throughout this entire litigation, Defendants have never submitted any evidence of the DOL's audit and investigation except for purported evidence that they paid employees back wages for any discrepancies.

15

Accordingly Defendants should have timely disclosed Mr. Mantell as an expert, and offered an expert report based on his testimony and qualifications. At the very least, Defendants should have identified Mr. Mantell in their Rule 26 disclosures, which they also failed to do. Thus, this Court should strike Mr. Mantell's declaration.

### C. This Court Should Strike the Declaration of Elisa Frechter

The declaration of Elisa Frechter also rises, in parts, to the level of a purported expert. Ms. Frechter states that her "declaration is based solely on [her] review, comparison, and cross check of Cabana's documents…" [E. Frechter Decl. ¶ 1.] This review supposedly took Ms. Frechter "hundreds of hours" because the records she examined are "fact specific and highly individualized." [*Id.*] Despite the fact that Ms. Frechter provides no information about her background, qualifications and experience, and why she is even qualified to review and provide opinion testimony about these documents, Ms. Frechter's testimony goes significantly beyond any testimony of a lay person. Ms. Frechter not only purportedly reviewed and summarized documents that she did not submit in support of her "analysis" (and were not provided in discovery), but she makes *independent conclusions* supposedly based on *her review and opinion* of what the documents show.

For example, Ms. Frechter states that she "prepared" and "transcribed" spreadsheets purportedly showing when an individual forgot to punch in or out, and when time records were adjusted to reflect employee breaks. [E. Frechter Decl. ¶ 3.] Yet, Ms. Frechter has no personal knowledge as to why an employee's time record was adjusted by Cabana's managers on any given day. Indeed, upon review of similar documents in Plaintiffs' possession, it is absolutely impossible to ascertain *why* an employee's time was adjusted, just that an adjustment was made.

Despite Ms. Frechter's lack of personal knowledge, she submits a color-coded "highly fact intensive analysis" based on her interpretations and explanations of records she reviewed, i.e., yellow reflects when an employee forgot to punch in or out, orange reflects adjustments for employee meal breaks, etc. [E. Frechter Decl., Exhibits 1 and 2.] Ms. Frechter even concludes that Cabana paid "employees for all their hours "on the clock," whether they actually worked or not." E. Frechter Decl. ¶ 3.]

Putting aside Ms. Frechter's obvious self-serving motives to protect her financial stake in this case, it is clear that her testimony rises to the level of an expert because she is giving opinion testimony based on her review of documents, and not from personal observations. Indeed, Ms. Frechter makes conclusory statements regarding adjustments made to employee time records and wages paid, and even opines that Cabana's computerized "timekeeping systems correctly added daily and weekly hours." [E. Frechter Decl. ¶ 3.] Yet, Ms. Frechter provides no explanation for her conclusions, or her experience with these sophisticated systems.

In any event, the analysis that Ms. Frechter "compiled" is rife with mistakes. For example, her "Summary of Punched Hours Adjusted by Cabana" attached as Exhibit 2, purports to summarize the information she "transcribed" in her spreadsheets submitted in Exhibit 1. However, the information in Exhibit 2 for Alexandra Calero does not match the information in Ms. Frechter's Exhibit 1, as Exhibit 1 shows Calero worked 37 days at Cabana Seaport in 2005 and allegedly had 27 days where no adjustments appeared on her time records. Ms. Frechter's Exhibit 2 claims Calero worked 23 days at the Seaport in 2005, and had 9 days with no adjustments. [E. Frechter, Exhibits 1 and 2.]

Likewise, in Exhibit 1, Ms. Frechter's spreadsheet shows Israel Pastor Reyes worked 302 days in 2009 and allegedly had 286 days where no adjustments appeared on his time records.

Yet, Ms. Frechter's summary in Exhibit 2 says Pastor Reyes only worked 150 days in 2009 and had 144 days with no adjustments. [E. Frechter, Exhibits 1 and 2.] Other discrepancies appear in Ms. Frechter's analysis, thereby demonstrating its unreliability.

Ms. Frechter's failure to substantiate her findings with the documents she reviewed render her analysis dubious and highly suspect. Thus, her declaration and its attached exhibits should be entirely stricken from Defendants' opposition. Likewise, this Court should strike the declarations of Messrs. Cmayo, Gimson, Mantell. It is clear that Defendants utterly failed to proffer any justification for their failure to disclose all four of these individuals as expert witnesses, or to produce expert reports on their behalf. It is also clear that Plaintiffs would be substantially prejudiced by permitting this expert testimony, as Plaintiffs have not had any opportunity to assess whether the aforementioned individuals are qualified to testify as experts, review the documents relied upon, or depose these individuals. As such, their declarations should be stricken entirely and not considered by this Court.

## **CONCLUSION**

For the reasons set forth above, and in Plaintiffs' previous submissions to this Court, Plaintiffs respectfully request that this Court issue an Order striking the evidence submitted by Defendants in their opposition to Plaintiffs' application for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, together with such other and further relief as the Court may deem just and proper.

Dated: October 5, 2011
      New York, New York

                                                      _____/s/_____
                                                      LaDonna M. Lusher, Esq.
                                                      Kara Belofsky, Esq.
                                                      VIRGINIA & AMBINDER, LLP

              111 Broadway, Suite 1403
              New York, New York 10006
              Telephone: (212) 943-9080
              Fax: (212) 943-9082

              *Attorneys for Plaintiff and Putative Class*