UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
GERARDO VALDEZ  LUJAN, et al.,

                          **Plaintiffs,**                      **MEMORANDUM
AND ORDER**

         -against-                       **10-CV-755 (ILG)**

CABANA MANAGEMENT, INC., et al.,

                           **Defendants.**
-----------------------------------------------------------------x

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

Plaintiff Gerardo Valdez Lujan ("Lujan") and several "opt-in" plaintiffs (collectively, "plaintiffs") bring this lawsuit against defendants Cabana Management, Inc. ("Cabana") and Glenn Frechter (collectively, "defendants") to recover minimum wage and overtime payments allegedly due to Lujan and other current and former employees of defendants, who operate three New York City-area restaurants.

Previously, this Court conditionally certified Lujan's Fair Labor Standards Act ("FLSA") claims as a collective action.  See Memorandum and Order (Feb. 1, 2011) ("2/1/11 M&O"), Electronic Case Filing Document Entry ("DE") #55.  At the conclusion of discovery, defendants filed a motion to decertify the FLSA collective action.  The same day, plaintiffs moved pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), to certify as a class action their state law claims arising out of New York's Labor Law ("NYLL").

In support of and in opposition to these motions, both parties submitted copious evidence, including, *inter alia*, time records, deposition testimony, and numerous declarations from current and former Cabana employees and managers.  Currently pending before this

Court are three motions to strike various portions of this evidence.  See Order (Dec. 8, 2011), DE #184; Order (May 16, 2012), DE #193.

First, defendants move to strike thirteen declarations filed by plaintiffs in support of their Rule 23 motion, on the grounds that (1) plaintiffs failed to provide the declarations prior to the close of discovery; and (2) the declarations are cookie-cutter, contain inadmissible hearsay and are not based on personal knowledge.  Second, defendants seek to strike nine other declarations, submitted by plaintiffs in opposition to defendants' motion to decertify the FLSA collective action, citing numerous evidentiary deficiencies, including hearsay and lack of foundation.  Finally, plaintiffs cross-move to strike certain evidence relied on by defendants in opposing plaintiffs' Rule 23 motion to certify.  In particular, pursuant to Rule 37 of the FRCP, plaintiffs move to strike exhibits that rely on documents and evidence that defendants allegedly failed to disclose during discovery.  In addition, plaintiffs move to preclude thirty-five declarations from individuals not previously identified under Rule 26 of the FRCP, some of whom plaintiffs allege are improperly testifying as experts.

For the reasons detailed below, the Court grants in part and denies in part defendants' two motions to strike, and grants in substantial part plaintiffs' cross-motion to strike.

## BACKGROUND

Defendants own and operate three restaurants in the New York City area: Cabana "70" in Forest Hills, Queens; Cabana Midtown in midtown Manhattan; and Cabana Seaport in lower Manhattan.  See Declaration of Glenn Frechter at 2, DE #147-1.  From 2002 to approximately March 2009, plaintiff Lujan worked for Cabana as a busboy, runner and dishwasher at the

Midtown and Queens locations.  See Declaration of Gerardo Valdez Lujan ("Lujan Decl.") ¶¶ 2-3, DE #127-8.

In February 2010, Lujan commenced this action on behalf of himself and other similarly situated persons who were currently or formerly employed by Cabana in various restaurant-related capacities.  See Complaint, DE #1.  Four months later, Lujan filed an amended complaint, in which he alleged that defendants engaged in a policy and practice of failing to pay its employees minimum wage and overtime and improperly withheld tips in violation of the FLSA, NYLL, and the New York Codes, Rules and Regulations ("NYCRR").  See First Amended Complaint ¶¶ 2-3, DE #9.

## I.     Conditional Certification Under the FLSA

As discovery progressed, other plaintiffs joined the action.  See, e.g., Consents to Join Collective Action (Aug. 19, 2010), DE #22.  On October 8, 2010, plaintiffs sought to conditionally certify a collective action under the FLSA (the "2010 Motion to Certify") and requested permission to notify class members.  See Memorandum of Law in Support of the Motion for Conditional Certification and Notice, DE #35-2.  In support of their application, plaintiffs submitted declarations by Lujan and other opt-in plaintiffs.  See generally Declarations, DE #35-3 at 1-38.  Defendants opposed plaintiffs' motion on several grounds, citing, inter alia, the allegedly deficient nature of plaintiffs' declarations, which defendants contended were not based on personal knowledge, constituted inadmissible hearsay and were speculative.  See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion at 9-14, DE #41.

In a Memorandum and Order dated February 1, 2011, this Court granted plaintiffs'

motion, conditionally certifying the collective action under the FLSA and authorizing plaintiffs to provide notice to the class.  See 2/1/11 M&O.  In doing so, the Court overruled defendants' hearsay objections, noting that courts "frequently consider hearsay in deciding whether to issue class notice," and found, in any event, that plaintiffs had provided sufficient non-hearsay evidence in support of their motion.  See id. at 10 n.9 (citation omitted).

Thereafter, class notice was sent out to similarly situated "servers, hosts(esses), bartenders, bar-backs, busboys, runners, dishwashers, and [those conducting] other restaurant[-]related tasks," who worked at the three New York locations from 2007 to 2010. See generally id. at 20-21.  Following the class notice, additional plaintiffs opted in, and discovery continued.  On June 26, 2011, near the close of discovery, plaintiffs amended their Rule 26 disclosure (hereinafter, "6/26/11 Pl. Am. Rule 26 Disclosure"), which had originally been served on January 24, 2011.  See 6/26/11 Pl. Am. Rule 26 Disclosure, DE #191-5.  Two days later, plaintiffs amended their disclosures a second time.  See Plaintiff's Second Amended Rule 26 Disclosures, DE #191-6.  Discovery concluded on July 1, 2011.  See Amended Scheduling Order (Mar. 18, 2011) ("3/18/11 Am. Sched. Order") at 1, DE #64.

## II.    Motions to Certify and Decertify

On July 5, 2011, plaintiffs moved to certify a Rule 23 class based on their NYLL and NYCRR claims (hereinafter, the "Rule 23 Motion to Certify").  See Memorandum of Law in Support of the Motion for Class Certification, DE #127-2.  In support of the Rule 23 Motion to Certify, plaintiffs submitted, inter alia, thirteen recent declarations of current and former

Cabana employees and managers (collectively, the "7/5/11 Declarations").[1]  See Declarations, DE #127-8 through 127-20.

In opposing the Rule 23 Motion to Certify, defendants submitted multiple exhibits, including a declaration by Elisa Frechter (the "Frechter Declaration").  See Declaration of Elisa Frechter (Aug. 4, 2011), DE #146.  The Frechter Declaration, in large part, purported to summarize the contents of Cabana's records, including time clock records, paystubs, guest checks, void reports and check registers relating to Lujan and the opt-in plaintiffs ("Frechter Exhibits").  See Exhibits to Frechter Declaration, DE #146-1 to #146-29.  Defendants also submitted thirty-four recent declarations by former and current Cabana employees and managers (the "Cabana Declarations").  See Declaration of Douglas Weiner, Esq. In Opposition to Motion to Certify, DE #147 at 2-6 (listing declarants).   In addition, defendants filed a declaration by Buzz Cmayo concerning Cabana's current timekeeping system; by Troy Gimson concerning Cabana's prior computerized timekeeping system; and by accountant Russel Mantell concerning Cabana's tax practices and an investigation by the Department of Labor ("DOL").  See generally Declaration of Buzz Cmayo, DE #147-7; Declaration of Troy Gimson, DE #147-6; Declaration of Russel Mantell, DE #147-8.

On the same day plaintiffs filed their Rule 23 Motion to Certify, defendants filed a

---

[1]   In addition to the previously mentioned Lujan Declaration, these include the Declarations of Vanessa Belandria ("Belandria Decl."); Alba Elena Bovender ("Bovender Decl."); Israel Pastore Reyes ("Reyes Decl."); Nicholai Patchen ("Patchen Decl."); Tomas Velez ("Velez Decl."); Ana Carolina Davila; Maria Fernanda Garcia ("Garcia Decl."); Jose Luis Romero; Edwin Quiza ("Quiza Decl."); Ascencion Moran; Ariel Penizzotto ("Penizzotto Decl."); and Hugo Suarez.  These declarations are attached as Exhibits E through Q, respectively, to the Declaration of Lloyd Ambinder, Esq. In Support of Plaintiff's Motion for Class Certification. See DE #127-3, #127-8 through #127-20.

motion to decertify the FLSA collective action (the "Motion to Decertify").  See Memorandum

of Law in Support of Motion to Decertify (July 5, 2011), DE #129.  In opposition to

defendants' Motion to Decertify, plaintiffs submitted twenty declarations previously filed in

connection with earlier motions, including nine declarations that plaintiffs had filed in support

of their October 8, 2010 motion to conditionally certify the collective action (the "2010

Declarations").  See, e.g., Declaration of Edwin Quiza (dated Aug. 5, 2010) ("2010 Quiza

Decl."), DE #144-11.

### III.    Motions to Strike

#### A.    Defendants' First Motion to Strike

Following the submission of plaintiffs' Rule 23 Motion to Certify and defendants'

Motion to Decertify, defendants moved to strike evidence submitted by plaintiffs in connection

with those motions.  First, defendants moved to strike the 7/5/11 Declarations proffered in

support of plaintiffs' Rule 23 Motion to Certify.  See Memorandum in Support of Motion to

Strike (Aug. 5, 2011) ("8/5/11 Def. Mem."), DE #151.  Defendants objected to the 7/5/11

Declarations on the ground that plaintiffs had failed to produce some of the declarations in

response to defendants' document and interrogatory requests, and/or defendants' verbal

requests during depositions.  See id. at 3-7. Defendants further objected to the Davila

Declaration due to Davila's failure to appear at her scheduled deposition.  See id. at 6.  In

addition, defendants argued that the 7/5/11 Declarations were conclusory, cookie-cutter,

contained hearsay, were not based on personal knowledge and lacked foundation.  See id. at

9-17.

**B.    Defendants' Second Motion to Strike**

In a separate motion filed several weeks later, defendants moved to strike the 2010

Declarations submitted by plaintiffs in opposition to defendants' Motion to Decertify.  See

Memorandum of Law in Support of Motion to Strike Declarations (Aug. 16, 2011) ("8/16/11

Def. Mem."), DE #159.  Defendants similarly argued that the 2010 Declarations were

inadmissible, cookie-cutter, contained hearsay, were not based on personal knowledge and

lacked foundation.  See id.[2]  In further support of their second motion to strike, defendants

pointed to inconsistencies between the 2010 Declarations and later deposition testimony by

some of those declarants.  See id. at 12-13.

**C.    Plaintiffs' Motion to Strike**

Not to be outdone, plaintiffs moved to strike evidence proffered by defendants in

opposition to plaintiffs' Rule 23 Motion to Certify.  See Memorandum of Law in Support of

Motion to Strike Certain Evidence (Oct. 5, 2011) ("10/5/11 Pl. Mem."), DE #177.  In

particular, plaintiffs argued that the Frechter Declaration and the accompanying Frechter

Exhibits were based on relevant, responsive documents that should have been produced during

discovery.  See id. at 3-9.  In addition to arguing that the Frechter Declaration relied on guest

---

[2]    In their 8/16/11 Motion, defendants specifically challenged the 2010 Declarations of Maria
Fernanda Garcia; Edwin Quiza; Ana Milena Ruiz ("Ruiz Decl."); Yessika Alexandra Calero;
Maria Carmenza Guevara; Humberto Morales; Jean Paul Quijano; Cesar Vargas; and Carmen
Sanchez.  See 8/16/11 Def. Mem. at 1, DE #159.  The Garcia, 2010 Quiza, and Ruiz
Declarations are attached to the August 5, 2011 Declaration of Lloyd Ambinder at DE #144-
10, #144-11, and #144-12, respectively.  The remaining declarations are incorporated only by
reference in plaintiffs' opposition papers.  See Memorandum of Law in Opposition to Motion
to Decertify at 2, DE #145.  Those referenced 2010 Declarations were originally filed in
October 2010.  See generally 2010 Motion to Certify, DE #35.

checks that had not been produced, plaintiffs complained that those guest checks were the same ones defendants had previously argued were irrelevant and burdensome to produce.  See id. at 6-7.  Plaintiffs also sought to preclude thirty-one of the Cabana Declarations, as those former and current Cabana employees and managers were never disclosed under Rule 26(a) of the FRCP, thus depriving plaintiffs of the opportunity to depose the declarants or otherwise demand discovery concerning them.  See id. at 10.  Plaintiffs also opposed five of the Cabana Declarations on the basis that the declarants were not employed by defendants during the time encompassed by this action.[3]  See id. at 11.

Finally, plaintiffs sought to strike the Frechter Declaration, the Gimson Declaration, the Cmayo Declaration and the Mantell Declaration.  See 10/5/11 Pl. Mem. at 11-18, DE #177.  Plaintiffs contended that these declarants were testifying as experts, despite the fact that defendants had never identified them as such.  See id.  Moreover, plaintiffs argued that defendants had not previously disclosed the identities of Gimson, Cmayo or Mantell prior to submitting their declarations, in violation of Rule 26.  See id. at 11, 14.

### D.    Order to Show Cause

Given that both parties sought to strike declarations for failure to properly disclose, the Court issued an order directing the parties to show cause why their failures to do so were "substantially justified or harmless."  Order To Show Cause (Mar. 20, 2012) ("3/20/12 OTSC"), DE #189; see Fed. R. Civ. P. 37(c)(1).  Thereafter, plaintiffs and defendants filed responses.  See Plaintiffs' Memorandum of Law in Response to Order to Show Cause (Mar.

---

[3]  These are the declarations of Michelle Zapata, Ania Gofman, Sully Chacon, Carola Encarnacion, and Ricardo Alfaro.  See 10/5/11 Pl. Mem. at 11, DE #177.

23, 2012) ("3/23/12 Pl. OTSC Resp."), DE #191; Defendants' Response to Order to Show

Cause (Mar. 23, 2012) ("3/23/12 Def. OTSC Resp."), DE #190.

Because the outcome of each of these three motions to strike necessarily affects the

evidence that the Court will consider in addressing plaintiffs' Rule 23 Motion to Certify and

defendants' Motion to Decertify, it is appropriate for the Court to first resolve the motions to

strike.[4]

### DEFENDANTS' MOTION TO STRIKE THE 7/5/11 DECLARATIONS IN SUPPORT OF PLAINTIFFS' RULE 23 MOTION TO CERTIFY

**I.     Plaintiffs' Failure to Disclose the 7/5/11 Declarations During Discovery**

A large number of the 7/5/11 Declarations are dated, and were presumably executed,

during the last two weeks of June 2011.  See 8/5/11 Def. Mem. at 5, DE #151.[5]  Plaintiffs,

however, did not produce them prior to the fact discovery deadline of July 1, 2011, but rather

submitted them in support of their Rule 23 Motion to Certify on July 5, 2011.  See id.

Defendants argue that the 7/5/11 Declarations were responsive to their First Request for

Production of Documents and First Revised Set of Interrogatories, and thus, plaintiffs

---

[4]  This Court narrowly construes the motions to strike as addressing the scope of the evidence that may be considered in connection with plaintiffs' Rule 23 Motion to Certify and defendants' Motion to Decertify.  Although the Court's analysis may well have implications with respect to the preclusion of proof at trial, its rulings are limited to striking evidence in connection with the motions pending before it.

[5]  These include the declarations of Belandria, Bovender, Reyes, Patchen, Velez, Davila, Garcia, Quiza, Penizzotto and Suarez.  See 8/5/11 Def. Mem. at 6, DE #151.  Several declarants filed more than one declaration in this action.  See, e.g., 2010 Quiza Decl., DE #144-11; Quiza Decl., DE #127-17.

"impermissibly ambushed" defendants.  See id. at 4-5.[6]  In response, plaintiffs contend that the

7/5/11 Declarations were protected as work product and that defendants failed to show either a

substantial need for the declarations or an inability to obtain the same information through

alternative means.  See Plaintiffs' Opposition to Motion to Strike Declarations (Aug. 15, 2011)

("8/15/11 Pl. Opp.") at 2-7, DE #155.

In their reply, defendants counter that the 7/5/11 Declarations do not qualify as work

product and that plaintiffs' failure to provide a privilege log undercuts their assertion of the

privilege.  See Defendants' Reply Memorandum of Law in Further Support of Motion to Strike

(Aug. 17, 2011) ("8/17/11 Def. Reply") at 1-4, DE #160.  Defendants also argue, for the first

time on reply, that plaintiffs failed to properly identify the 7/5/11 Declarations and former

Cabana manager Ariel Penizzotto in their amended Rule 26 initial disclosures.  See id. at 3-4.

## A.    Work Product

The work product doctrine applies to materials that are "prepared in anticipation of

litigation or for trial by or for another party or its representative."  Fed. R. Civ. P.

26(b)(3)(A).  Work product "provides a zone of privacy for a lawyer; the doctrine grants

counsel an opportunity to think or prepare a client's case without fear of intrusion by an

adversary."  In re Six Grand Jury Witnesses, 979 F.2d 939, 944 (2d Cir. 1992) (citing United

States v. Nobles, 422 U.S. 225, 238 (1975)).

---

[6]  Defendants' memorandum of law does not identify any particular discovery-related rule in
support of their request for the sanction of preclusion; instead, defendants simply cite the
decision in Woodworth v. Erie Ins. Co., 743 F.Supp.2d 201, 215 (W.D.N.Y. 2010), which,
in contrast to defendants' preclusion motion, involved the failure to disclose expert disclosure
under Rule 26(a)(2) of the FRCP.  See 8/5/11 Def. Mem. at 6-7, DE #151.

Defendants claim that the 7/5/11 Declarations are not privileged because they merely "recite factual matters." See 8/17/11 Def. Reply at 1, DE #160. The Second Circuit has recognized two types of work product: factual work product and opinion work product. See In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007). Factual work product "may encompass factual material[,]" while opinion work product is comprised of an attorney's mental impressions, conclusions, opinions or legal theories. See id. Thus, defendants' argument is without merit.

Moreover, where an affidavit or declaration has been drafted with the assistance of counsel and executed by the affiant for possible use in conjunction with a motion, courts have held that such affidavits qualify for work product protection up until the time the affidavit or declaration is publicly filed in connection with the motion. See Inst. for the Dev. of Earth Awareness v. People for the Ethical Treatment of Animals, 272 F.R.D. 124, 125 (S.D.N.Y. 2011) (executed affidavits drafted for possible use on a summary judgment motion "remained work product until the lawyer elected to serve and file them"); Stokes v. City of New York, No. CV 2005-7(JFB)(MDG), 2006 WL 2064976, at *2 (E.D.N.Y. July 24, 2006) (nonparty affidavit is protected by work product doctrine until it is "filed in this action or otherwise publicly disclosed").

As explained in a decision from a court within this Circuit, one reason for granting work product status to an executed affidavit prior to its public filing is that the attorney who caused the preparation of the affidavit may have a strategic reason for changing course and deciding not to file the document. See Earth Awareness, 272 F.R.D. at 125 ("Until the moment of service and filing, the lawyer reserves the right to reverse course and refrain from

using the affidavits."). This Court agrees that the 7/5/11 Declarations constituted work product up until the date they were filed with plaintiffs' Rule 23 Motion to Certify.

Given the timeline in this case, the Court finds little force in defendants' contention that the 7/5/11 Declarations are not entitled to work product protection because they were not included on a privilege log. See 8/17/11 Def. Reply at 2-3. The record reflects that the 7/5/11 Declarations were executed between June 17, 2011 and July 5, 2011.[7] In other words, they were all finalized during the few weeks prior to their public filing. Defendants do not articulate how they were prejudiced by the absence of a privilege log for the few weeks between the execution and filing of the 7/5/11 Declarations, particularly given their conceded awareness, during that period, that plaintiffs' counsel had recently begun to collect declarations from individuals. See 8/5/11 Def. Mem. at 6, DE #151.

Although the 7/5/11 Declarations constituted factual work product, the protection is not absolute. Work product may nevertheless be discoverable if the party seeking disclosure (1) shows that it has a substantial need for the materials to prepare its case and (2) cannot obtain their substantial equivalent without undue hardship. See Garnier v. Ill. Tool Works, Inc., No. 04-CV-1825 (NGG) (KAM), 2006 WL 1211201, at *2 (E.D.N.Y. May 4, 2006); Fed. R. Civ. P. 26(b)(3)(A)(ii). This "does not mean that a party seeking the document must show an

---

[7] Although the Penizzotto Declaration is undated, the envelope in which it was sent to the attention of plaintiffs' counsel was postmarked June 17, 2011. See Penizzotto Decl., DE #144-15 at 8. In a sworn statement in response to the Court's 3/20/12 OTSC, plaintiffs provided a timeline concerning their interactions with Penizzotto, including time of first contact and when they spoke to him concerning the case. See Declaration of Lloyd Ambinder in Response to Order To Show Cause (Mar. 23, 2012) ¶¶ 3-6, DE #191-1; see also 3/23/12 Pl. OTSC Resp. at 3-4, DE #191.

absolute impossibility" in obtaining the substantial equivalent of the information, "but rather that it is significantly more difficult, time-consuming or expensive to obtain the information from another source." Garnier, 2006 WL 1211201, at *2.

Here, any work product protection was waived upon the public filing of the 7/5/11 Declarations, at which point defendants came into possession of them in their entirety and thus were made fully aware of their contents. In these circumstances, it is entirely pointless to discuss and analyze, as plaintiffs do, whether defendants have shown a substantial need for the declarations or undue hardship in obtaining equivalent information. See 8/15/11 Pl. Opp., DE #155. Rather, defendants' objection challenges plaintiffs' strategic choice to withhold the documents until their filing. See 8/5/11 Def. Mem. at 1, DE #151 (withholding of 7/5/11 Declarations constituted "ambush").[8] In any event, for the reasons described above, plaintiffs'

---

[8] The contention that plaintiffs "ambushed" defendants with the 7/5/11 Declarations rings hollow, especially as to those declarations executed by Lujan and the seven opt-in plaintiffs and the three putative class plaintiffs (Belandria, Garcia, and Quiza). First, in their motion papers filed on August 5, 2011, defendants do not claim that plaintiffs failed to disclose the *declarants* under Rule 26. Second, plaintiffs actively participated in discovery by responding to interrogatory and document requests, appearing for depositions and/or submitting declarations in support of the conditional certification. The substance of these discovery responses largely overlaps with the matters set forth in the 7/5/11 Declarations, such as the declarants' dates of employment and the alleged unlawful practices they personally experienced. See Exhibits A through G, attached to the Declaration of Lloyd Ambinder (Aug. 15, 2011) ("8/15/11 Ambinder Decl."), DE #156. Moreover, the three putative class plaintiffs all have previous involvement with this lawsuit and even submitted statements in support of plaintiff Lujan's motion to conditionally certify FLSA claims. See Exhibits A, C and H to 2010 Motion to Certify, DE #35-3, at 2-3, 8-9, and 25-26.

To be sure, although the declarations and interrogatory answers cover the same topics, the documents are not entirely consistent. For example, the Bovender Declaration states that, if Bovender made a mistake with a customer's food or bill, she "was *often* required to pay for any losses with [her] tips." See Bovender Decl. ¶ 10, DE # 127-10 (emphasis added). Her

(continued…)

failure to provide the privileged 7/5/11 Declarations in advance of their filing does not violate Rule 26.  See Fed. R. Civ. P. Rule 26(b)(1) (scope of Rule 26 is limited to "any *non-privileged* matter") (emphasis added); see also Worsham v. Acc't Receivables Mgmt., Inc., Civil No. JKB-10-3051, 2011 WL 5873107, at *1 (D. Md. Nov. 22, 2011) (refusing to strike two affidavits that were created just prior to filing, as they were not required to be disclosed under Rule 26).  In addition, under these facts, the Court concludes that plaintiffs' failure to provide a privilege log in the two weeks between the execution of the 7/5/11 Declarations and their filing did not prejudice defendants and thus was harmless error.

**B.      Rule 26(e) of the FRCP[9]**

For the first time in their reply submission, defendants argue that (1) the 7/5/11 Declarations (as opposed to the declarants themselves) should have been disclosed in plaintiffs' June 28, 2011 amended initial disclosures pursuant to Rule 26(e) of the FRCP; and (2) plaintiffs' amended Rule 26 disclosures, which listed "Cabana manager Ariel" as an individual "likely to have discoverable information that the [p]laintiffs may use to support their claims," 6/26/11 Pl. Am. Rule 26 Disclosure at 3, DE #191-5, failed to properly identify former Cabana manager Ariel Penizzotto as an individual plaintiffs might rely upon to support

---

[8](...continued)
response to Interrogatory No. 8, however, states that "she remembers having to pay for a mistake on at least *one* occasion[.]" Bovender Interrogatory, DE #156-5 at 17 (emphasis added).  Any arguable inconsistency between the 7/5/11 Declarations and other evidence in the record goes to the credibility of the declarant and does not alone warrant striking the declaration.  See Damassia v. Duane Reade Inc., 250 F.R.D. 152, 159-60 (S.D.N.Y. 2008) (Lynch, J.) (weighing credibility of declarations, on Rule 23 motion, in light of contradicting deposition testimony).

[9]  See *infra* pp. 26-27, for the standards relating to Rule 26(a)(1) and (e).

their claims.  See 8/17/11 Def. Reply at 3-4, DE #160; Fed. R. Civ. P. 26(a)(1)(A)(i).[10]

Arguments made for the first time on reply are deemed waived.  See Fisher v. Kansas, 487 F.Supp.2d 270, 278 (E.D.N.Y. 2007) (collecting Second Circuit cases).  Further, even after plaintiffs listed Penizzotto in their 6/26/11 Amended Rule 26 Disclosure (albeit as "Cabana manager Ariel")[11] -- thus providing defendants with notice prior to the close of discovery -- defendants failed to make a timely application to extend discovery.[12]  Indeed, as a result of deposition testimony, defendants were aware that at least some of the plaintiffs had signed affidavits that their counsel was refusing to produce, yet defendants made no written application to compel the production of these affidavits.  See 8/5/11 Def. Mem. at 6, DE #151; Transcript (June 21, 2011) ("6/21/11 Tr.") at 36-38, DE #138.  Under these circumstances, the Court declines to consider any belatedly raised Rule 26(e) or Rule 26(a)(1)(A)(i) argument

---

[10]  Defendants do not lodge Rule 26(a) challenges based on plaintiffs' failure to have disclosed the identities of the other 7/5/11 declarants, including former Cabana manager Hugo Suarez. Suarez, like Penizzotto, was identified days before discovery closed.

[11]  Although defendants now complain that plaintiffs "deceptively listed a person 'Ariel' with no last name," see 8/17/11 Def. Reply at 3, they did not timely seek to compel additional information, nor do they proffer any evidence that defendants were in fact "deceived" as to the identity of "Ariel," their former manager, who was discussed by defense representatives Glenn Frechter and Benjamin Bautista at their respective depositions.  See Deposition Transcript of Glenn Frechter, DE #127-6, at 222-24; Deposition Transcript of Benjamin Bautista, DE #127-7, at 157-59.  (Plaintiffs explain that their failure to include Ariel's last name was "an inadvertent drafting mistake" resulting from a copy-and-pasting of plaintiffs' March 2011 Interrogatory Responses, which included only Ariel's first name.  See 3/23/12 Pl. OTSC Resp. at 7.)

[12]  Defendants' reply erroneously states that the last day of discovery was June 28, 2011.  See 8/17/11 Def. Reply at 3, DE #160.  In fact, discovery closed on July 1, 2011.  See 3/18/11 Am. Sched. Order, DE #64.

-15-

with respect to the 7/5/11 Declarations or Penizzotto.[13]

## II.   Declarant Davila's Failure to Appear At Her Deposition

Defendants also move to strike the Davila Declaration because "Davila refused to appear for [her] deposition."  8/5/11 Def. Mem. at 6, DE #151.  According to plaintiffs, Davila was originally noticed for a deposition on June 20, 2011, but, due to defendants' own scheduling conflict, Davila's deposition was adjourned *sine die*.  See 8/15/11 Pl. Opp. at 7-8, DE #155; 8/15/11 Ambinder Decl., Ex. I through Ex. K, DE #156-9 through #156-11.  Notably, defendants do not deny that they were unable to make the originally noticed date and failed to reschedule Davila's deposition.  See generally 8/17/11 Def. Reply, DE #160.  In fact, on reply, defendants completely omit any reference to Davila.  See id.  Thus, the record reflects that defendants' failure to depose Davila was an omission of their own making.  Therefore, the Court declines to strike the Davila Declaration.

Significantly, defendants have not sought, in the alternative, an order reopening discovery to allow them belatedly to conduct Davila's deposition.  See 8/5/11 Def. Mem. at 6, DE #151; 8/17/11 Def. Reply, DE #160.  Nor did defendants ask to extend discovery once it became apparent that the Davila deposition would not take place on June 20, 2011 and would have to be rescheduled.  Accordingly, the Court declines to *sua sponte* reopen discovery to allow defendants to depose Davila.

---

[13]  In any event, the case law does not make clear whether plaintiffs' 6/26/11 Amended Rule 26 Disclosures, made five days prior to the end of fact discovery, would even be considered untimely under Rule 26, as "[s]upplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period . . . ."  Fed. R. Civ. P. 26(e) advisory committee's notes (1993).  Defendants cite no case law on the issue.

### III.   Defendants' Evidentiary Objections to the 7/5/11 Declarations

In addition to accusing plaintiffs of violating their discovery obligations, defendants move to strike the 7/5/11 Declarations on the basis of various evidentiary flaws.  See 8/5/11 Def. Mem. at 7-17, DE #151.  Specifically, defendants argue that the declarations are conclusory and cookie-cutter, lack foundation and/or personal knowledge, and contain inadmissible hearsay.  See id.

### A.   Conclusory and Cookie-Cutter Nature of the 7/5/11 Declarations

As an initial matter, to the extent that the 7/5/11 Declarations contain conclusory or cookie-cutter statements, these flaws go to the credibility of the declarants and, by extension, the weight of the evidence, but do not warrant striking the statements outright.  See Mueller v. Towers, No. 3:10-CV-1093 (WWE), 2010 WL 4365771, at *2 (D. Conn. Oct. 25, 2010) (denying motion to strike for "lack of detail," as that issue went to credibility); Colabufo v. Cont'l Cas. Co., No. 04-CV-1863 (TCP)(MLO), 2006 WL 1210919, at *6 (E.D.N.Y. Apr. 27, 2006) ("[L]ack of certain specific details or arguably vague or conclusory statements will not render [p]laintiffs' affidavits inadmissible, but instead affects the weight and credibility of the testimony.") (collecting cases).  Defendants' motion papers essentially concede this point by arguing that identical statements in declarations "should not be accorded any *weight* by the Court."  8/5/11 Def. Mem. at 9, DE #151 (emphasis added); see also id. ("'Cookie-cutter' declarations have been found inadmissible or *have been found unreliable and lacking probative value*") (emphasis added) (citing cases discussing weight of cookie-cutter evidence but none regarding admissibility); id. at 12 (court should not give declarations "credence" due to repetition).  Further, much of the case law cited by defendants does not deal with motions to

-17-

strike, but instead considers the conclusory nature of a declaration in deciding the substantive

motion.  See id. at 12-13 (collecting cases that ultimately denied certification of FLSA

collective actions because of "conclusory allegations" but did not strike such allegations).  The

Court therefore declines to strike the 7/5/11 Declarations on this ground.

### B.  Lack of Personal Knowledge and Hearsay

More problematic is the question whether a declaration submitted in connection with a

Rule 23 motion to certify a class must be based on personal knowledge and free of inadmissible

hearsay.  Although defendants urge the Court to measure plaintiffs' Rule 23 submissions by the

standard applicable to Rule 56 affidavits, they cite no Second Circuit case law specifically

holding that Rule 56's requirements govern filings under Rule 23.  See generally 8/5/11 Def.

Mem., DE #151.  Indeed, one decision issued out of the Southern District of New York (and

overlooked by the parties) has held to the contrary – i.e., that Rule 56 does not apply to Rule

23.  See Levitt v. Pricewaterhousecoopers, LLP, No. 04 Civ. 5179(RO), 2007 WL 2106309,

at *1 (S.D.N.Y. July 19, 2007) (denying motion to strike for lack of personal knowledge

because Rule 56 applies only to summary judgment motions).

Outside the Second Circuit, courts are split as to how stringently to apply the rules of

evidence at the class certification stage.  See, e.g., Serrano v. Cintas Corp., Civ Nos. 04-

40132, 06-12311, 2009 WL 910702, at *3 (E.D. Mich. Mar. 31, 2009) (declining to strike

declarations in connection with motion to certify, despite admissibility challenges; holding that

it was appropriate to consider all evidence at the class certification stage, while deferring

admissibility determinations); Lewis v. First Am. Title Ins. Co., 265 F.R.D. 536, 552-53 (D.

Idaho 2010) (noting split, but deciding that, for class certification purposes, court would not

-18-

strictly apply evidentiary rules).  That said, after reviewing Second Circuit case law addressing the evidentiary standards applicable to Rule 23 motions, this Court is of the opinion that the Second Circuit would require that such declarations be admissible (i.e., based on personal knowledge and either non-hearsay or information subject to hearsay exceptions).

In deciding a Rule 23 motion, courts in this Circuit must make determinations as to the four requirements for class certification, even though those determinations may overlap with the ultimate issues in the case.  See In re Initial Pub. Offerings Secs. Litig., 471 F.3d 24, 40-41 (2d Cir. 2006).  "[T]he district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met."  Id. at 41.  The parties seeking class certification must make their Rule 23 showing by a preponderance of the evidence.  See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 202-03 (2d Cir. 2008).

In 2008, the Second Circuit considered what factual finding was required on a Rule 23 motion in the context of a securities fraud putative class action.  See In re Salomon Analyst Metromedia Litig., 544 F.3d 474 (2d Cir. 2008).  Addressing a 2004 district court opinion that had held that on a class certification motion, the plaintiffs had to make a "prima facie" showing of a particular securities fraud element by "admissible evidence," the Second Circuit rejected the "prima facie" standard but, by its silence, implicitly accepted the admissibility requirement.  See id. at 486 n.9 (discussing DeMarco v. Lehman Bros., Inc., 222 F.R.D. 243, 246-47 & n.9 (S.D.N.Y. 2004)).  Furthermore, in the In re IPO case discussed above, the Second Circuit analogized the evidentiary showing under Rule 23 to "any other threshold prerequisite for continuing a lawsuit."  In re IPO, 471 F.3d at 42.  Significantly, in

determining a threshold issue, such as jurisdiction, courts may not rely on inadmissible hearsay.  See Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n, 239 F.Supp.2d 316, 319 (E.D.N.Y. 2003) (citing Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).

Moreover, recent dictum by the Supreme Court concerning the standards for evaluating expert opinions on a class certification motion further suggests that evidence offered in connection with such a motion must satisfy admissibility requirements.  See Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S.Ct. 2541, 2253-54 (2011) ("The parties dispute whether [plaintiffs' expert's] testimony even met the standards for the admission of expert testimony under Federal Rule of Civil Procedure 702 and our Daubert case. The District Court concluded that Daubert did not apply to expert testimony at the certification stage of class-action proceedings. We doubt that is so . . . .") (emphasis added) (internal citation and footnote omitted); see also All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund, 280 F.R.D 78, 82 (E.D.N.Y. 2012) ("A decision as to the admissibility of the Stevens Report bears directly and importantly on the motion for class certification.") (emphasis added).  For all of these reasons, this Court will now consider whether the 7/5/11 Declarations are based on a lack of personal knowledge or contain inadmissible hearsay.

Defendants argue that none of the 7/5/11 employee-declarants "have demonstrated that they have personal knowledge of what Cabana's policies, if any, were across its three New York restaurants regarding paying for mistakes, clocking in, taking breaks and clocking out." 8/5/11 Def. Mem. at 14, DE #151.  In addition, defendants contend that the declarations of former managers Penizzotto and Suarez contain "insufficient factual bases" to establish their

personal knowledge.  See id. at 15.

The Court disagrees.  First, of the declarations cited by defendants on this issue, all but one specifically attest to the fact that the declaration is being made on the basis of personal knowledge.  See, e.g., Belandria Decl., DE #127-9 (declaring "upon personal knowledge"). None of the 7/5/11 Declarations claims to have been made "upon information and belief." Second, it is reasonable to infer that Cabana employees would have first-hand knowledge of Cabana's employee policies and practices by virtue of their tenure at the restaurants -- at least as to any and all restaurants at which the declarant worked.  See Colabufo, 2006 WL 1210919, at *6 ("An affidavit will be admissible where a reasonable trier of fact could believe the witness had personal knowledge.  An affiant may testify to conclusions based on her personal observations over time.  Similarly, witnesses may testify to and summarize their impressions.") (citations omitted); see also Lang v. DirecTV, Inc., Civil Action No. 10-1085 "G"(1),  2011 WL 6934607, at *9 (E.D. La. Dec. 30, 2011) (in concluding that declarants could derive personal knowledge about others by virtue of their job duties, court observes that "[b]oilerplate language does not mean the statements do not reflect personal knowledge"); Simmons v. Valspar Corp., Civ. No. 10-3026 (RHK/SER), 2011 WL 1363988, at *3 (D. Minn. Apr. 11, 2011) (concluding that declarants had personal knowledge because it was reasonable to infer that employees, "during the normal course of their employment," would learn about company policies and how they operate) (citation omitted).[14]  Thus, the Court

---

[14]  The only declaration cited by defendants for lack of personal knowledge that is not expressly made on personal knowledge is the Velez Declaration, DE #127-13.  Based on the contents of that declaration, and the absence of any reference to information and belief, one

(continued…)

denies defendants' motion to strike the 7/5/11 Declarations based on the declarants' alleged lack of personal knowledge.

Turning to defendants' hearsay objections, the Court finds the majority of the statements to be admissible.  See Fed. R. Evid. 801(d) (admission by party-opponent); see also Pappas v. Middle Earth Condominium Ass'n, 963 F.2d 534, 537-38 (2d Cir. 1992) (trial court erred by failing to admit statement of unidentified ski resort employee, where there was sufficient circumstantial evidence to suggest that his statement related to a matter within the scope of his employment); Winfield v. Citibank, N.A., — F.Supp.2d —, 2012 WL 423346, at *12 n.4 (S.D.N.Y. Feb. 9, 2012) (statements attributed to managers employed by defendant not hearsay); Jermyn v. Best Buy Stores, L.P., 256 F.R.D. 418, 429 (S.D.N.Y. 2009) (rejecting, on Rule 23 motion, hearsay challenge to declaration of supervisor employed by defendant concerning his interactions with other employees and what he was taught and told by his superiors).   The Court will, however, strike any hearsay in the 7/5/11 Declarations that does not clearly fall within one of the hearsay rule's exceptions.[15]  The Court denies defendants' first motion to strike in all other respects.

---

[14](...continued)
may reasonably infer that the failure to assert personal knowledge was simply an oversight.

[15]  For example, the Court will disregard any statements made by plaintiffs' lawyers and by unidentified co-workers unrelated to the scope of their agency with Cabana.  See, e.g., Reyes Decl. ¶ 8; Patchen ¶ 8; Velez Decl. ¶ 12; Bovender Decl. ¶ 16; Garcia Decl. ¶ 17.

## <u>DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' 2010 DECLARATIONS</u>
## <u>IN OPPOSITION TO DEFENDANTS' MOTION TO DECERTIFY</u>

Defendants' second motion to strike concerns the 2010 Declarations, which were originally submitted in support of plaintiffs' 2010 motion for conditional FLSA certification. <u>See</u> 8/16/11 Def. Mem., DE #159.  Plaintiffs either attached or incorporated by reference the 2010 Declarations in opposition to defendants' Motion to Decertify.  <u>See</u> <u>id.</u> at 2.  The bases for striking the 2010 Declarations largely mirror many of the arguments raised in defendants' first motion to strike, in that defendants characterize the 2010 Declarations as conclusory, cookie-cutter, lacking personal knowledge and containing inadmissible hearsay.  <u>See</u> <u>id.</u> at 4-20.  For the reasons stated *supra* pp. 17-18, the objections based on the boilerplate and conclusory nature of the 2010 Declarations go to their weight, not their admissibility. Moreover, the Court finds that a reasonable inference may be drawn that the statements in the 2010 Declarations were made on personal knowledge, at least as to the restaurants at which each declarant worked.  <u>See, e.g.</u>, <u>Colabufo</u>, 2006 WL 1210919, at *6.

The analysis with respect to hearsay is, however, slightly different than in the context of defendants' first motion to strike, discussed *supra* pp. 18-22.  Unlike defendants' initial motion to strike, their second such motion does not relate to a Rule 23 motion to certify a class action, but instead concerns a motion to *decertify* a collective action under the FLSA.

In general terms, there are two stages of a collective action under the FLSA.  <u>See</u> <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 555 (2d Cir. 2010).  First, a plaintiff must make "a modest factual showing" to establish that he or she is similarly situated to other employees of a defendant and that they were all subject to a common policy or practice.  <u>Id.</u>  The showing

-23-

required at this initial "conditional" stage is not onerous, but must include something beyond unsupported assertions.  Id.  At that stage, many courts within the Second Circuit -- including this Court in its 2/1/11 M&O -- have held that hearsay evidence is acceptable as part of the plaintiff's initial showing.  See, e.g., Winfield, 2012 WL 423346, at *4 (noting that courts in this Circuit regularly consider hearsay on a motion for conditional certification, "which is only a preliminary determination," and emphasizing that defendants "will have another opportunity to object to [] certification after discovery") (collecting cases, including the 2/1/11 M&O).

At the second stage, after a matter is conditionally certified as a collective action and discovery has been conducted, a defendant may move to decertify the FLSA collection action. See Myers, 624 F.3d at 555; Lewis v. Nat'l Fin. Sys., No. 06-1308 (DRH) (ARL), 2007 WL 2455130, at *2 (E.D.N.Y. Aug. 23, 2007).  At that stage, the plaintiff bears a heavier burden to show that he or she is similarly situated.  See, e.g., Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 123 (S.D.N.Y. 2011); Ayers v. SGS Control Servs., No. 03 Civ. 9077 RMB, 2007 WL 646326, at *4 (S.D.N.Y. Feb. 27, 2007).  The precise contours of that higher evidentiary burden are unclear, as there is little case law concerning the FLSA decertification stage.  See Jacobs v. The N.Y. Foundling Hosp., 483 F.Supp.2d 251, 265 (E.D.N.Y. 2007) (quoting Torres v. Gristede's Operating Corp., 04-CV-3316 (PAC), 2006 WL 2819730, at *9 (S.D.N.Y. Sept. 29, 2006)).  However, by emphasizing that hearsay is *not* an issue at the initial stage, in part because defendants may later object at the "decertification" stage, the case law suggests that hearsay is not appropriate where, as here, the second stage has been reached.  See, e.g., Winfield, 2012 WL 423346, at *4.  This conclusion is further reinforced by the Second Circuit's requirement, at the "decertification" stage, that the district court determine whether the

plaintiff is in fact "similarly situated." See Myers, 624 F.3d at 555 (at second stage, court must determine, "on a fuller record," whether plaintiffs who have opted in are "in fact" similarly situated to the named plaintiffs).  For the foregoing reasons, this Court, in considering defendants' Motion to Decertify, will not entertain any hearsay in the 2010 Declarations that does not clearly fall within one of the exceptions to the hearsay rule.[16]

One defense challenge that gives this Court pause relates to the cited inconsistencies between the 2010 Declarations of Ruiz and Vargas and their respective 2011 deposition testimony.  See, e.g., 8/16/11 Def. Mem. at 11, DE #159 (while Ruiz and Vargas swore in their 2010 declarations that they were always paid by two paychecks, they conceded, in their 2011 depositions, that that practice occurred only for a short period in 2007).  Nevertheless, these minor inconsistencies go to the credibility of the declarants and do not alone warrant striking their declarations.  See Rosales v. El Rancho Farms, No. 1:09-CV-707 (AWI) (JLT), 2011 WL 6153212, at *8 (E.D. Cal. Dec. 12, 2011) (internal inconsistencies in declarations, and contradictions with other testimony, go to the weight of the evidence, not its admissibility); Damassia, 250 F.R.D. at 160 (giving "little weight" to written declarations of assistant managers that contradicted their deposition testimony).[17]

---

[16]  In arguing that "courts have consistently held that traditional hearsay is admissible in support of motions for certification," plaintiffs cite only cases involving the first FLSA stage. See Plaintiffs' Opposition to Defendants' Motion to Strike Plaintiffs' Declarations in Opposition to Motion for Decertification at 10, DE #173. For obvious reasons, case law sustaining hearsay at the first stage is inapposite at the second stage.

[17]  Defendants devote portions of their Second Motion to Strike to discussions of various inconsistencies in and other problems with the 7/5/11 Declarations. See 8/16/11 Def. Mem. at 12, DE #159 (analyzing 2011 Lujan Declaration); 8/16/11 Def. Mem. at 13 (analyzing 2011

(continued…)

Accordingly, the Court denies defendants' Second Motion to Strike, except that it will

not rely on any inadmissible hearsay in determining the decertification motion.[18]

**PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' EVIDENCE
IN OPPOSITION TO PLAINTIFFS' RULE 23 MOTION TO CERTIFY**

**I.  Failure to Produce**

Following the filing of defendants' two motions to strike, plaintiffs cross-moved to

strike evidence proffered by defendants in opposing plaintiffs' motion to certify a class action.

See generally 10/5/11 Pl. Mem., DE #177.  For the reasons that follow, plaintiffs' motion is

granted in substantial part.

**A.    Legal Standard**

Rule 26(a)(1) of the FRCP requires that, at the outset of a civil lawsuit, parties must

disclose the name of "each individual . . . that the disclosing party may use to support its

claims or defenses[.]"  Fed. R. Civ. P. 26(a)(1)(A)(i).  It also mandates that a party disclose

documents that may be used "to support its claims or defenses."  Fed. R. Civ. P.

26(a)(1)(A)(ii).  Pursuant to Rule 26(e), a party is obligated to timely supplement or correct its

---

[17](...continued)
Patchen and Reyes Declarations); see also 8/16/11 Def. Mem. at 8 (objecting to "generalized" statements in 7/5/11 Declarations, not 2010 Declarations).  However, the Second Motion to Strike, in contrast to the First Motion to Strike, purports to be directed at the 2010 Declarations.  See 8/16/11 Def. Mem. at 1, 2, 10; Defendants' Reply Memorandum of Law in Further Support of Their Motion to Strike Declarations Submitted by Plaintiffs in Opposition to Defendants' Motion for Decertification (Oct. 5, 2011) at 5, DE #174 (characterizing Second Motion to Strike as "directed only at the nine declarations").  The Court will not permit defendants *sub silento* to supplement their First Motion to Strike with arguments about the 7/5/11 Declarations that did not find their way into that motion.

[18]  For example, the Court will not consider statements purportedly made to declarants by plaintiffs' lawyers and unidentified co-workers.  See, e.g., Ruiz Decl. ¶¶ 12-17, DE # 144-12.

-26-

initial Rule 26 disclosures, and its responses to interrogatories and document demands, "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).  As this Court explained in American Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States, No. 04-CV-1798 (CPS), 2009 WL 1617773, (E.D.N.Y. June 9, 2009): "The duty to supplement 'applies whether the corrective information is learned by the client or by the attorney[,]' 1993 Advisory Committee Note to Fed. R. Civ. P. 26(e), and extends not only to newly discovered evidence, but to 'information that was not originally provided although it was available at the time of the initial disclosure or response.' 2007 Advisory Committee Note to Fed. R. Civ. P. 26(e)."  2009 WL 1617773, at *5; accord Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc., 272 F.R.D. 350, 357 (W.D.N.Y. 2011); see also Robbins & Meyers, Inc. v. J.M. Huber Corp., 274 F.R.D. 63, 75 (W.D.N.Y. 2011) (applying an objective "reasonably should know" standard to when a party "learns" for Rule 26(e) purposes that its prior discovery responses are materially inaccurate or incomplete).  The obligation to amend prior disclosures and discovery responses continues even after the conclusion of discovery.  See Star Direct, 272 F.R.D. at 358.  The purpose of Rule 26(e) is to prevent the "sandbagging" of a party with new evidence at trial or on a motion.  See Ebewo v. Martinez, 309 F.Supp.2d 600, 607 (S.D.N.Y. 2004).

A party found to have violated its Rule 26 obligations is subject to sanctions under Rule 37.  Rule 37(c) sanctions are not limited to initial disclosure violations but may be predicated on a party's failure to amend its prior discovery responses.  See, e.g., Haas v. Del. & Hudson Ry. Co., 282 F.App'x 84, 85-86 (2d Cir. 2008); Kosher Sports, Inc. v. Queens Ballpark Co.,

No. 10-CV-2618, 2011 WL 3471508, at *12 (E.D.N.Y. Aug. 5, 2011); Robbins & Meyers, 274 F.R.D. at 74; Am. Stock Exch., LLC v. Mopex, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002). Rule 37(c) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Substantial justification may be demonstrated where there is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request or if there exists a genuine dispute concerning compliance." Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 159 (S.D.N.Y. Feb. 15, 2012) (internal quotation and citations omitted). An omission or delay in disclosure is harmless where there is "an absence of prejudice" to the offended party. Id.; see Aboeid v. Saudi Arabian Airlines Corp., No. 10 CV 2518(SJ)(VVP), 2011 WL 5117733, at *2 (E.D.N.Y. Sept. 6, 2011).

Preclusion is a "harsh remedy" that "should only be imposed in rare situations." Izzo v. ING Life Ins. & Annuity Co., 235 F.R.D. 177, 186 (E.D.N.Y. 2005) (quoting Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir. 1988)). While a finding of bad faith is not required to justify preclusion of evidence under Rule 37, a court may consider bad faith in its analysis. See Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006). Courts enjoy broad discretion in deciding whether and how to fashion a sanction pursuant to Rule 37. See Design Strategy, 469 F.3d at 294. In determining whether to exercise its discretion to preclude evidence under Rule 37, courts examine (1) the party's explanation for the failure to

comply with the discovery rules; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to address the new evidence; and (4) the possibility of a continuance.  See Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006) (citing Softel, Inc. v. Dragon Med. & Scientific Comm'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997)); Gotlin v. Lederman, No. 04-CV-3736 (ILG) (RLM), 2009 WL 2843380, at *3 (E.D.N.Y. Sept. 1, 2009).

**B.     Frechter Exhibits**

Plaintiffs move to strike most, if not all, of the Frechter Exhibits, which are attached to the Frechter Declaration.  See 10/5/11 Pl. Mem. at 4-9, DE #177.  Plaintiffs contend that a portion of the Frechter Exhibits were created based on documents that defendants improperly withheld during discovery.  Id.  The remaining Frechter Exhibits, plaintiffs argue, are Cabana records that should have been produced.  Id.  As an initial matter, the Court notes that Rule 26(a) requires that defendants disclose to plaintiffs "a copy -- or a description by category and location -- of all documents . . . that the disclosing party may use to support its claims or defenses[.]"  Fed. R. Civ. P. 26(a)(1)(A)(ii).  Furthermore, it is undisputed that the documents in question were responsive to plaintiffs' document demands.  See Defendants' Response to Plaintiffs' First Request For the Production of Documents (Doc. Request Nos. 3, 4) ("Def. Document Request Response"), DE #176-1, at 25-26.  Thus, to the extent that defendants did not disclose the documents contained in or used to create the Frechter Exhibits, defendants violated Rule 26.  If they violated Rule 26, the Court will then consider whether preclusion is appropriate under Rule 37.

### 1.  Defendants' Alleged Failure to Disclose

With respect to Exhibits 6, 9 and 10 to the Frechter Declaration, defendants do not address the deficiencies identified by plaintiffs.  See 10/5/11 Pl. Mem. at 7, DE #177; Rule 30(b)(6) Declaration of Glenn Frechter in Opposition to Plaintiffs' Motion to Strike ("11/29/11 Glenn Frechter Decl."), DE #181-1.[19]  Therefore, the Court finds that defendants failed to disclose documents relating to these exhibits.

In contrast to their silence on the aforementioned exhibits, defendants specifically object to plaintiffs' contention that the work schedules comprising Exhibit 5 were never disclosed.  See 10/5/11 Pl. Mem. at 7, DE #177; 11/29/11 Glenn Frechter Decl. at 5. Defendants attach an email in support of their claim that those records were properly and timely produced to plaintiffs.  Id.  Plaintiffs, in their reply, do not refute defendants' assertion that they produced the documents set forth in Exhibit 5.  See generally Plaintiff's Reply Memorandum of Law in Further Support of Their Motion to Strike ("12/8/11 Pl. Reply"), DE #185.  Thus, it is undisputed that defendants produced Exhibit 5.

With regard to Exhibits 4 and 8, plaintiffs argue that most of the documents used to create these exhibits  —  the so-called "guest checks"  —  were not produced.  See 10/5/11 Pl. Mem. at 6-7, DE #177.  In particular, plaintiffs allege that when plaintiffs originally demanded the guest checks, defendants protested that the guest checks were too burdensome to produce, which resulted in a court order that defendants make "an agreed-upon" sample of guest checks

---

[19]  In their opposition, defendants make no mention of Exhibits 9 and 10.  Although they explain what documents were summarized in Exhibit 6, they do not address whether these were, in fact, disclosed to plaintiffs.  See 11/29/11 Glenn Frechter Decl. at 6.

available for plaintiffs' inspection.  See Minute Entry (June 21, 2011), DE #115.  Therefore,

plaintiffs contend, defendants should not be able to now rely on documents beyond the agreed-

upon sample — the same documents that defendants had once claimed were too burdensome to

produce.  See 10/5/11 Pl. Mem. at 7.

      Despite the facial appeal of plaintiffs' argument, correspondence submitted by

defendants suggests that, although defendants may initially have complained of undue burden,

they changed their position after a telephone conference with the Court concerning this

discovery dispute, and offered plaintiffs the opportunity to review six sample boxes of payroll

documents (two from each of the three Cabana locations).  See Emails, attached as Ex. 3 to

Declaration of Douglas Weiner In Opposition to Plaintiffs' Motion to Strike, DE #181-3.[20]  It

was plaintiffs who found these sample boxes unsatisfactory and instead sought court

intervention to compel production of two different boxes.  See Letter Motion to Compel

Production of Guest Checks (June 28, 2011) ("6/28/11 Pl. Letter"), DE #121.  Although

plaintiffs claim that — by virtue of this Court's having granted plaintiffs' request to compel

production of the two boxes —  the other boxes were "essentially 'taken off the table,'" see

12/8/11 Pl. Reply at 4, DE #185, plaintiffs provide no factual basis to support this conclusion.

Indeed, plaintiffs' own motion to compel production of the two boxes suggests that this Court

merely ordered "a modest sample" of the guest checks, and that "[p]laintiffs therefore limited

their request to guest checks for a two-month period[.]"  6/28/11 Pl. Letter (emphasis added).

If anyone took those other boxes "off the table," it was plaintiffs.  Defendants confirmed that

---

[20]  A seventh box was eventually located and offered for plaintiffs' review as well.  See
Response in Opposition to Motion to Compel (June 29, 2011) at 2, DE #123.

the guest checks comprising Exhibits 4 and 8 were selected "solely" from the boxes originally offered to plaintiffs.  See 11/29/11 Glenn Frechter Decl. at 5, DE #181-1.  Thus, defendants did not violate Rule 26 with respect to Exhibits 4 and 8 of the Frechter Declaration.

As for Exhibits 1, 2, and 3 to the Frechter Declaration, plaintiffs point to very serious deficiencies in production, including defendants' apparent failure to turn over any payroll reports for certain opt-in plaintiffs.  See 10/5/11 Pl. Mem. at 4-6, DE #177.  Rather than address each specific deficiency identified by plaintiffs, defendants merely state in conclusory fashion that "[w]ithout making a page by page comparison, the vast majority if not all the underlying daily and weekly time reports were produced to Plaintiffs in discovery."  See 11/29/11 Glenn Frechter Decl. at 2, DE #181-1.  Defendants then proceed to list what they did produce, but neglect to provide any detail illuminating whether their production included all relevant documents.  See id. at 2 n.2 (claiming records were produced electronically, without any indication of date of production or whether all records were produced; for example, only listing the Bates numbers for records relating to opt-in plaintiffs Ruiz and Vargas, without indicating whether all documents for those two were produced).[21]  Defendants' claim that they produced "thousands of payroll records" in discovery, see id., is of little value if they nevertheless failed to produce relevant, responsive payroll records specifically requested by plaintiffs.[22]  Defendants have not satisfied the Court that they produced all the time and payroll

_____

[21]  This omission is compounded by the fact that Exhibits 1 and 2, which purport to be summaries of Cabana records, do not attach the summarized records.

[22]  See Def. Document Request Response (Document Request No. 3), DE #176-1, at 25.  In addition to their partial disclosure of payroll records, defendants affirmatively represented to

(continued...)

-32-

records that are contained in or were used to create Exhibits 1, 2 and 3.[23]

### 2.    Preclusion Under Rule 37

Having concluded that defendants violated Rule 26(a) by failing to produce requested documents, as well as documents on which defendants might rely, the Court must determine whether their failure to do so was substantially justified or harmless.  See Fed. R. Civ. P. 37(c)(1).  If the violation was not substantially justified and not harmless, then the Court must consider the Patterson factors in determining whether preclusion is appropriate.  See Patterson, 440 F.3d at 117.

With respect to Exhibits 1, 2, 3, 6, 9 and 10, defendants' failure to produce was neither substantially justified nor harmless.  Defendants do not address Exhibits 6, 9, and 10 and offer only unsatisfactory, conclusory responses to the deficiencies identified by plaintiffs as to Exhibits 1, 2 and 3.  Therefore, the Court now must consider the Patterson factors to determine whether preclusion of Exhibits 1, 2, 3, 6, 9 and 10 is warranted under the circumstances.  See Patterson, 440 F.3d at 117

**Defendants' Explanation:** This factor weighs heavily in favor of preclusion. Defendants' explanations as to why the aforementioned exhibits (and underlying documents)

_____

[22](...continued)
plaintiffs, in initial disclosures that were never supplemented, that the only payroll records that "[d]efendant [sic] [m]ay [u]se [t]o [s]upport [i]ts [d]efenses" were "Plaintiff's payroll records."  See Defendants' Initial Disclosure Statement at 3, DE #176-4.

[23]  Although _part_ of Exhibits 1, 2, and 3 were arguably based on properly produced documents, the Court declines to strike selected portions of those exhibits, as it has not been provided with sufficient information to determine which portions might have been properly produced.

-33-

were not timely produced in response to plaintiffs' discovery requests are wholly inadequate. Indeed, as noted above, defendants do not even bother to address Exhibits 6, 9 and 10.

**Importance of the Evidence:** This factor weighs heavily in favor of preclusion. Payroll and time records are at the heart of plaintiffs' allegations in this matter.

**Prejudice to Plaintiffs:** This factor weighs in favor of preclusion.  The prejudice to plaintiffs is obvious: Essentially, defendants wish to rely on their analysis of time records that should have been produced to plaintiffs more than a year ago, thereby depriving plaintiffs of the ability to challenge the Frechter Declaration.

**Possibility of Continuance**: This factor weighs slightly in favor of preclusion, as a continuance would require reopening discovery.  See Rienzi & Sons, Inc. v. N. Puglisi & F. Indstria Paste Alientari S.P.A., No. 08-CV-2540 (DLI)(JMA), 2011 WL 1239867, at *4 (E.D.N.Y. Mar. 30, 2011) (close of discovery weighed strongly against possible continuance).

Therefore, after weighing the Patterson factors, the Court grants plaintiffs' motion to strike the Frechter Exhibits as to Exhibits 1-3, 6, 9 and 10 and denies the motion as to Exhibits 4, 5 and 8.[24]  See Kam Hing Enters., Inc. v. Wal-Mart Stores, Inc., 359 F.App'x 235, 237-38 (2d Cir. 2010) (rejecting challenge to order precluding testimony by defense witness as to cost calculations, "in part because defendants had never produced the underlying documentation on which the spreadsheet summaries were based."); Haas, 282 F.App'x at 85-87 (trial court did not abuse its discretion in precluding consideration of affidavit, where plaintiff failed to identify affiant as a fact witness and failed to amend answers to interrogatories concerning the

----

[24]  Although plaintiffs ask the Court generally to strike Exhibits 1 through 10, see 10/5/11 Pl. Mem. at 9, DE #177, they do not specifically address Exhibit 7.

-34-

subject matter of the affidavit); Am. Friends, 2009 WL 1617773, at *7-12 (precluding checks and ledgers not produced in discovery that were attached to opposition to dispositive motion); see also Richmond v. Gen. Nutrition Ctrs., Inc., No. 08 Civ. 3577 (PAE)(HBP), 2012 WL 762307, at *5 (S.D.N.Y. Mar. 9, 2012) (court would preclude at trial any damages-related computations and supporting documents not produced by plaintiffs during discovery, as non-production was neither substantially justified nor harmless); Briese Lichttechnik Vertriebs GmbH v. Langton, No. 09 Civ. 9790 (LTS)(MHD), 2011 WL 280815, at *11 (S.D.N.Y. Jan. 10, 2011) (precluding defendants from "utilizing, either on summary judgment or at trial, any documents not produced to plaintiffs during the specified discovery period").

In addition, the Court will strike the paragraphs in the Frechter Declaration that correspond to the stricken exhibits -- e.g., Frechter Decl. ¶ 3 (discussing Exhibit 1); id. ¶ 4 (discussing Exhibit 2).

### C.    The Cabana Declarations

Plaintiffs also object to thirty-one[25] of the Cabana Declarations – submitted by current and former employees and managers in opposition to plaintiffs' Rule 23 Motion to Certify – because those thirty-one declarants (hereinafter, the "Cabana Declarants") were never properly disclosed as potential defense witnesses pursuant to Rule 26(a)(1)(A).[26]  See 10/5/11 Pl. Mem. at 10, DE #177.  In response, defendants contend that a number of the Cabana Declarants were

---

[25]  Plaintiffs state that they seek to strike thirty-two declarations, but, in requesting this relief, only list thirty-one declarations.  See 10/5/11 Pl. Mem. at 10.

[26]  The Court overrules plaintiffs' objection that five of the Cabana Declarants did not work for Cabana during the statutory period, for the same reason the Court earlier rejected a similar argument advanced by defendants.  See 2/1/11 M&O at 12.

identified during the discovery period by way of interrogatories and deposition testimony.  See 3/23/12 Def. OTSC Resp. at 3-4, DE #190.  As for the remaining Cabana Declarants, defendants argue that (1) the parties and the Court understood that defendants would be gathering statements *after* discovery closed, pursuant to a Memorandum and Order issued by this Court on July 29, 2011, and (2) these declarations merely rebutted "new allegations" contained in plaintiffs' Rule 23 Motion to Certify.  See id. at 4-7; 11/29/11 Glenn Frechter Decl. at 7-8, DE #181-1.

### 1.  Employees and Managers "Identified" in Discovery

Defendants argue that seventeen of the Cabana Declarants were "identified [as] individuals 'with knowledge' prior to the close of discovery."  3/23/12 Def. OTSC Resp. at 3. In particular, defendants point to (1) interrogatory responses; (2) the production of a mailing list with the names and addresses of the 667 persons employed by Cabana since 2007; and (3) deposition testimony during which opt-in plaintiffs identified their managers by name.  See id. at 3-4.  Defendants contend that the above constitutes a supplementation of their Rule 26 initial disclosures.  See id. at 3.

Pursuant to Rule 26(e), parties must supplement their initial disclosures under Rule 26(a), as well as responses to interrogatories and document demands, "in a timely manner if the party learns that in some material respect the disclosure or response is incorrect and incomplete."  Fed. R. Civ. P. 26(e)(1)(A).  But a party must do so only if that information "has not otherwise been made known to the other parties during the discovery process or in writing."  Id.

The Court rejects defendants' argument that it was clear from the various discovery

responses that the challenged Cabana Declarants were "individuals 'with knowledge.'"
3/23/12 Def. OTSC Resp. at 3, DE #190.  Contrary to the premise of defendants' argument, a
party's initial disclosure obligations require identification of individuals who not only are
"likely to have discoverable information . . . [but whom] *the disclosing party may use* to
support its claims or defenses . . . ."  Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added).  None
of the discovery "identifications" cited by defendants clearly states, or even suggests, that
defendants might call upon those individuals in support of their defenses.  For the same reason,
it is not enough that "[f]ormer employees have been identified as an *obvious source of*
*employment information*, despite not being specifically listed on Cabana's initial disclosures."
11/29/11 Glenn Frechter Decl. at 8, DE #181-1 (emphasis added).  What matters is that
defendants might rely on those former employees in defending the case.

     Many courts in this Circuit (including this one) have held that the mere mention of a
name in a deposition or interrogatory response is insufficient to satisfy Rule 26(a)(1)(A)(i).
See, e.g., Media Alliance, Inc. v. Mirch, No. 09-CV-659 (MAD), 2012 WL 162375, at *3
(N.D.N.Y. Jan. 19, 2012) (finding that discussion of proposed witnesses during depositions of
other witnesses was not enough to put plaintiffs on notice that defendants were going to call
those witnesses at trial); Fetisov v. AY Builders, Inc., No. 10-CV-3683 (FB), 2011 WL
6009971, at *1-2 & nn.1, 4 (E.D.N.Y. Nov. 28, 2011) (Mann, M.J.), adopted in 2012 WL
213770 (E.D.N.Y. Jan. 24, 2012) (precluding testimony by witness whose identity was not
disclosed in plaintiffs' Rule 26(a) initial disclosures or in response to interrogatories, but
whose name came up during deposition); Degelman Indus., Ltd. v. Pro-Tech Welding &
Fabrication, Inc., Civil Action No. 06-CV-6346, 2011 WL 6754059, at *2 (W.D.N.Y. June 8,

2011), adopted in 2011 WL 6752565, at *4 (W.D.N.Y. Dec. 23, 2011) (striking affidavit

submitted in opposition to summary judgment motion; naming the witness during a deposition

was not enough to satisfy Rule 26); Pal v. N.Y. Univ., No. 06 Civ. 5892 (PAC) (FM), 2008

WL 2627614, at *4 (S.D.N.Y. June 30, 2008) ("Pal's knowledge of the existence of a witness

does not satisfy [Rule 26]; that obligation is fulfilled only if NYU informed Pal that it might

call the witness in support of its claims or defenses.").  This principle applies with particular

force where, as here, the individual with discoverable information was included in a

voluminous list of employees.  See Fleming v. Verizon N.Y., Inc., No. 03 Civ. 5639 (WHP),

2006 WL 2709766, at *8-9 (S.D.N.Y. Sept. 22, 2006) (striking declarations of four

undisclosed witnesses since it "would be unreasonable to expect Verizon to depose them"

absent supplemental Rule 26 disclosure, even though all four were Verizon employees and two

names were mentioned at deposition, since Verizon employed thousands of individuals); see

also Disability Advocates, Inc. v. Paterson, No. 03-CV-3209 (NGG)(MDG), 2008 WL

5378365, at *13 (E.D.N.Y. Dec. 22, 2008) (finding that "it would be unreasonable to expect

[d]efendants to have deposed" five witnesses based on interrogatory response that listed 1500

individuals; declining to preclude them as witnesses, based on the particular facts of that case).

Thus, the fact that some of the witnesses in the instant case were included in a 667-person list

of Cabana employees is not an adequate substitute for a supplemental disclosure under Rule 26.

Rather, to satisfy Rule 26, parties must make an unequivocal statement that they may

rely upon an individual on a motion or at trial.  See Kullman v. N.Y., No. 07-CV-716

(GLS/DRH), 2009 WL 1562840, at *6-8 (N.D.N.Y. May 20, 2009) (precluding plaintiffs

from calling witness who was not identified by them as a potential witness, even though

-38-

witness' name had been mentioned in discovery and plaintiffs' counsel issued, and then

withdrew, a notice of deposition for that witness); Alfano v. Nat'l Geographic Channel, No.

CV 06-3511 (NG)(JO), 2007 WL 2982757, at *1 (E.D.N.Y. Oct. 7, 2007) (mere mention of

witness at deposition not enough to alert defendants that plaintiff might call the person as a trial

witness); accord Fetisov, 2011 WL 6009971, at *2 n.4.  In Kullman, the court emphasized that

plaintiffs could have satisfied their Rule 26(a) obligation by a "simple declaration" that they

might call the individual as a trial witness, "either in a letter, electronic mail, on-the-record

during another deposition or court proceeding, or the like."  Kullman, 2009 WL 1562840, at

*6.  In finding a Rule 26 violation, the court noted that "[p]laintiffs have offered no evidence

that any simple, clear, unequivocal statement was ever made to defendants about" the witness.

Id.

For the foregoing reasons, the Court concludes that the mere mention in discovery of

these seventeen Cabana Declarants did not constitute a sufficient "supplement" of defendants'

Rule 26(a) disclosures.

### 2. The "Rebuttal" Declarations

As for the remaining Cabana Declarants, defendants claim — without citing any case

law —  that those declarations were created solely to rebut plaintiffs' Rule 23 Motion to

Certify.  See 3/23/12 Def. OTSC Resp. at 4, DE #190.  Defendants note that the declarations

are all dated after July 5, 2011, the date of the Motion to Certify, and that defendants "did not

withhold evidence it previously had in their possession."  Id.; see also 11/29/11 Glenn

Frechter Decl. at 8, DE #181-1 (declarations were not prepared until after close of discovery).

Defendants confuse the disclosure of the physical *declarations* (which presumably were

-39-

protected as work product prior to being filed)[27] with the disclosure of the identity of each *declarant* as someone whom defendants might rely on to support their defenses.  Tellingly, defendants are silent as to when they first contacted these declarants and learned they would be able to assist in their defense.  <u>See generally</u> 3/23/12 Def. OTSC Resp.; 11/29/11 Glenn Frechter Decl. at 8.

Defendants emphasize that the Court did not establish procedures for contacting "current employees" until July 29, 2011 —  nearly a month after discovery closed.  <u>See</u> Memorandum and Order (July 29, 2011) ("7/29/11 M&O"), DE #142; 3/23/12 Def. OTSC Resp. at 5, DE #190; 11/29/11 Glenn Frechter Decl. at 7.  Defendants' reliance on the 7/29/11 M&O concerning contact with current employees is puzzling, as nearly all of defendants' declarations are from *former* employees.  As the Court reaffirmed in an earlier Memorandum and Order, defendants were *never* prohibited from contacting former employees during the discovery period.  <u>See</u> Memorandum and Order (June 14, 2011) at 2-3, DE #110; <u>see also</u> So-Ordered Stipulation Regarding Communications [with Current Employees] (Oct. 7, 2010), DE #34.  Thus, defendants could have -- and, for all that appears in the record, may have -- contacted former employees during discovery.

Defendants further argue that these declarations were created solely to rebut (unidentified) "new allegations" in plaintiffs' Rule 23 Motion to Certify.  <u>See</u> 3/23/12 Def. OTSC Resp. at 4.  Rather than identify any "new allegations" that the declarations were designed to rebut, defendants merely argue that the declarations proffered by them "were in

---

[27]  <u>See</u> *supra* pp. 10-14.

rebuttal to the surprise declarations of Penizzotto and Suarez, who Plaintiffs had concealed in discovery." 3/23/12 Def. OTSC Resp. at 2; see id. at 4 (complaining that, until plaintiffs filed their Rule 23 Motion to Certify, defendants "did not and could not know Penizzotto and Suarez had submitted Declarations"). However, for the reasons previously stated, see supra p. 15, plaintiffs did not "conceal" those witnesses.[28] Moreover, the 7/5/11 Declarations (including those of Suarez and Penizzotto) deal with the same issues that have been implicated since the case's inception — namely, whether defendants improperly altered time records, instructed workers not to clock in, made employees pay over part of their tips, and otherwise violated the FLSA and NYLL. Even if the Cabana Declarants were contacted solely for rebuttal purposes, this does not vitiate defendants' obligation to supplement their Rule 26(a) disclosures by timely informing plaintiffs, in advance of filing their opposition papers, that they intended to rely on these witnesses. See Munnings v. FedEx Ground Package Sys., Inc., No. 06:07-cv-282-Orl-19KRS, 2008 WL 1849003, at *7 (M.D. Fla. Apr. 22, 2008) (distinguishing rebuttal witness from impeachment witness, whose disclosure is not required under Rule 26(a)(1)(A)(i)).

Defendants' argument in this regard is strikingly similar to the one rejected by the Second Circuit in Haas v. Delaware and Hudson Railway Company, 282 F.App'x 84, which upheld the lower court's order precluding an affidavit submitted by the plaintiff in opposition to a defense motion for summary judgment. During discovery, the defendant had served interrogatories on the plaintiff, asking whether the defendant had actual or constructive notice

---

[28] Even defendants acknowledge that plaintiffs supplemented their initial disclosures to add "Cabana Manager Hugo Suarez" and "Cabana Manager Ariel." 3/23/12 Def. OTSC Resp. at 1.

of the allegedly defective condition, and requesting identification of any potential trial witnesses on the issue of notice.  The plaintiff, who responded by referring to his complaint, failed to identify one Gary Sheehan as a witness and failed thereafter to amend his answers to the interrogatories.  See id. at 85.

In response to a subsequent defense motion to strike the Sheehan affidavit, plaintiff argued that his failure to appreciate Sheehan's significance until the defendant moved for summary judgment was "not intentional," and that that dispositive motion had prompted plaintiff's counsel to search for additional evidence and thus obtain the Sheehan affidavit.  See id.  Finding this explanation to be inadequate, the district court excluded the evidence.  Id. at 86-87.  The Court of Appeals affirmed, agreeing with the lower court that plaintiff's counsel had failed to explain "why he waited until after the yearlong discovery phase had ended and after the fiing of [the defendant's] motion for summary judgment to seek the [disputed] evidence[.]"  Id. at 86.  The Second Circuit added: "Although the late discovery of Sheehan's information was apparently due to plaintiff's counsel's neglect and not 'bad faith,' bad faith is not required and counsel has offered no adequate explanation for this untimely disclosure."  Id.

So too here, defendants' characterization of the Cabana Declarations as rebuttal evidence does not excuse defendants' discovery derelictions.

### 3.  Preclusion Under Rule 37

Having concluded that defendants violated Rule 26 by failing to timely identify the Cabana Declarants, the Court now considers whether their violation warrants preclusion pursuant to Rule 37 (i.e., whether defendants' violation was substantially justified or harmless).

Here, defendants have provided insufficient justification for their failure to disclose the Cabana Declarants.  Importantly, defendants offer no information as to when they first contacted these individuals and/or when these individuals agreed to provide sworn statements supporting defendants.[29]  Moreover, the failure to disclose the identities of these declarants was not harmless, as defendants' omission deprived plaintiffs of the opportunity to take depositions and receive document discovery related to the declarants.

The Court will now turn to the Patterson factors.

**Defendants' Explanation:** As in Haas, this factor weighs heavily in favor of preclusion.  Defendants have provided no information regarding when they first contacted the individuals.  See 11/29/11 Glenn Frechter Decl. at 8, DE #181-1 (stating only when the declarations were prepared).  Furthermore, as noted above, defendants have not identified any "new allegations" in the Rule 23 Motion to Certify that might justify allowing evidence from witnesses who were not properly disclosed during the discovery period.  See Design Strategy, 469 F.3d at 297 (explanation factor weighed heavily in favor of preclusion where party did not explain omission from initial disclosures).

**Importance of the Evidence:** This factor weighs slightly in favor of preclusion.  While the Cabana Declarations carry weight, in that they come from current managers and former employees, there are other declarations by Cabana managers that were not the subject of plaintiffs' motion to strike, as those declarants were identified by defendants in their initial disclosures.  See, e.g., Declaration of Harold Quintero, DE #147-33; Declaration of Benjamin

---

[29]  This is contrast to plaintiffs' explanation concerning the June 26, 2011 disclosure of Penizzotto as a witness.  See supra p. 12 n.7.

Bautista, DE #147-38.  Thus, the Cabana Declarations are not the sole evidence defendants need rely on in addressing plaintiffs' allegations.  See Am. Friends, 2009 WL 1617773, at *10 (importance of evidence factor weighed slightly in favor preclusion, where it was important but duplicative of other evidence).

 **Prejudice to Plaintiffs:** This factor weighs in favor of preclusion.  Absent preclusion, plaintiffs will be extremely prejudiced in that they have no discovery, such as time records, concerning these individuals.  Moreover, if the Court reopened the discovery phase to allow plaintiffs to conduct discovery, plaintiffs would be burdened with significant additional costs (including the costs entailed in resubmitting the pending motion for certification and opposition to decertification).  See, e.g., Gotlin, 2009 WL 2843380, at *5 (defendants would be prejudiced in the form of significant additional litigation costs if court were constrained to reopen expert discovery) (collecting cases).

 **Possibility of Continuance**: This factor weighs slightly in favor of preclusion.  While no trial date has been set, a continuance would involve reopening discovery and would certainly delay the resolution -- and probably require resubmission -- of plaintiffs' fully submitted Rule 23 Motion to Certify.  See Rienzi & Sons, Inc., 2011 WL 1239867 at *4.

 Thus, upon careful consideration of each of the Patterson factors, the Court grants plaintiffs' motion to strike the thirty-one Cabana Declarations pursuant to Rule 37.[30]

### D. Cmayo, Gimson, & Mantell Declarations

 Plaintiffs also move to strike the declarations of Buzz Cmayo ("Cmayo"), Troy Gimson

---

[30]  The thirty-one stricken Cabana Declarations are attached as Exs. 6-29, 32-34 and 36-39 to the Declaration of Douglas Weiner, dated August 5, 2011, DE #147.

("Gimson") and Russel Mantell ("Mantell"), because they "were never identified at all in Defendants Rule 26 Disclosures[.]"  10/5/11 Pl. Mem. at 11, DE #175.

Gimson and Cmayo both describe Cabana's computerized timekeeping systems.  The Gimson Declaration addresses the Squirrel Point of Sale System, which Cabana used until 2008, while the Cmayo Declaration discusses the POSitouch Time and Attendance System, which Cabana began using in 2008.  Defendants argue that plaintiffs have long been aware of the names of the two relevant Cabana timekeeping systems.  See 3/23/12 Def. OTSC Resp. at 7. Therefore, defendants posit, if plaintiffs had contacted the time-system vendors, they would have been directed to Gimson and Cmayo.  See id.  Defendants further contend that because "Defendants' use of Declarations from representatives of the vendors of the timekeeping systems in effect during the relevant time period was anticipated during discovery, . . . Plaintiff [sic] could not have been surprised by Defendants' submission of such Declarations." Id.

Again, defendants do not reveal when they first approached Gimson and Cmayo about submitting declarations.  However, in a June 21, 2011 telephone conference, defendants made clear to the Court and plaintiffs' counsel that they intended to submit a declaration from a representative of POSitouch to address, among other things, whether an adjustment to a Cabana employee's time records would be reflected on print-outs from the POSitouch system. See 6/21/11 Tr. at 26–28.  Therefore, the Court concludes that plaintiffs were put on notice that defendants planned to rely on a representative from POSitouch.  Consequently, the Court declines to strike the Cmayo Declaration for failure to disclose under Rule 26, but does strike the Gimson Declaration, as defendants never made clear that they intended to seek a

-45-

declaration from a representative of the Squirrel Point of Sale System.

As for Mantell, Cabana's longtime CPA, defendants merely state in conclusory fashion that "Defendants' failure to specifically identify its CPA by name did not prejudice Plaintiff, and is harmless." 3/23/12 Def. OTSC Resp. at 7. Defendants, once again, miss the point of a Rule 26 witness disclosure. Defendants were obligated to inform plaintiffs that they might rely on that CPA to support their defense; that plaintiffs were generally aware of the existence of a CPA is not sufficient under Rule 26. See discussion supra pp. 36-39.

Thus, having concluded that defendants violated Rule 26 by failing to disclose that they might rely on Gimson and Mantell, the Court considers whether preclusion under Rule 37 is appropriate. First, defendants' failure is not substantially justified. Similar to the situation involving the Cabana Declarants, defendants make no factual proffer whatsoever with respect to when they knew they might be relying on these witnesses. In addition, defendants' failure to disclose was not harmless, as discovery has now ended and plaintiffs have lost the opportunity to explore these statements.

The Court now turns to whether precluding the Gimson and Mantell Declarations is appropriate under Patterson.

**Defendants' Explanation:** This factor weighs in favor of preclusion. Defendants provide no explanation whatsoever for their nondisclosure of these witnesses. Defendants fail to proffer when they first had contact with these witnesses and/or reasonably knew that defendants might rely on them in their defense.

**Importance of the Evidence:** This factor weighs slightly in favor of preclusion. As the time records are very important to the Rule 23 Motion to Certify, evidence by Gimson

-46-

concerning the operation of the Squirrel Point of Sale System is similarly important.

**Prejudice to Plaintiffs:** This factor weighs slightly in favor of preclusion.  Again, discovery is now closed.  Even if it were reopened, plaintiffs would incur additional costs in deposing the individual witnesses.

**Possibility of a Continuance:** This factor weighs slightly in favor of preclusion.  While a continuance is always theoretically possible, the closure of discovery weighs against a continuance.

Consequently, the Court grants plaintiffs' motion to strike the Gimson and Mantell Declarations pursuant to Rule 37.

## II.    Expert Testimony

Finally, plaintiffs seek to strike the declarations of Frechter, Cmayo, Gimson and Mantell, on the ground that these declarants are improperly providing expert opinions, even though defendants never identified them as experts and never served expert reports and/or the other expert disclosures required by Rule 26(a)(2) of the FRCP.[31]  See 10/5/11 Pl. Mem. at 11-18, DE #177.  Defendants, without citing any case law, counter that all of the declarants are properly providing evidence as fact witnesses.  See 11/29/11 Glenn Frechter Decl. at 8-10.  For the reasons stated below, the Court denies plaintiffs' motion to strike the Frechter Declaration or the Cmayo Declaration on this basis.  Because the Court has stricken the Gimson and Mantell Declarations under Rule 37, it need not determine whether those declarants were providing expert evidence that defendants failed to disclose during discovery.

---

[31]  Expert disclosures were due by July 31, 2011.  See 3/18/11 Am. Sched. Order, DE #64.

### A.    Legal Standard

Rule 26(a)(2) mandates the disclosure of the identities of expert witnesses, as well as other related information such as their opinions and qualifications.  See Fed. R. Civ. P. 26(a)(2).  In order to prevent the unfair "sandbagging" of adverse parties, Rule 37(c)(1) prohibits the use of expert opinions that were not timely disclosed under Rule 26(a)(2).  See DVL, Inc. v. Gen. Elec. Co., 811 F.Supp.2d 579, 588-89 (N.D.N.Y. 2010) (collecting cases).

Rule 26(a)(2) does not, however, apply to fact or lay witnesses.  See id. at 588.  In accordance with Rule 701 of the Federal Rules of Evidence, a lay witness may not testify "based on scientific, technical, or other specialized knowledge within the scope of Rule 702," the rule that governs expert testimony.  See Fed. R. Evid. 701(c).  The purpose of prohibiting lay witnesses from offering specialized or technical testimony is "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."  Bank of China, N.Y. Branch v. NBM LLC, 359 F.3d 171, 181 (2d Cir. 2004) (quoting Fed. R. Evid. 701 advisory committee's note).

Moreover, lay witness testimony must be "rooted in personal perception."  Disability Advocates, 2008 WL 5378365, at *14 (collecting cases).  In some instances, a witness with specialized knowledge may be permitted to testify as a lay witness if the witness had direct personal involvement with the factual matters of the case.  See M.O.C.H.A. v. City of Buffalo, No. 98-CV-99-JTC, 2008 WL 4412093, at *3 (W.D.N.Y. Sept. 23, 2008) (although education expert had "specialized knowledge," she was not testifying as an expert witness because she had direct personal involvement in the factual matters of the case).  If a witness is testifying as an expert, and the party offering the expert testimony did not properly identify the

-48-

witness as an expert, then the Court may preclude the testimony of that witness.  See United

States v. City of New York, No. 07-CV-2067 (NGG) (RLM), 2010 WL 2838386, at *2

(E.D.N.Y. July 19, 2010) (precluding testimony of witness who was not timely identified as an

expert witness).

### B.      The Frechter Declaration

Despite plaintiffs' contention otherwise, the Frechter Declaration does not contain

improper expert opinions.  The declaration, which largely details a review and comparison of

various Cabana payroll records, mostly describes the process by which the declarant created

the Frechter Exhibits (most of which the Court has recommended be stricken based on

defendants' failure to produce, see supra pp. 29-35) or otherwise provides an explanation as to

the contents thereof.  See Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53 (2d Cir. 1993)

(summary evidence is admissible as long as the underlying documents also constitute

admissible evidence and were made available to adverse party).  It is not uncommon for a

witness, without providing an expert opinion based on specialized knowledge, to summarize

complicated information in a form that enables the finder of fact to understand certain

evidence.  See SEC v. Treadway, 430 F.Supp.2d 293, 321-22 (S.D.N.Y. 2006) (denying

motion to strike declaration of SEC staff accountant, who summarized financial evidence

relating to trade activity based upon his review of brokerage statements).  In Treadway, the

court found that such a declaration did not constitute a previously undisclosed expert opinion

but rather merely provided the declarant's view of the facts "as summary" of certain evidence,

and thus was more akin to a "summary document" under Rule 1006 of the Federal Rules of

Evidence.

### C.     Cmayo Declaration

Although Cmayo undoubtedly has specialized and technical knowledge concerning the POSitouch system, his declaration mostly speaks to how POSitouch operates in broad terms and is presumably based on his personal knowledge and experience dealing with the system. See Disability Advocates, Inc., 2008 WL 5378365, at *16 (statements of former government employee concerning state policies and practices were made on personal knowledge based on "ample opportunities" employee had to observe those policies over the years).    Moreover, in contrast to the Gimson Declaration, Cmayo does not reach any conclusion based on POSitouch time records in this case.  Cf. DVL, 811 F.Supp.2d at 588-92 (precluding declaration of witness who had some personal knowledge through his work history, but whose testimony went beyond personal knowledge and drew upon his own expertise to reach conclusions surpassing his own experience of the events at issue).  Thus, the Court finds that the Cmayo Declaration is not improper expert testimony and declines to strike it on that basis.

Consistent with the foregoing analysis, the Court denies plaintiffs' motion to strike the Frechter Declaration and Cmayo Declaration as improper expert testimony.[32]

### CONCLUSION

For the reasons stated above, the Court denies defendants' two motions to strike, except that it grants the motions on the limited issue of inadmissible hearsay.  Plaintiffs' motion to strike is granted in substantial part.  The Court precludes the following for violations of Rule 26:  (1) Exhibits 1-3, 6, 9, and 10 to the Frechter Declaration (and corresponding paragraphs

---

[32]  However, as discussed previously, see supra pp. 29-35, portions of the Frechter Declaration are stricken as a Rule 37 discovery sanction.

therein); (2) thirty-one of the Cabana Declarations; and (3) the Declarations of Gimson and Mantell. The Court denies plaintiffs' motion to preclude the Frechter Declaration and the Cmayo Declaration on the basis of improper expert testimony.

Any objections to the rulings in this Memorandum and Order must be filed with the Honorable I. Leo Glasser on or before **August 13, 2012**. Failure to file objections in a timely manner may waive a right to appeal the District Court order.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**July 26, 2012**

/s/ *Roanne L. Mann*
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**